**CHIPMAN BROWN CICERO & COLE, LLP**
Daniel G. Egan
501 5th Ave. 15th Floor
New York, New York 10017
Telephone: (646) 741-5529
egan@chipmanbrown.com

**CHIPMAN BROWN CICERO & COLE, LLP**
Mark L. Desgrosseilliers (*pro hac vice* requested)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
desgross@chipmanbrown.com

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Giftcraft Ltd., *et al.*,[1] <br><br> Debtors in a Foreign Proceeding. | Chapter No. 15 <br><br> Case No.: 25-11030 (MG) <br><br> (Joint Administration Pending) |

### VERIFIED PETITION OF FOREIGN REPRESENTATIVE FOR (I) RECOGNITION OF CANADIAN PROCEEDING AS FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

KPMG Inc. ("KPMG"), in its capacity as the court-appointed receiver (in such capacity,

the "Receiver") of the above captioned debtors (collectively, "Giftcraft" or the "Debtors"), and in

---

[1] The chapter 15 debtor incorporated in Canada and/or in the province of Ontario (the "Canadian Debtor"), along with the last four digits of the Canadian Debtor's Canadian business number, is: Giftcraft Ltd. ("Giftcraft Canada") (9013). The chapter 15 debtors incorporated in the United States (the "U.S. Debtors"), along with the last four digits of each U.S. Debtor's federal tax identification number, are: Giftcraft Holdings USA Inc. ("GH USA") (7406); Giftcraft Holdings, Inc. ("GHI") (1472); Giftcraft Midco, Inc. ("Midco") (1204); Giftcraft Inc. ("Giftcraft US") (6759); Ripskirt Hawaii, LLC ("Ripskirt") (7613); and Yosox USA Inc. ("Yosox") (1367). The Canadian Debtor and the U.S. Debtors are referred to herein, collectively, as the "Debtors" or "Giftcraft"). The Debtors' executive headquarters are located at 8550 Airport Road, Brampton, Ontario, L6T 5A3.

its capacity as the authorized foreign representative (the "<u>Foreign Representative</u>") of the Debtors, which are the subject of a receivership proceeding (the "<u>Giftcraft Receivership</u>"), pursuant to section 243(1) of the Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3, as amended (the "<u>BIA</u>") and section 101 of the Courts of Justice Act, R.S.O. 1990, c. C.43, as amended (the "<u>CJA</u>"), pending before the Ontario Superior Court of Justice (Commercial List) (the "<u>Canadian Court</u>"), submits this verified petition (together with the form petitions filed simultaneously herewith, the "<u>Verified Petition</u>") for recognition of the Giftcraft Receivership as a "foreign main proceeding" and certain related relief pursuant to sections 105(a), 362, 1507, 1510, 1515, 1517, 1519, 1520 and 1521 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

In support of the Verified Petition, the Foreign Representative has filed contemporaneously herewith (a) the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "<u>Foreign Representative Declaration</u>") and (b) the *Declaration of Kenneth D. Kraft in Support of Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "<u>Kraft Declaration</u>"), each of which are incorporated herein by reference. The Foreign Representative has also filed the *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "<u>Provisional Relief Motion</u>") contemporaneously herewith.

## PRELIMINARY STATEMENT

1.      As set forth more fully below, the Giftcraft Receivership was commenced in the Canadian Court on May 9, 2025, by Royal Bank of Canada ("RBC"), a secured lender of the Debtors.

2.      On May 14, 2025, KPMG was duly appointed by order of the Canadian Court (the "Appointment Order") as the Receiver and as Foreign Representative of all of the Debtors' assets, properties, and undertaking (collectively, the "Property").   Accordingly, the Foreign Representative filed each of the Debtors' petitions for recognition under chapter 15 (collectively, the "Petitions") commencing these Chapter 15 Cases as ancillary proceedings to the Giftcraft Receivership, and respectfully files this Verified Petition for recognition contemporaneously with the required accompanying documentation pursuant to sections 1501, 1504, 1509, 1514, and 1515 of the Bankruptcy Code.

3.      The Debtors comprise a group of companies operating as a supplier of gift items, including home decor, jewelry, and other novelties that are distributed primarily through retailers across North America, ranging from independent specialty retailers to national chains.  In addition, the Debtors' Ripskirt business (as defined herein) produces and distributes women's apparel aimed at the vacation and leisure market, specifically quick-drying skirts, dresses, and cover-ups, which are sold through various channels, including e-commerce and retail distribution.  The Debtors currently hold inventory in both the United States and Canada.

4.      Through the Giftcraft Receivership, the Receiver intends to realize on Giftcraft's remaining assets and, if warranted, prepare for a claims resolution process under the oversight of the Canadian Court.  The Foreign Representative has commenced these Chapter 15 Cases to ensure the effectiveness of the Appointment Order, and the protections and powers contained therein, in

the United States, as well as to facilitate the fair and efficient administration of the Giftcraft Receivership. These Chapter 15 Cases serve a critical role in effectuating a fair and orderly realization process with respect to the Property, which will be made possible through the Giftcraft Receivership. Specifically, these Chapter 15 Cases will (i) protect the interests of the Debtors and their creditors in valuable inventory located in the United States, (ii) prevent Giftcraft's stakeholders from commencing actions in the United States that are more properly the subject of the Giftcraft Receivership or that will interfere with its orderly administration, and (iii) permit the Receiver to seek enforcement of further relief obtained from the Canadian Court that may address issues related to the sale of the Debtors' assets, and to their U.S. customers and stakeholders.[2] For the reasons set forth herein, the Foreign Representative submits that the relief requested in this Verified Petition is necessary and appropriate for it to fulfill its mandate of preserving, protecting and realizing on the Property (as defined below) of Giftcraft.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.) (the "Amended Standing Order").

