**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Giftcraft Ltd. *et al.*,[1] <br><br> Debtors in a Foreign Proceeding. | Chapter No. 15 <br><br> Case No.: 25-11030 (MG) <br><br> (Joint Administration Pending) |

**DECLARATION OF FOREIGN REPRESENTATIVE PURSUANT TO 11 U.S.C.§ 1515 AND RULE 1007(A)(4) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IN SUPPORT OF VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Pritesh Patel, to the best of my information and belief, state as follows:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration based upon my own personal knowledge except for those portions specified as being otherwise. I am making this declaration in accordance with section 1515 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. I am a Senior Vice President of KPMG Inc. ("KPMG"), the court-appointed Receiver (in such capacity, the "Receiver") and authorized foreign representative (in such capacity, the "Foreign Representative") of the above-captioned debtors ("Giftcraft" or the "Debtors"). I am familiar with the Debtors, whose receivership proceeding (the "Giftcraft

---

[1] The chapter 15 debtor incorporated in Canada and/or in the province of Ontario (the "Canadian Debtor"), along with the last four digits of the Canadian Debtor's Canadian business number, is: Giftcraft Ltd. ("Giftcraft Canada") (9013). The chapter 15 debtors incorporated in the United States (the "U.S. Debtors"), along with the last four digits of each U.S. Debtor's federal tax identification number, are: Giftcraft Holdings USA Inc. ("GH USA") (7406); Giftcraft Holdings, Inc. ("GHI") (1472); Giftcraft Midco, Inc. ("Midco") (1204); Giftcraft Inc. ("Giftcraft US") (6759); Ripskirt Hawaii, LLC ("Ripskirt") (7613); and Yosox USA Inc. ("Yosox") (1367). The Canadian Debtor and the U.S. Debtors are referred to herein, collectively, as the "Debtors" or "Giftcraft"). The Debtors' executive headquarters are located at 8550 Airport Road, Brampton, Ontario, L6T 5A3.

Receivership") is currently pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), pursuant to section 243(1) *Bankruptcy and Insolvency* Act, R.S.C. 1985, c. B-3, as amended (the "BIA") and section 101 of the *Courts of Justice* Act, R.S.O. 1990, c. C.43, as amended (the "CJA"). As set forth more fully below, the Giftcraft Receivership was commenced in the Canadian Court on May 9, 2025 on application by Royal Bank of Canada ("RBC"), a secured creditor of the Debtors.

3.  I am a Chartered Financial Analyst, a Chartered Insolvency and Restructuring Professional, and a Licensed Insolvency Trustee in Canada. I have significant experience providing advice to debtors, creditors, and other key stakeholders in a variety of Canadian and cross-border restructuring situations.

4.  I submit this declaration in support of: (a) the official form chapter 15 petitions for each of the Debtors (collectively, the "Petitions") commencing the Debtors' chapter 15 cases (the "Chapter 15 Cases"); (b) the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition"); (c) the *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion"); (d) the *Motion Pursuant to Fed. R. Bankr. P. 2002 and 9007 Requesting Entry of Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice* (the "Notice Procedures Motion"); and (e) the *Motion of Foreign Representative for Entry of Order Authorizing Joint Administration of Debtors' Chapter 15 Cases* (the "Joint Administration Motion").[2] This

---

[2] The Receiver is in the process of investigating the Debtors' assets and liabilities, the extent, validity, and priority of any security interests in its property, and potential claims held by or against the Debtors. Statements made herein are made upon information and belief based on information currently available to the Receiver, may be subject to change, and are without prejudice to the rights and remedies that may be available to the Receiver under applicable law.

declaration is intended to be read in conjunction with the declaration of Kenneth D. Kraft dated as of the date hereof, which describes receivership law in Canada more generally.

5.      The Foreign Representative is seeking the relief requested in the Petitions, Verified Petition, Provisional Relief Motion, Notice Procedures Motion, and Joint Administration Motion to ensure the effectiveness of the Appointment Order (defined below) and the protections and powers contained therein in the United States. The Receiver has concluded that such relief is necessary in order to fulfill its mandate of preserving, protecting, and realizing on the Property (as defined below) of the Debtors.

6.      In particular, the Debtors own approximately $4,000,000 CAD of book value inventory which is currently stored in the United States (the "U.S. Inventory"). I am concerned about the risk certain creditors pose to the success of the Giftcraft Receivership if they attempt to assert rights over the U.S. Inventory.