6.      These Chapter 15 Cases have been properly commenced with respect to each of the Debtors in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by the filing of the Verified Petition. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

---

[2]      For the avoidance of doubt, nothing herein constitutes or shall be construed as an admission of any purported liability with respect to any obligation, including financial indebtedness or claims, for which the Debtors and the Receiver reserve all rights and defenses.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1410(3) as (i) both Giftcraft

Holdings USA Inc. and Giftcraft Inc. are incorporated under the laws of the State of New York;

(ii) each of the Giftcraft US GSA, the Secured Guarantee, the Guarantee Joinder, and the GSA

Joinder (each, as defined herein) are governed by the laws of the State of New York; and (iii) each

of the Debtors has property in the United States in the form of a retainer deposit in a client trust

account at IDB Bank of NY in New York, New York for the benefit of all of the Debtors.[3]

8.      The statutory bases for the relief requested herein are sections 105(a), 362, 1504,

1507, 1510, 1515, 1517, and 1521 of the Bankruptcy Code, and rule 9013-1(a) of the Local Rules

for the Southern District of New York (the "Local Rules").

## **RELIEF REQUESTED**

9.      The Foreign Representative requests that this Court enter an order, substantially in

the form attached hereto as **Exhibit A**, and pursuant to sections 105(a), 306, 362, 1504, 1507,

1509, 1510, 1515, 1517, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, that provides,

among other things, the following relief (collectively, the "Relief Requested"):

    a.  Granting the Verified Petition and recognizing the Giftcraft Receivership as
    a foreign main proceeding (as defined in section 1502(4) of the Bankruptcy
    Code) pursuant to section 1517 of the Bankruptcy Code;

    b.  Recognizing the Foreign Representative as a "foreign representative" as
    defined in section 101(24) of the Bankruptcy Code;

    c.  Enforcing and giving full force and effect in the United States to the
    Giftcraft Receivership and the Appointment Order, including any and all
    extensions or amendments to that order as authorized by the Canadian Court
    in the future;

---

[3]      For purposes of section 109(a) of the Bankruptcy Code, "property in the United States" has been held to
include an attorney retainer in a U.S. bank account. *See In re Cell C Proprietary Ltd.*, 571 B.R. 542, 552 (Bankr.
S.D.N.Y. 2017); *In re Berau Capital Resources Pte Ltd*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015); *In re Octaviar
Administration Pty Ltd.*, 511 B.R. 361, 372 (Bankr. S.D.N.Y. 2014).

d.  Protecting the rights of creditors and protecting and maximizing the value of the Debtors' assets, in accordance with section 1501 of the Bankruptcy Code;

e.  Providing the Receiver, if and/or when appropriate, additional assistance contemplated by section 1507 of the Bankruptcy Code;

f.  Granting the Receiver all rights afforded by section 1509 of the Bankruptcy Code, including, but not limited to (i) Receiver's capacity to sue in a court in the United States, (ii) Receiver's right to apply directly to a court in the United States for appropriate relief in such court, and (iii) the requirement that a court in the United States shall grant comity or cooperation to the Receiver;

g.  Granting the Receiver all of the relief afforded pursuant to section 1520 of the Bankruptcy Code, including but not limited to the "automatic stay" under section 362 of the Bankruptcy Code, and the application of sections 363, 549, and 552 pertaining to transfers of an interest of any of the Debtors' in property—all of which shall apply with respect to the Debtors and their property that is now or in the future located within the territorial jurisdiction of the United States;

h.  Staying the commencement or continuation of actions concerning the Debtors' assets, staying execution of the Debtors' assets, suspending any right to transfer, encumber or otherwise dispose of any of the Debtors' assets, and providing for the examination of witnesses or taking evidence concerning the Debtors' assets, affairs, rights, obligations or liabilities, consistent with section 1521 of the Bankruptcy Code;

i.  Providing that the Receiver may intervene in any proceedings in State or Federal court in the United States in which any of the Debtors may be a party;

j.  Granting pursuant to section 1521 of the Bankruptcy Code (or section 1507 as the Court deems necessary) on a final basis any provisional relief requested in the Motion for Provisional Relief;

k.  Pursuant to section 1519(a)(3) and 1521(a)(7) of the Bankruptcy Code, providing that section 108 of the Bankruptcy Code is made applicable to the Debtors in this Chapter 15 Case; and

l.  Providing such other relief as the Court deems just and proper.

## BACKGROUND

### I.   THE DEBTORS' CORPORATE STRUCTURE AND CANADIAN OPERATIONS

10.     The Debtors are comprised of a group of companies in which Giftcraft Holdings, Inc. ("GHI") is the ultimate parent, Giftcraft Ltd. ("Giftcraft Canada") is the sole Canadian entity and Giftcraft Midco, Inc. ("Midco") is the U.S. parent to Giftcraft Holdings USA Inc. ("GH USA"), Giftcraft Inc. ("Giftcraft US"), Yosox USA Inc. ("Yosox"), and Ripskirt Hawaii, LLC ("Ripskirt"):



11.     All of the Debtors share an identical team of officers.  The Board of Directors for each of Midco and Giftcraft Canada is comprised of seven members, with two members—Krista Halliday, President, and Leslie LePage, Vice President of Finance—located in Canada, and the remaining five members located in the United States.  Board meetings are held virtually.