7.      The Debtors are also party to certain lease agreements for Showrooms (as defined herein) located in the United States, for the Indiana Warehouse (as defined herein), and for the Leased Premises (as defined herein) in Canada. Receivership in the U.S. will prevent contractual counterparties, including Giftcraft's landlords, from exercising certain rights and remedies during the course of the Giftcraft Receivership that would be disruptive to the process.

8.      Finally, the Receiver anticipates obtaining additional relief from the Canadian Court that may address issues related to the sale of the Debtors' assets, and to their U.S. customers and stakeholders. Recognition of the Giftcraft Receivership will provide a forum for recognition and enforcement of such relief by the United States Bankruptcy Court for the Southern District of New York (the "Court").

9. Each of these matters and the relief requested by the Foreign Representative is described in greater detail below.

## I. The Debtors' Business and Canadian Operations

10. An in-depth summary of the Debtors' business and affairs, including (i) the Debtors' corporate organization, (ii) the secured creditors of the Debtors, and (ii) the events that precipitated the appointment of the Receiver, are set out in the Verified Petition, which is incorporated herein by reference, and by the Affidavit of Andrew O'Coin, sworn May 8, 2025 (the "O'Coin Affidavit") in support of the application of RBC for the appointment of the Receiver (a copy of which is attached hereto as **Exhibit A**).[3]

11. I understand that the Debtors are comprised of a group of companies in which Giftcraft Holdings, Inc. ("GHI") is the ultimate parent, Giftcraft Ltd. ("Giftcraft Canada") is the sole Canadian entity, and Giftcraft Midco, Inc. ("Midco") is the U.S. parent to Giftcraft Holdings USA Inc. ("GH USA"), Giftcraft Inc. ("Giftcraft US"), Yosox USA Inc. ("Yosox"), and Ripskirt Hawaii, LLC ("Ripskirt").

12. Giftcraft Canada carries on the business as a supplier of gift items, including home decor, jewelry, and other novelties. Giftcraft Canada distributes inventory to retailers across Canada, ranging from independent specialty retailers to national chains. As of the commencement of the Giftcraft Receivership, I understand that Giftcraft Canada has approximately $13,000,000 (CAD) of book value inventory located in Canada, and approximately $2,500,000 (CAD) of accounts receivable. The Debtors employ 56 individuals located in Canada.

13. Prior to the commencement of the Giftcraft Receivership, Giftcraft Canada received a demand letter for payment of rental arrears for its leased premises located at 8550 Airport Road,

---

[3] The O'Coin Affidavit is attached hereto without exhibits, which are voluminous. The exhibits will be provided by the Foreign Representative to the Court or a party upon request.

Brampton, Ontario (the "Leased Premises"). I understand that, following negotiations, Giftcraft Canada's landlord, Rodenbury Investments Group ("Rodenbury") agreed to forbear from terminating the lease between Giftcraft Canada and Rodenbury (the "Lease") or exercising its right of distraint until May 12, 2025, in exchange for Giftcraft Canada's partial payment of rental arrears. The forbearance was extended to May 31, 2025, but significant arrears for rent, prior to May 2025, remain owing to Rodenbury.

**II.    The Giftcraft Receivership Proceeding**

14.    Pursuant to a commitment letter dated March 21, 2024 from HSBC Bank Canada ("HSBC"), as lender, to Giftcraft Canada, as borrower (as amended, the "Operating Facility Letter"), HSBC extended various credit facilities to Giftcraft Canada, including a revolving demand facility in the principal amount of $15,000,000 (the "Operating Loan"). The Operating Loan is repayable on demand.

15.    Pursuant to a separate commitment letter also dated March 21, 2024 from HSBC, as lender, to Giftcraft Canada and Midco, as borrowers (the "Borrowers") (as amended, the "Capital Facility Letter," and with the Operating Facility letter, the "Facility Letters"), HSBC extended various credit facilities to Giftcraft Canada and Midco, including three non-revolving demand facilities in the principal amounts of $16,875,000 USD, $3,057,858.52 USD, and $8,115,716.97 USD, respectively (the "Capital Loans"). The Capital Loans are repayable on demand.

16.    Effective March 29, 2024, RBC and HSBC (and certain of HSBC's affiliated entities) amalgamated and continued as Royal Bank of Canada. As a result, RBC assumed all the business and assets of HSBC, including all of its right, title, and interest in the Operating Facility Letter and the Capital Facility Letter.

17. The Operating Facility Letter and the Capital Facility Letter were amended by a first amendment dated September 24, 2024 among RBC, as lender, and Giftcraft Canada and Midco, as borrowers (the "First Amendment").