12.     Giftcraft Canada carries on the business of the Debtors in Canada as a supplier of gift items, including home decor, jewelry, and other novelties.  Giftcraft Canada's primary business line is distribution through retailers across Canada, ranging from independent specialty

retailers to national chains.  For over 75 years, Ontario-based Giftcraft has been synonymous with quality, trendsetting designs, and best-in-class sales and service across North America.

13.     Giftcraft Canada has approximately $13,000,000 (CAD) of inventory located in Canada, and approximately $2,500,000 (CAD) of accounts receivable.

14.     The Debtors currently employ fifty-six (56) individuals based in Canada.

15.     Since 2007, Giftcraft Canada has carried on its business in Canada from leased premises located at 8550 Airport Road, Brampton, Ontario (the "Leased Premises").  Pursuant to a lease agreement between Rodenbury Investments Group ("Rodenbury") and Giftcraft Canada dated February 19, 2007, as amended from time to time (the "Lease"), Giftcraft Canada is required to pay monthly rent in the amount of $495,000 CAD for its occupation and use of the Leased Premises.

16.     On May 1, 2025, Rodenbury's counsel, Aird & Berlis LLP, issued a demand letter (the "Rodenbury Demand") for payment of arrears in respect of rent owing under the Lease for the months of February to May 2025, in the amount of $1,001,732.55 CAD.

17.     On May 2, 2025, Giftcraft Canada reached an agreement with Rodenbury to make a partial payment to Rodenbury in the amount of $100,000 CAD on May 2, 2025, and an additional payment of $247,860.41 CAD on or before May 12, 2025, on account of May's rent, in exchange for Rodenbury's agreement to forbear from termination of the Lease or exercising its right of distraint, for the month of May.  As of the commencement of the Giftcraft Receivership proceeding, Rodenbury had not withdrawn the Rodenbury Demand.

## II.    KEY U.S. ASSETS AND DEBTOR OPERATIONS

18.     The Debtors distribute home decor, jewelry, and other novelties products in the United States through their United States-based debtor, Giftcraft US, which sells to independent specialty retailers and national chains.  Giftcraft US does not carry any inventory, as all of its

products are shipped direct to its customers, either through Giftcraft Canada or from the overseas supplier. As of the commencement of the Giftcraft Receivership, I understand that Giftcraft US has approximately $2,300,000 (USD) of accounts receivable. Giftcraft US does not currently employ any individuals in the United States.

19.    In addition to the distribution of Giftcraft US's products throughout the United States, the United States-based debtor, Ripskirt, carries on a business producing and distributing women's apparel, specializing in quick-drying skirts, dresses, and cover-ups that are comfortable as well as practical. Ripskirt's products are aimed at the vacation and leisure markets and are sold through various channels, including e-commerce and retail distribution.

20.    The Debtors currently employ ten (10) individuals in the United States who all work remotely.

21.    Ripskirt ships inventory from a third-party logistics (3PL) facility located in Greenwood, Indiana (the "Indiana Warehouse"). Based on the information that RBC has at this time, the Debtors have approximately $4,000,000 CAD in inventory located in the Indiana Warehouse.

22.    Prior to the commencement of the Giftcraft Receivership, the Debtors leased and maintained two showrooms located in Atlanta, Georgia and Dallas, Texas (collectively, the "Showrooms"), where the Debtors stored sample inventory for U.S.-based retail buyers.

23.    The Atlanta-based Showroom was leased to Giftcraft US by AmericasMart Real Estate, LLC ("AmericasMart") for $113,379 per month, with a lease term ending February 2027. The Dallas-based Showroom was leased to Giftcraft for $16,394 per month, with a lease term ending September 2025.

24.     In January 2025, the Debtors vacated the Showrooms and discontinued rent payments under each of the Showroom leases.

25.     On April 18, 2025, counsel to AmericasMart sent a demand letter for rental arrears, threatening "immediate legal action" to obtain payment.  On April 28, 2025, AmericasMart sent a follow-up letter demanding that Giftcraft US "vacate the premises immediately," although Giftcraft US had already vacated.

26.     As of May 13, 2025, Ripskirt's total accounts payable is approximately $1.43 million USD, attributable to twenty (20) creditors.  Of these creditors, the largest amounts are owed to Meta/Facebook and FedEx Supply Chain.  Giftcraft US's total accounts payable is approximately $386,000 USD, attributable to twenty-nine (29) creditors.  Its largest creditor is AmericasMart.

27.     The Debtors currently have six (6) bank accounts in the United States (the "Bank Accounts") at the following financial institutions:

    a.  Three (3) Bank Accounts at HSBC USA held by each of Giftcraft US, Yosox, and Ripskirt;

    b.  One (1) Bank Account at CIBC held by Giftcraft US;

    c.  One (1) Bank Account at RBC held by Giftcraft US; and

    d.  One (1) Bank Account at Airwallex held by Ripskirt;

28.     As of the date of this filing, each of the Bank Accounts holds only a *de minimis* balance, in each case less than $5,000 USD.  Ripskirt also works with three (3) payment processors:  Paypal, Afterpay, and Shopify.