18. On May 9, 2025, following defaults by the Borrowers under the Facility Letters, RBC filed its Notice of Application under the BIA and CJA seeking to have a receiver appointed.

19. On May 14, 2025, the Canadian Court conducted a hearing for the appointment of the Receiver. A copy of the Canadian Court's endorsement (*i.e.*, the reasons for judgment) related to the May 14th hearing is attached hereto as **Exhibit B**. The Canadian Court's entered an order (the "Appointment Order") appointing KPMG as the Receiver, without security, over all the present and future assets, undertakings, and properties of Giftcraft acquired for, or used in relation to, a business carried on by Giftcraft, including all proceeds thereof (the "Property"). A true and correct copy of the Appointment Order is attached hereto as **Exhibit C**.

20. The Appointment Order vests the Receiver with broad power and control over the Debtors' assets and business, including the authority to take possession of and control the Debtors' assets and business. Specifically, the Appointment Order grants the Receiver the following powers and duties:

    a. to take possession of and exercise control over the Property and any and all proceeds, receipts and disbursements arising out of or from the Property;

    b. to receive, preserve, and protect the Property, or any part or parts thereof, including, but not limited to, the changing of locks and security codes, the relocating of Property to safeguard it, the engaging of independent security personnel, the taking of physical inventories and the placement of such insurance coverage as may be necessary or desirable;

    c. to manage, operate, and carry on the business of the Debtors, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

    d. to engage consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons from time to time and on whatever basis, including on a

temporary basis, to assist with the exercise of the Receiver's powers and duties, including without limitation those conferred by the Appointment Order;

e.     to purchase or lease such machinery, equipment, inventories, supplies, premises or other assets to continue the business of the Debtors or any part or parts thereof;

f.     to receive and collect all monies and accounts now owed or hereafter owing to the Debtors and to exercise all remedies of the Debtors in collecting such monies, including, without limitation, to enforce any security held by the Debtors;

g.     to settle, extend or compromise any indebtedness owing to the Debtors;

h.     to execute, assign, issue and endorse documents of whatever nature in respect of any of the Property, whether in the Receiver's name or in the name and on behalf of the Debtors, for any purpose pursuant to the Appointment Order;

i.     to initiate, prosecute and continue the prosecution of any and all proceedings and to defend all proceedings now pending or hereafter instituted with respect to the Debtors, the Property or the Receiver, and to settle or compromise any such proceedings. The authority hereby conveyed shall extend to such appeals or applications for judicial review in respect of any order or judgment pronounced in any such proceeding;

j.     to market any or all of the Property, including advertising and soliciting offers in respect of the Property or any part or parts thereof and negotiating such terms and conditions of sale as the Receiver in its discretion may deem appropriate;

k.     to sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business, (i) without the approval of the Canadian Court in respect of any transaction not exceeding $250,000 provided that the aggregate consideration for all such transactions does not exceed $1,000,000 and (ii) with the approval of the Canadian Court in respect of any transaction in which the purchase price or the aggregate purchase price exceeds the applicable amount set out in the preceding clause; and in each such case notice under subsection 63(4) of the Ontario *Personal Property Security Act*, shall not be required;

l.     to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers thereof, free and clear of any liens or encumbrances affecting such Property;

m.     to report to, meet with and discuss with such affected Persons (as defined below) as the Receiver deems appropriate on all matters relating to the Property and the receivership, and to share information, subject to such terms as to confidentiality as the Receiver deems advisable;

n.     to register a copy of the Appointment Order and any other Orders in respect of the Property against title to any of the Property;

    o.    to make an assignment into bankruptcy on behalf of any of the Debtors and for KPMG Inc. to act as trustee in bankruptcy for any of the Debtors;

    p.    to apply for any permits, licenses, approvals or permissions as may be required by any governmental authority and any renewals thereof for and on behalf of and, if thought desirable by the Receiver, in the name of the Debtors;

    q.    to enter into agreements with any trustee in bankruptcy appointed in respect of the Debtors, including, without limiting the generality of the foregoing, the ability to enter into occupation agreements for any property owned or leased by the Debtors;

    r.    to exercise any shareholder, partnership, joint venture or other rights which the Debtors may have; and

    s.    to take any steps reasonably incidental to the exercise of these powers or the performance of any statutory obligations.

*See* Appointment Order, ¶ 3.