## III.   THE DEBTORS' CREDIT FACILITIES, DEFAULTS, AND FORBEARANCE

### A.   The RBC Credit Facilities

29.     Pursuant to a commitment letter dated March 21, 2024 from HSBC Bank Canada ("HSBC"), as lender, to Giftcraft Canada, as borrower (as amended, the "Operating Facility Letter"), HSBC extended various credit facilities to Giftcraft Canada, including a revolving demand facility in the principal amount of $15,000,000 (the "Operating Loan").  The Operating Loan is repayable on demand.

30.     Pursuant to a separate commitment letter also dated March 21, 2024 from HSBC, as lender, to Giftcraft Canada and Midco, as borrowers (the "Borrowers") (as amended, the "Capital Facility Letter," and with the Operating Facility letter, the "Facility Letters"), HSBC extended various credit facilities to Giftcraft Canada and Midco, including three non-revolving demand facilities in the principal amounts of $16,875,000 USD, $3,057,858.52 USD, and $8,115,716.97 USD, respectively (the "Capital Loans").  The Capital Loans are repayable on demand.

31.     Effective March 29, 2024, RBC and HSBC (and certain of HSBC's affiliated entities) amalgamated and continued as Royal Bank of Canada.  As a result, RBC assumed all the business and assets of HSBC, including all of its right, title, and interest in the Operating Facility Letter and the Capital Facility Letter.

32.     The Operating Facility Letter and the Capital Facility Letter have been amended by a first amendment dated September 24, 2024 among RBC, as lender, and Giftcraft Canada and Midco, as borrowers (the "First Amendment").

33.     In accordance with the terms of the Operating Facility Letter, the Operating Loan is secured by various security granted by Giftcraft Canada in favor of RBC, including, without limitation, a General Security Agreement dated as of January 10, 2019 by Giftcraft Ltd. and

Giftcraft Holdings Canada Ltd. (corporate predecessors of Giftcraft Canada) (the "Giftcraft Canada GSA") constituting a first-ranking security interest in all present or after-acquired personal property of Giftcraft Canada and all proceeds and renewals thereof, accretions thereto, and substitutions therefor (the "Giftcraft Canada Collateral").

34.    In accordance with the terms of the Capital Facility Letter, the Capital Loans are secured by various security granted by Giftcraft Canada and Midco in favor of RBC, including, without limitation, the Giftcraft Canada GSA and a General Security Agreement dated as of January 10, 2019 by Midco and GH USA, GHI, Giftcraft US, and Yosox (the "Giftcraft US GSA"). The Giftcraft US GSA constitutes a first-ranking security interest in all present or after-acquired personal property of each of Midco, GH USA, GHI, Giftcraft US, and Yosox.

35.    Additionally, the debts and liabilities owing by the Borrowers to RBC, including under the Facility Letters, were guaranteed by each of Midco, GH USA, GHI, Giftcraft US and Yosox (collectively, the "Guarantors"), pursuant to a guaranty of payment dated as of January 10, 2019 (the "Secured Guarantee").   Ripskirt assumed and joined the Secured Guarantee as a Guarantor by the guaranty of payment joinder dated September 16, 2022 (the "Guarantee Joinder").

36.    The Secured Guarantee is supported by the Giftcraft US GSA.  Ripskirt assumed and joined the Giftcraft US GSA by the security agreement joinder dated September 16, 2022 (the "GSA Joinder").  The Giftcraft US GSA and GSA Joinder constitutes a first-ranking security interest in all present or after-acquired personal property of the Guarantors.

37.    The Giftcraft Canada GSA, Giftcraft US GSA, the GSA Joinder, the Secured Guarantee, and the Guarantee Joinder (collectively, the "Security Documents") were granted pursuant to a prior credit agreement and expressly refer to the Debtors' obligations thereunder.

RBC and the Debtors entered into a confirmation and agreement dated April 9, 2024 (the "Security Confirmation Agreement"), pursuant to which the Debtors confirmed that, among other things, (i) any reference to "Loan Documents" in the Security Documents would include the Facility Letters, (ii) any reference to "Obligations" in the Security Documents would include all obligations arising under the Facility Letters, as applicable, and (iii) notwithstanding any language in the Security Documents granting security or guarantees in favor of RBC acting in its capacity as administrative agent for and on behalf of other lenders, the security and guarantees under the Security Documents are granted to RBC in its capacity as the lender under the Facility Letters.

38.     The Guarantors are jointly and severally indebted to RBC (the "Guaranteed Indebtedness") in respect of the above noted amounts.

39.     In order to perfect its security interests under the Giftcraft Canada GSA, RBC made registrations pursuant to the Personal Property Security Act, R.S.O. 1990, c. P.10, (the "PPSA") by filing the following financing statements in respect of Giftcraft Canada:

    a.  The financing statement bearing file reference number 865130922 on August 25, 2000, and most recently renewed on July 20, 2023;

    b.  The financing statement bearing file reference number 747415026 on January 8, 2019, and renewed on September 23, 2024; and

    c.  The financing statement bearing file reference number 747414945 on January 8, 2019, and renewed on September 23, 2024.

40.     With respect to its security interests under the Giftcraft US GSA, RBC has filed financing statements naming Midco and each Guarantor as debtor with the applicable filing office in accordance with the Uniform Commercial Code ("UCC") as adopted by:

    a.  The State of New York, with respect to Giftcraft US and GH USA, filed on January 9, 2019, and most recently amended on March 6, 2025, respectively;

    b.  The State of Indiana, with respect to Midco and GHI, filed on January 10, 2019, and most recently amended on March 7, 2025, respectively;

    c. The State of Delaware, with respect to Yosox, filed on January 9, 2019, and most recently amended on March 6, 2025; and

    d. The State of Oregon, with respect to Ripskirt, filed on September 16, 2022, and most recently amended on March 7, 2025.