21.    The Appointment Order further provides that, where the Receiver takes any such actions or steps, the Receiver shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons (as defined in the Appointment Order), including the Debtors, and without interference from any other Person. *Id.*

22.    The Appointment Order also includes the following "stay" provisions to be in force:

> **NO PROCEEDINGS AGAINST THE RECEIVER**
>
> 8.    **THIS COURT ORDERS** that no proceeding or enforcement process in any court or tribunal (each, a "Proceeding"), shall be commenced or continued against the Receiver except with the written consent of the Receiver or with leave of this Court.

Appointment Order, ¶ 8.

> **NO PROCEEDINGS AGAINST THE DEBTOR OR THE PROPERTY**
>
> 9.    **THIS COURT ORDERS** that no Proceeding against or in respect of the Debtors or the Property shall be commenced or continued except with the written consent of the Receiver or with leave of this Court and any and all Proceedings currently under way

> against or in respect of the Debtors or the Property are hereby stayed and suspended pending further Order of this Court.

*Id.* at ¶ 9.

> **NO EXERCISE OF RIGHTS OR REMEDIES**
>
> 10.  **THIS COURT ORDERS** that all rights and remedies against the Debtor, the Receiver, or affecting the Property, are hereby stayed and suspended except with the written consent of the Receiver or leave of this Court, provided however that this stay and suspension does not apply in respect of any "eligible financial contract" as defined in the BIA, and further provided that nothing int his paragraph shall (a) empower the Receiver or the Debtor to carry on any business which the Debtor is not lawfully entitled to carry on, (b) exempt the Receiver or the Debtor from compliance with statutory or regulatory provisions relating to health, safety or the environment, (c) prevent the filing of any registration to preserve or perfect a security interest, or (d) prevent the registration of a claim for lien.

*Id.* at ¶ 10.

23.     The Appointment Order authorizes the Receiver to act as the foreign representative of the Debtors in connection with the Verified Petition and expressly authorizes the Receiver to seek recognition of the Giftcraft Receivership in the United States via Chapter 15 of the Bankruptcy Code. *See id.*, ¶ 31. The Appointment Order provides, in relevant part, that:

> **THIS COURT ORDERS** that the Receiver be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Receiver is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Debtors to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1530, as amended.

*Id.*

24.     The Appointment Order requests that courts in the United States recognize the Giftcraft Receivership and assist the Receiver and its agents in carrying out the terms of the Appointment Order.  *See id.*, ¶ 30.

25.     Finally, the Appointment Order granted the Receiver and its counsel a charge (the "Receiver's Charge") on the Property, as security for payment of their reasonable fees and disbursements (in each case at their standard rates and charges unless otherwise ordered by the Court), both before and after the issuance of the Appointment Order.  The Receiver's Charge forms a first charge on the Property in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favor of any Person, subject to sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.  *See id.*, ¶ 19.  The Appointment Order also authorizes the Receiver to borrow funds as it considers necessary.  Such funds are subject to a charge on the Property, subordinate only to the Receiver's Charge. *See id.*, ¶ 22.

### III.    Key U.S. Assets and Operations

26.     The Debtors distribute home decor, jewelry, and other novelty products in the United States through their United States-based debtor, Giftcraft US, which sells to independent specialty retailers and national chains.  Giftcraft US does not carry any inventory, as all of its products are shipped direct to its customers, either through Giftcraft Canada or from the overseas supplier.  As of the commencement of the Giftcraft Receivership, I understand that Giftcraft US has approximately $2,300,000 (USD) of accounts receivable.  Giftcraft US does not currently employ any individuals in the United States.

27.     In addition to the distribution of Giftcraft US's products throughout the United States, I understand that the United States-based debtor, Ripskirt, carries on a business producing and distributing women's apparel, specializing in quick-drying skirts, dresses, and cover-ups.

Ripskirt's products are sold through various channels, including e-commerce and retail distribution.

28. I understand Ripskirt ships from a third-party logistics (3PL) warehouse facility located in Greenwood, Indiana (the "Indiana Warehouse"). Based on the information that RBC has at this time, the Debtors have approximately $4,000,000 CAD in Ripskirt book value inventory located in the Indiana Warehouse and the Debtors owe more than $300,000 USD to the owner of the Indiana Warehouse.

29. I have been informed that the Debtors currently employ ten (10) individuals in the United States who all work remotely.

30. I understand that, prior to the commencement of the Giftcraft Receivership, the Debtors leased and maintained two showrooms located in Atlanta, Georgia and Dallas, Texas (together, the "Showrooms"), where the Debtors stored sample inventory for U.S.-based retail buyers. I have been informed that, in January 2025, the Debtors vacated the Showrooms and discontinued rent payments under each of the Showroom leases.