**B.      Defaults of the Debtors and Forbearance Agreement**

41.    The obligations owing under each Facility Letter are repayable on demand.

42.    Pursuant to Section 6 of each Facility Letter, the Borrowers are required to comply with certain covenants and conditions. Among other things, the Borrowers agreed that they would not (i) permit the Liquidity of GHI (being the sum of the Debtors' unrestricted cash balances, plus the unused balance of the Operating Loan) to be less than $3,000,000 in any given month (the "Liquidity Covenant"); or (ii) permit the Total Operating Income of GHI (being the Debtors' aggregate sales, less cost of goods sold, less department operating expenses) to be less than 85% of projected EBITDA in any fiscal year (the "Income Covenant").

43.    Additionally, Section 3 of the Operating Facility Letter requires Giftcraft Canada to abide by a "Margin Requirement," whereby Giftcraft Canada must ensure that the advances under the Operating Loan do not exceed the aggregate value of certain receivables, inventory, and potential prior-ranking claims in any given month.

44.    Prior to the commencement of the Giftcraft Receivership, RBC asserted that the Borrowers had (1) breached the Liquidity Covenant for the period ending December 31, 2024, (2) breached the Income Covenant for the periods ending October 31, 2024, November 30, 2024, and December 31, 2024, and (3) failed to maintain the Margin Requirement for the periods ending November 30, 2024, and December 31, 2024, each constituting a breach of the covenants and conditions under the Facility Letters (each, an "Event of Default" and collectively, the "Events of Default").

45.     In light of the Debtors' apparent challenges, on January 23, 2025, the accounts of the Debtors were transferred to RBC's Special Loans & Advisory Services ("SLAS"). RBC engaged KPMG as financial advisor to RBC, with the consent of the Debtors' parent company, GHI.

46.     On February 12, 2025, RBC sent a letter to Giftcraft Canada and Midco regarding defaults under the Capital Facility Letter, and another letter to Giftcraft Canada regarding defaults under the Operating Facility Letter (each, a "Default Letter"). In each Default Letter, RBC notified the Borrowers of their Events of Default.

47.     Thereafter, RBC instructed its Canadian counsel, Borden Ladner Gervais LLP ("BLG"), to issue formal demands for payment. On March 7, 2025, RBC issued demands for payment and Notices of Intention to Enforce Security ("NITES"), as required by the BIA, to each of the Debtors.

48.     As of March 19, 2025, the Borrowers were collectively indebted to RBC in the aggregate principal amounts of $10,879,507.87 CAD and $27,061,536.46 USD, exclusive of interest, fees, and expenses.

49.     On March 20, 2025, RBC entered into a short-term forbearance agreement with the Debtors (the "Forbearance Agreement"), pursuant to which RBC conditionally agreed to refrain from exercising its security and enforcement rights, including under the Facility Letters and in respect of its security therefor, until April 30, 2025 (the "Forbearance Period").

50.     The Forbearance Agreement was intended to provide the Debtors' management time to rehabilitate its business, which would include (i) winding down their road business (the business segment specializing in sales to specialty retailers) which was not profitable due to the high cost structure, (ii) focusing on more profitable key account sales (*i.e.*, sales to national retailers), and (iii) selling aged inventory to generate cash flow.

-15-

51.     During the initial weeks of the Forbearance Period, the Debtors were able to manage cash flow and meet reporting requirements.  However, on April 22, 2025, Giftcraft Canada's management advised RBC that Ripskirt, the Debtors' primary cash-flow and profit-generating business segment, had experienced an unprecedented decline in sales in April.  The decline followed the announcement of global tariffs imposed by the United States government. Ripskirt's business and brand was significantly impacted by tariffs because its inventory is largely sourced from China, whereas its primary customer market is in the United States.

52.     Despite the Debtors' efforts to identify alternate suppliers in Vietnam and reposition the Ripskirt business, the Debtors' management advised that it would take several additional months for Ripskirt sales to return to historical levels given the economic climate and uncertainty around tariffs.

53.     The Debtors provided a cash flow forecast to RBC showing that the Operating Loan will increase by over $1 million CAD and approach the $15,000,000 CAD limit by early June 2025.  In order to keep the Operating Loan at or near its existing balance, RBC would need to defer interest, in addition to principal, which RBC was not prepared to do.  The Forbearance Agreement expired at the conclusion of the Forbearance Period on April 30, 2025, and was not extended by RBC.

54.     The Forbearance Agreement provides for the standard consent by the Debtors to the appointment of a Receiver by the Canadian Court if an application for the appointment of a Receiver is brought by RBC following the occurrence of a Forbearance Termination Event (as defined therein).

55.     On May 9, 2025, RBC filed an application seeking to appoint KPMG, a licensed insolvency trustee, as the Receiver, to secure the Property and review strategic alternatives with a view to maximizing value for all stakeholders.