31. In April 2025, counsel to the landlord for the Atlanta Showroom sent several demand letters to the lessee, Giftcraft US, for rental arrears, threatening "immediate legal action" to obtain payment.

32. Based upon information and belief, as of May 13, 2025, Giftcraft US's total accounts payable is approximately $386,000 USD, attributable to twenty-nine (29) creditors. Its largest creditor is AmericasMart. Ripskirt's total accounts payable is approximately $1.43 million USD, attributable to twenty (20) creditors. Of these creditors, the largest amounts are owed to Meta/Facebook and FedEx Supply Chain.

**IV.   The Chapter 15 Proceeding**

33.   These Chapter 15 Cases were commenced to ensure that the powers and protections granted to the Receiver by the Canadian Court in the Appointment Order are effective and enforceable in the United States and that the Receiver has a forum in which to seek relief with respect to issues relating to U.S.-based assets of the Debtors.

34.   KPMG was authorized pursuant to the Appointment Order to act as the Foreign Representative of the Giftcraft Receivership and to seek recognition and approval of the Giftcraft Receivership as necessary, including as "foreign main proceedings" under the Bankruptcy Code.

35.   On the date hereof (the "Petition Date"), and in its capacity as the Foreign Representative of the Debtors, KPMG filed petitions under chapter 15 of the Bankruptcy Code for recognition of the Giftcraft Receivership, thereby commencing the Debtors' Chapter 15 Cases.

36.   For the reasons set forth in the Verified Petition, I understand and believe that, in accordance with the requirements of the Bankruptcy Code, (i) the Debtors are eligible to be debtors in these Chapter 15 Cases, (ii) the Giftcraft Receivership qualifies as a "foreign main proceeding," (iii) the Debtors' center of main interests is Canada, and (iv) that recognition of the Giftcraft Receivership as a "foreign main proceeding" is consistent with the purpose of chapter 15 and will allow the Receiver to realize on the Debtors' assets in the most efficient, orderly, and economical manner possible while respecting the rights of creditors.

37.   Through the Provisional Relief Motion, provisional relief is sought against the following parties: (a) secured creditors; (b) counterparties to certain of Giftcraft's contracts; (c) landlords and any other parties claiming interests in the U.S. Inventory; and (f) other creditors and parties in interest, as set forth on the Consolidated Verified List Pursuant to Fed. R. Bankr. P. 1007(a)(4), 1008, and 2002(q) attached to the Petitions.

38. The Foreign Representative commenced these Chapter 15 Cases to provide the Receiver with the breathing room and stability necessary to realize on the Debtors' assets in the most efficient, orderly, and economical manner possible, including by seeking certain provisional relief between the Petition Date and the Bankruptcy Court's entry of the proposed order recognizing the Giftcraft Receivership. Such provisional relief includes, among other things, the Bankruptcy Court's immediate ordering of the application of section 362 of the Bankruptcy Code to these Chapter 15 Cases. Without such relief, the Debtors may be exposed to potentially adverse action in the United States by certain creditors and other parties in interest (including contract counterparties) who may disregard the stay imposed under the Appointment Order and disrupt the Receiver's efforts.

39. The Foreign Representative anticipates that the Canadian Court will issue further orders that will resolve disputes related to the assets of the Debtors and facilitate the sale or liquidation of the Debtors' assets. The Receiver anticipates requiring recognition of such orders because certain of the Debtors' assets are located within the jurisdiction of the United States. The Foreign Representative also seeks recognition of the Giftcraft Receivership to provide a forum for recognition of such orders.

40. In compliance with the requirements of Bankruptcy Rule 1007(a)(4)(B), KPMG, as the Foreign Representative, shall maintain control of and be authorized to administer the Giftcraft Receivership. The service address for KPMG in these Chapter 15 Cases is: Bay Adelaide Centre, West Tower, 333 Bay Street, Suite 4600, Toronto, Ontario M5H 2S5, Canada. I am aware of no other persons or bodies authorized to administer foreign proceedings on behalf of Giftcraft.

41. For the reasons stated in this Declaration, in the Petitions, the Verified Petition, the Notice Procedures Motion, the Joint Administration Motion, and the Provisional Relief Motion, I

request that the Verified Petition and the Provisional Relief Motion be granted in their entireties, together with such other and further relief as the Court may deem just and proper.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 20th day of May 2025
Toronto, Ontario
Canada

KPMG Inc., solely in its capacity as court-appointed
Foreign Representative and not in its individual or
corporate capacity


By: */s/ Pritesh Patel*
      Pritesh Patel, Senior Vice President