## BASIS FOR RELIEF

56.     Chapter 15 of the Bankruptcy Code is designed to protect and maximize the value of a debtor's assets and avoid disruptions that could otherwise derail a debtor's insolvency process in its home country.   Consistent with these principles, the Foreign Representative seeks the protection of this Court afforded to foreign debtors under chapter 15 of the Bankruptcy Code to recognize the legal effect of the Giftcraft Receivership to ensure the effectiveness of the Appointment Order and the protections and powers contained therein in the United States.   The Receiver has concluded that such relief is necessary in order to fulfill its mandate of preserving, protecting, and realizing on the property of the Debtors.  *See* 11 U.S.C. § 1501.

## I.     THE DEBTORS ARE ELIGIBLE FOR CHAPTER 15 RELIEF.

57.     To be eligible for chapter 15 relief, debtors must meet the general eligibility requirements under section 109(a) of the Bankruptcy Code as well as the more specific eligibility requirements under section 1517(a) of the Bankruptcy Code.

58.     In addition, the petition for recognition must meet the requirements of section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").   If these elements are satisfied, the Bankruptcy Court must grant recognition.  *See In re Black Gold S.A.R.L.*, 635 B.R. 517, 527 (B.A.P. 9th Cir. 2022) ("Congress' use of the word 'shall' in § 1517(a) removed the court's discretion in determining recognition if the requirements in the three subparagraphs of § 1517(a) have been satisfied.").

59.     Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this

title." 11 U.S.C. §109(a). The Second Circuit Court of Appeals has applied section 109(a) of the

Bankruptcy Code to chapter 15 eligibility. *See Drawbridge Special Opp. Fund LP v. Barnett (In*

*re Barnett)*, 737 F.3d 238, 247 (2d Cir. 2013). For section 109(a) purposes, funds held by counsel

as an undrawn retainer, as well as intangible contract rights governed by New York law, satisfy

the "property in the United States" requirement for eligibility as a chapter 15 debtor. *In re Avanti*

*Commc'ns Grp. PLC*, 582 B.R. 603, 613 (Bankr. S.D.N.Y. 2018).

60.     Accordingly, each of the Debtors is eligible to be a debtor under section 109(a) of

the Bankruptcy Code because they have either a place of business and/or property in the United

States in the form of:

> a. a $50,000 retainer held by counsel in a client trust account at IDB Bank of
> NY in New York, New York for the benefit of all the Debtors. *See Octaviar
> Admin. PTY Ltd.*, 511 B.R. 361, 372-74 (Bankr. S.D.N.Y. 2014) (holding
> that $10,000 in a client trust account was sufficient to satisfy the
> requirements of 109(a) of the Bankruptcy Code); *see also In re Suntech
> Power Holdings Co., Ltd.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014);
>
> b. each of the Giftcraft US GSA, the Secured Guarantee, the Guarantee
> Joinder, and the GSA Joinder are governed by the laws of the State of New
> York; and
>
> c. all of the Debtors except Giftcraft Canada are United States corporate
> entities with assets located in the United States, including approximately
> $4,000,000 CAD of inventory located in the Indiana Warehouse.

61.     For these reasons, the Debtors satisfy the requirements under section 109(a) of the

Bankruptcy Code.

## II.     THE COURT SHOULD RECOGNIZE THE GIFTCRAFT RECEIVERSHIP AS A FOREIGN MAIN PROCEEDING.

62.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing,

"an order recognizing a foreign proceeding shall be entered if . . . (1) such foreign proceeding for

which recognition is sought is a foreign main proceeding . . . within the meaning of section 1502;

(2) the foreign representative applying for recognition is a person or body; and (3) the petition

meets the requirements of section 1515." *See* 11 U.S.C. § 1517(a).  The Giftcraft Receivership

satisfies all such requirements.

**A.    The Giftcraft Receivership is a Foreign Proceeding.**

63.    The Giftcraft Receivership is a foreign proceeding as defined under section 101(23)

of the Bankruptcy Code.  Section 101(23) requires that a "foreign proceeding" be (i) a collective

judicial or administrative proceeding relating to insolvency or adjustment of debt; (ii) pending in

a foreign country; and (iii) under the supervision of a foreign court, for the purpose of reorganizing

or liquidating the assets and affairs of the debtor.  *See* 11 U.S.C. § 101(23).  The statute defines

"foreign court" as "a judicial or other authority competent to control or supervise a foreign

proceeding." *See* 11 U.S.C. § 1502(3).

64.    Courts have held that a foreign representative seeking recognition of a "foreign

proceeding" must prove that such proceeding:

a. is either judicial or administrative;

b. is collective in nature;

c. is in a foreign country;

d. is authorized or conducted under a law related to insolvency or the
   adjustment of debts;

e. is one in which the debtor's assets and affairs are subject to the control or
   supervision of a foreign court; and

f. is for the purpose of reorganization or liquidation.

*See In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citing *In re Betcorp Ltd.*,

400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In re Overnight and Control Comm'n of*

*Avánzit, S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (discussing factors).

65.    Courts routinely recognize Canadian insolvency proceedings, including Canadian

receiverships, as "foreign proceedings." *See, e.g.*, *In re Mood Media Corp.*, Case No. 17-11413

(Bankr. S.D.N.Y. June 28, 2017) [Docket No. 44] (recognizing Canadian Proceedings as foreign main proceedings as to Mood Media Corporation); *In re Antamex Industries ULC*, Case No. 24-10934 (Bankr. D. Del. June 4, 2024) [Docket No. 35] (recognizing Canadian receivership as a foreign main proceeding); *In re Simex Inc.*, Case No. 24-10083 (Bankr. D. Del. Feb. 20, 2024) (Docket No. 39) (recognizing Canadian proceeding commenced under Canada's Companies' Creditors Arrangement Act as a foreign main proceeding); *In re Yatsen Group of Companies Inc., et al.*, No. 21-10073 (BLS) (Bankr. D. Del. February 24, 2021) (Docket No. 42) (same); *In re Hematite Holdings Inc., et al.*, No. 20-12387 (Bankr. D. Del. October 15, 2020) (Docket No. 35) (same).

66.     As set forth in the Kraft Declaration, the Giftcraft Receivership is pending before the Canadian Court under the Bankruptcy and Insolvency Act and satisfies each of the foregoing requirements.  The Court should, therefore, determine that it qualifies as a "foreign proceeding" for purposes of section 101(23) of the Bankruptcy Code.

**B.      The Giftcraft Receivership is a "Foreign Main Proceeding" Under Section 1502 of the Bankruptcy Code.[4]**

67.     Under section 1502 of the Bankruptcy Code, the term "foreign main proceeding" means "a foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).  Section 1516 of the Bankruptcy Code establishes a rebuttable presumption that the debtor's registered office is the debtor's center of main interests ("CoMI").  *See* 11 U.S.C. § 1516(c).  When considering a debtor's CoMI, courts may consider the analogous concept of an entity's "principal place of business" or "nerve center."  *Morning Mist Holdings Ltd.*

---

[4]     Alternatively, should the Court decline to recognize the Giftcraft Receivership as the foreign main proceeding for any of the Debtors, the Foreign Representative respectfully requests that the Court recognize such proceeding as a foreign nonmain proceeding (as defined in section 1502(5) of the Bankruptcy Code) of any such Debtor, and grant appropriate relief.

*v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 132 n.10 (2d Cir. 2013).  As such, courts will look to factors such as the location of the debtor's headquarters, the location of those who actually manage the debtor, and the location of the debtor's primary assets, among other things, to determine the foreign debtor's CoMI.  *Id.* at 130.

68.    Giftcraft operates as a combined enterprise with its center of operations in Ontario, Canada.  The CoMI of the Debtors is located in Canada for the following reasons:

a.  Giftcraft Ltd.'s executive office is located at 8550 Airport Road, Brampton, Ontario, L6T 5A3 containing books, records, computers, and employees;

b.  the majority of Giftcraft's employees are located in Canada;

c.  the President of the company is located in Canada, where all key strategic decisions are made;

d.  the Ontario address is listed on Giftcraft's principal loan documents;

e.  approximately $13 million CAD worth of inventory is located in Canada;

f.  approximately $2.5 million CAD of accounts receivable are located in Canada; and

g.  the Receiver is currently managing the Debtors' affairs and assets from Canada.

69.    Consequently, there is a rebuttable presumption that the Debtors' CoMI is located in Canada.

**C.    These Chapter 15 Cases Have Been Commenced by a Duly Authorized Foreign Representative.**

70.    The Receiver is duly authorized to act as Foreign Representative in these Chapter 15 Cases because it is a foreign person or body petitioning for recognition, as required by section 1517(a) of the Bankruptcy Code.  Further, the term "foreign representative" is defined under section 101(24) of the Bankruptcy Code as:  a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization

or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign

proceeding. 11 U.S.C. § 101(24).

71.     Here, pursuant to the Appointment Order, KPMG was appointed as Receiver and

manager, without security, of all the present and future assets, undertakings, and properties of the

Debtors acquired for, or used in relation to the business carried on by the Debtors, including all

proceeds thereof.   Appointment Order, ¶ 2.   In the Appointment Order, the Receiver was

specifically authorized and empowered to seek chapter 15 recognition of the Giftcraft

Receivership, including authorization "to act as a representative in respect of the within

proceedings for the purpose of having these proceedings recognized in a jurisdiction outside

Canada, including acting as a foreign representative of the Debtors to apply to the United States

Bankruptcy Court for relief pursuant to Chapter 15 of the United States Bankruptcy Code, 11

U.S.C. §§ 101-1530, as amended." *Id.* at ¶ 31.

72.     Accordingly, the Foreign Representative is a proper "foreign representative" within

the meaning of section 101(24) of the Bankruptcy Code. *See also* 11 U.S.C. § 1516(a) ("If the

decision [commencing the foreign proceeding] . . . indicates . . . that the person or body is a foreign

representative, the court is entitled to so presume.").

**D.     The Petition for Recognition Meets the Requirements of Section 1515 of the
         Bankruptcy Code and Bankruptcy Rule 1007(a)(4).**

73.     These Chapter 15 Cases were duly and properly commenced by filing the Petitions

and this Verified Petition accompanied by all fees, documents, and information required by the

Bankruptcy Code and the Bankruptcy Rules, including:   (a) a corporate ownership statement

containing the information described in Bankruptcy Rule 7007.1; (b) a list containing (i) the names

and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtors,

(ii) all parties to litigation pending in the United States in which the Debtors are a party at the time

of the filing of the Petitions, and (iii) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (c) a statement identifying all foreign proceedings with respect to the Debtors that are known to the Foreign Representative; and (d) a certified copy of the Appointment Order. In addition, the Foreign Representative Declaration filed contemporaneously herewith constitutes further evidence of the existence of the Giftcraft Receivership and of the appointment of the Receiver as the foreign representative as set forth in section 1515(b)(3) of the Bankruptcy Code.

74. Having filed the above-referenced documents and because the Court is entitled to presume the authenticity of such documents filed in connection with the Chapter 15 Petition under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) have been met, and this Chapter 15 Case has been properly commenced. *See* 11 U.S.C. §§ 1504, 1509(a), 1515; Bankruptcy Rule 1007(a)(4).

## III. THE DISCRETIONARY RELIEF REQUESTED IS NECESSARY AND APPROPRIATE AND SHOULD BE GRANTED.

75. In connection with recognition of the Giftcraft Receivership, the Foreign Representative seeks certain related relief, including enforcement of the Appointment Order (and any amendments made thereto in the future) in the United States, and application of sections 362 and 365(e) of the Bankruptcy Code in these Chapter 15 Cases. The Foreign Representative respectfully submits that such relief is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code and the general principles of comity that underpin chapter 15.

76. Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." Such relief may include:

-23-

a.  staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a) of the Bankruptcy Code;

b.  staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a) of the Bankruptcy Code;

c.  suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a) of the Bankruptcy Code; and

d.  granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) of the Bankruptcy Code.

77.   The Court may grant relief under section 1521(a) of the Bankruptcy Code if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).  Similarly, section 1507 of the Bankruptcy Code provides that, "if recognition is granted," a court "may provide additional assistance to a foreign representative under this title or under other laws of the United States." 11 U.S.C. § 1507. Finally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

78.   The Foreign Representative requests the Court exercise its discretion under sections 105, 1507, and 1521 to grant the relief requested insofar as such relief exceeds that which is available by recognizing the Giftcraft Receivership as a "foreign main proceeding" and the Foreign Representative as a "foreign representative" as specified in the Bankruptcy Code.  The

granting of such relief is consistent with the goals of international comity and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code and is necessary to effectuate the objective of the Giftcraft Receivership.

79.     Indeed, as set forth above, by the Appointment Order, the Canadian Court expressly requested that courts in the United States recognize the Giftcraft Receivership and assist the Receiver and its agents in carrying out the terms of the Appointment Order (*i.e.*, the actions which the Appointment Order expressly empowers the Receiver to take on behalf of the Debtors and their property, as explained in detail above).  *See* Appointment Order, ¶¶ 30–32.

80.     Thus, in addition to the reasons set forth above, this Court should give full force and effect in the United States to the Appointment Order under well-established principles of international comity and specifically pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code.

81.     Fair and efficient administration of the Giftcraft Receivership that protects all parties in interest requires that all creditors be bound by the terms of the Appointment Order as sanctioned by the Canadian Court.  *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987) ("The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail."); *In re Energy Coal S.P.A.*, 582 B.R. 619, 626–27 (Bankr. D. Del. 2018) (acknowledging the broad principles of comity applied by U.S. courts in both recognition of foreign bankruptcies and post- recognition relief granted to foreign representatives).

82.     If the terms of the Appointment Order, and the orderly liquidation of the Debtors' assets, are not fully respected in the United States, there is a risk that certain of the Debtors'

creditors and contract counterparties could exercise contractual remedies and/or initiate proceedings in the United States against the Debtors or other parties protected by the Appointment Order.  Such actions would likely result in the depletion of the Debtors' resources and would detrimentally affect the value of the Debtors' assets available for distribution to its creditors. Therefore, the relief requested herein is required to prevent individual creditors acting to frustrate the purpose of the Giftcraft Receivership by disregarding the binding Appointment Order, the objective of which is the fair, efficient, and orderly liquidation of the Debtors' property and the maximizing of value for all stakeholders.

## **CONCLUSION**

83.     The Foreign Representative respectfully submits that the Verified Petition satisfies the requirements for the recognition of the Foreign Representative as Giftcraft's "foreign representative" and the Giftcraft Receivership as a "foreign main proceeding" and further requests entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein.

## **NOTICE**

84.     The Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(a).  The Foreign Representative proposes to notify all creditors and parties in interest of the filing of the Petitions and the Foreign Representative's request for entry of the Order in the form and manner set forth in the *Motion for Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice*, filed contemporaneously herewith.  The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

## NO PRIOR REQUEST

85.     No prior request for the relief sought in this Verified Petition has been made to this

or any other court.

WHEREFORE, the Foreign Representative respectfully requests entry of the Order,

substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and

such other and further relief as is just and proper.

Dated: New York, New York.
      May 20, 2025

Respectfully submitted,

**CHIPMAN BROWN CICERO & COLE, LLP**

By: */s/ Daniel G. Egan*
    Daniel G. Egan
    501 5th Ave. 15th Floor
    New York, New York 10017
    Telephone: (646) 741-5529
    egan@chipmanbrown.com

**CHIPMAN BROWN CICERO & COLE, LLP**
Mark L. Desgrosseilliers (*pro hac vice*
requested)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
desgross@chipmanbrown.com

*Counsel to the Foreign Representative*

## <u>VERIFICATION OF PETITION</u>

I, Pritesh Patel, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am a partner in the Turnaround & Restructuring practice of KPMG Inc., the court-appointed Receiver and authorized Foreign Representative for the Debtors.  As such, I have full authority to verify the foregoing Verified Petition on behalf of the Foreign Representative.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 20th day of May 2025
Toronto, Ontario
Canada

KPMG Inc., solely in its capacity as court-
appointed Foreign Representative and not in
its individual or corporate capacity

By:  */s/ Pritesh Patel*
        Pritesh Patel, Partner, Deal Advisory