UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Giftcraft Ltd., *et al.*,[1] <br><br> Debtors in a Foreign Proceeding. | Chapter No. 15 <br><br> Case No.: 25-11030 (MG) <br><br> (Joint Administration Pending) |

**DECLARATION OF KENNETH D. KRAFT IN SUPPORT
OF VERIFIED PETITION OF FOREIGN REPRESENTATIVE
FOR (I) RECOGNITION OF CANADIAN PROCEEDING AS FOREIGN MAIN
PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND
(III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Kenneth D. Kraft, to the best of my information and belief, state as follows:

1.      I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration based upon my own personal knowledge except for those portions specified as being otherwise.

2.      I am a partner in and co-leader of the Restructuring, Insolvency, and Bankruptcy group in the Toronto office of the Canadian law firm of Dentons Canada LLP ("Dentons"). Dentons' Toronto offices are located at 77 King Street West, Suite 400, Toronto, Ontario, Canada M5K 0A1. Dentons is Canadian counsel to KPMG Inc. ("KPMG") in its capacity as receiver and manager (in such capacity, the "Receiver") and duly authorized foreign representative (in such capacity, the "Foreign Representative") for the above-captioned debtors (the "Debtors"), whose

---

[1]     The chapter 15 debtor incorporated in Canada and/or in the province of Ontario (the "Canadian Debtor"), along with the last four digits of the Canadian Debtor's Canadian business number, is: Giftcraft Ltd. ("Giftcraft Canada") (9013). The chapter 15 debtors incorporated in the United States (the "U.S. Debtors"), along with the last four digits of each U.S. Debtor's federal tax identification number, are: Giftcraft Holdings USA Inc. ("GH USA") (7406); Giftcraft Holdings, Inc. ("GHI") (1472); Giftcraft Midco, Inc. ("Midco") (1204); Giftcraft Inc. ("Giftcraft US") (6759); Ripskirt Hawaii, LLC ("Ripskirt") (7613); and Yosox USA Inc. ("Yosox") (1367). The Canadian Debtor and the U.S. Debtors are referred to herein, collectively, as the "Debtors" or "Giftcraft"). The Debtors' executive headquarters are located at 8550 Airport Road, Brampton, Ontario, L6T 5A3.

receivership is proceeding (the "Canadian Proceeding") under the federal *Bankruptcy and Insolvency Act,* R.S.C. 1985, c. B-3, s. 243 (as amended, the "BIA") and provincial *Courts of Justice Act* (Ontario), R.S.O. 1990 c. C.43, s. 101 (as amended, the "CJA") before the Ontario Superior Court of Justice (Commercial List) (the "Ontario Court").

3.  I submit this declaration (this "Declaration") in support of the *Verified Petition of Foreign Representative for (I) Recognition of Canadian Proceeding as Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* filed contemporaneously herewith (the "Verified Petition")[2] and the *Foreign Representative's Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion") filed in these chapter 15 cases on this day, in connection with the relief the Receiver, as the Foreign Representative, is requesting in these chapter 15 cases and to aid the United States Bankruptcy Court for the Southern District of New York (the "Court") in understanding Canadian law regarding court-appointed receiverships.

4.  If I were called upon to testify, I could and would testify competently to the statements set forth herein. The Foreign Representative has authorized me to submit this Declaration.

5.  In this Declaration, after describing my background and qualifications, I provide a description of Canadian law and the practice relevant to this Court's consideration of the Verified Petition and Provisional Relief Motion.

6.  In preparing this Declaration, I have reviewed (i) the Verified Petition, (ii) the Provisional Relief Motion, (iii) the documents submitted in these chapter 15 cases, and (iv) the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Verified Petition.

relevant provisions of the BIA, the CJA, and other relevant provisions of Canadian law that I consider relevant to this application.

### Professional Background and Qualifications

7. I hold a Bachelor of Laws from Osgoode Hall Law School (Toronto, Ontario), and a Master of Laws from the London School of Economics and Political Science (London, England). I was admitted to the Ontario Bar in 1991.

8. I have extensive experience in the field of Canadian corporate reorganization and insolvency law, advising debtor corporations, lenders, creditors, court-appointed officers (including receivers), trustees, restructuring officers, and acquirers in CCAA proceedings, receiverships, and bankruptcy proceedings, as well as under federal and provincial corporate and/or insolvency legislation in both Canada and international contexts.

9. My expertise in Canadian restructuring and insolvency law has been recognized by different publications, including *IFLR100 Canada*, *Chambers Canada*, *The Legal 500 Canada*, *The Best Lawyers in Canada*, *The Canadian Legal Lexpert Directory*, *Expert Guides*, and *Chambers Global*. Recent Canada/US cross-border insolvency proceedings in which I have acted as lead Canadian counsel include Legacy Lifestyles, SimEx, and Silicon Valley Bank (Canada Branch).

### Statements of Canadian Law and Practice

#### A. Applying to Appoint a Receiver

10. An appropriate party may bring an application before a court of competent jurisdiction to have a receiver (or receiver and manager) appointed over the assets, business, and undertakings of a debtor company or any part thereof. The court has authority to grant the application and appoint a receiver under various statutes, including the federal BIA (s. 243) or

provincial Rules of Court found in all common law provinces (*i.e.*, all Canadian provinces other than Quebec) such as the CJA (s. 101).

11. To qualify to bring an application under the BIA, the applicant must be a secured creditor of the debtor. There is no express requirement that the applicant be a secured creditor under the CJA (or similar Rules of Court in other provinces), but applying parties are typically secured creditors. It is common to seek the appointment of a receiver under both statutes concurrently.

12. The application seeking the receiver's appointment normally is to be served on the debtor company and is typically served on other creditors holding security interests in the debtor's property where the relief requested on appointment of the receiver is likely to affect such creditors' interests. The debtor and other parties in interest with notice of the application have the opportunity to respond to the application and either oppose, support, or provide views for the court's consideration. The amount of notice given of the hearing of the receivership application will vary, depending on the particular circumstances of the case. The court has the authority to validate "short service" in appropriate circumstances.

13. Generally, to appoint a receiver, the court has to be satisfied that it is "just and/or convenient" to do so. This test is informed by extensive case law.

B. **Powers of Receiver**

14. A receiver, or receiver and manager, may be granted the authority in the court order appointing it (typically referred to as an "Appointment Order") to deal with a debtor company's assets, including authority to operate and manage the debtor's business in place of the existing management. The receiver can also be granted authority to shut down the business if the receiver

concludes the continued operations will likely erode the recoveries for creditors or if there is insufficient funding to continue operations.

15. The receiver does not become the owner of the debtor company's assets; however, the receiver may be granted the right (but not the obligation) in the appointment order to take possession and custody of the assets of the debtor and to sell them. Where a receiver does exercise this authority, it typically does so to the exclusion of all other parties.

16. The court appointment of a receiver is typically accompanied by a comprehensive stay of proceedings restraining creditor action against the debtor, the debtor's property, and the receiver, and providing a more stable platform for the realization to occur.

17. Following its appointment, the receiver may return to court to seek additional relief such as an order authorizing it to sell assets "free and clear" of liens and encumbrances to which the debtor company may be subject. The receiver may also seek advice and direction from the court prior to undertaking any particular action.

### C. Duties of Receiver

18. Court-appointed receivers must be "licensed insolvency trustees" ("LITs"). LITs are typically financial professionals at accounting or financial advisory firms and are regulated by the federal Office of the Superintendent of Bankruptcy. Section 257 of the BIA mandates that a receiver shall "(a) act honestly and in good faith; and (b) deal with the property of the insolvent person or the bankrupt in a commercially reasonable manner." *See* B.I.A. s. 247.

19. A court-appointed receiver is not an agent or representative of the party that sought its appointment. It is an independent officer of the court that acts as principal, not as agent. A court-appointed receiver is a fiduciary. A fundamental duty of a receiver is to realize value from the assets of the debtor company for the benefit of all stakeholders. In this respect, a court-

appointed receiver owes duties not only to the court but must also consider the interest of all parties who may have an interest in the debtor entity's assets, property, and undertakings.

D.   **Reporting Obligations**

20.   Court-appointed receivers have certain obligations mandated by their appointment. The receiver must provide notice of its appointment to known creditors within five days after its appointment and, at various stages of administration of the receivership, prepare and distribute interim and final reports concerning the receivership. *See* B.I.A., §§ 245–246. These reports are filed with the Office of the Superintendent of Bankruptcy and may be made available to all creditors. A court-appointed receiver must also report to the court, at such times and intervals as may be required, while carrying out its mandate.

E.   **Professional Fees and Court Ordered Charges**

21.   During a receivership proceeding, a receiver and its counsel are paid their reasonable fees and disbursements, in each case, typically at their standard rates and charges. Such fees and expenses are subject to review and approved by the court. The receiver and its counsel are granted a "receiver's charge" on the property of the debtor as security for such fees and disbursements, which charge typically has priority over all other security interests, trusts, liens, charges, and encumbrances on the property, subject to sections 14.06(7), 81.4(4), and 81.6(2) of the B.I.A. *See* B.I.A. s. 243.

22.   In order to fund the receivership proceeding, the receiver is also typically empowered to borrow such monies as it considers necessary or desirable during the course of the receivership proceedings, provided that the total amount borrowed does not exceed a limit prescribed in the Appointment Order. All amounts borrowed by the receiver are typically secured

by a "receiver's borrowings charge" in priority to all security interests, trusts, liens, charges, and encumbrances on the property, other than the receiver's charge.

23. Where the Appointment Order contemplates that the receiver's charge and/or receiver's borrowings charge will take priority over the holders of secured interests, such secured creditors must be provided with prior notice of the application for the Appointment Order.

**F.     Creditor Participation**

24. Counsel to the receiver maintains a service list. Any party in interest may serve and file a notice of appearance, in a standardized form, at which time they will be added to the service list and will receive notice of the various pleadings filed in the receivership proceedings. Parties in interest may also be added to the service list by simply contacting counsel to the receiver by telephone or email and making such request. Appointment orders typically permit service of court documents to be effected by email on the service list.

25. Generally, creditors and other stakeholders such as customers, employees and regulatory authorities affected by the relief sought have standing to make submissions before the court. The receiver also maintains a website and posts copies of pleadings, orders, and endorsements (*i.e.*, opinions issued by the court) on the website.[3]

26. Hearings before the court in the receivership proceedings are public. In recent years following COVID-19, in-person court hearings have resumed before the Ontario Court; however, with certain exceptions, most insolvency proceedings still typically occur virtually. United States-based counsel (and other foreign-based parties) often attend such hearings virtually as "observers" along with their Ontario counsel.

---

[3]     The Receiver's website is: kpmg.com/ca/giftcraft.

27. Appointment orders will typically contain a "comeback clause" which, in essence, provides that any "interested party" may apply to the court to vary or amend the appointment order on not less than seven (7) days' notice to the receiver and any other party likely to be affected by the order sought.

### G. Claims Process

28. Typically, once a receiver has sold, disposed of, or otherwise realized on the assets of the debtor, it will seek to distribute proceeds to creditors in accordance with their entitlements and priority, following court approval of the proposed distribution. If the only recovery is to secured creditors, there may be no need for a claims process. If there are any surplus funds after satisfying all secured claims, the receiver may run a court-sanctioned claims process or seek the court's approval to assign the debtor into bankruptcy and have unsecured claims dealt with through bankruptcy proceedings (generally equivalent to chapter 7 proceedings under the United States Bankruptcy Code). The Appointment Order in this case already empowers the Receiver to make an assignment into bankruptcy.

### H. Discharge of Receiver

29. Upon completion of its mandate the receiver will seek its discharge by the court, on notice to the service list. After the granting of a discharge order, the discharge typically becomes effective on the filing of certificate by the receiver, certifying that all its duties and obligations under the appointment order (or any other order of the court) have been completed. It is typical in Ontario for receivers to be granted a release in favor of the receiver releasing it from any liability incurred in its capacity as receiver of the debtor (other than with respect to gross negligence or willful misconduct) as part of the discharge order. Further, a party who wishes to

commence an action against a receiver must first obtain leave (*i.e.* permission) of the Court.  B.I.A. s. 215.

### I. Model Receivership Order

30. By way of Practice Direction, the Ontario Court has adopted a "Model Receivership Order" which sets out the provisions, including the broad range of powers, that the Ontario Court will typically consider appropriate in granting an appointment order.

31. The Ontario Court will rely on the Model Receivership Order as the "standard". Parties applying for a receivership under the BIA or CJA use the Model Receivership Order as a template when drafting a proposed receivership order, with changes made as necessary to reflect the particular circumstances.

32. The Model Receivership Order provides that the receiver may act as a foreign representative to seek recognition of the appointment order in jurisdictions outside of Canada.

### The Canadian Proceeding

33. On May 9, 2025, Royal Bank of Canada ("RBC"), as a secured creditor of the Debtors, served an application for appointment of a receiver (the "Application") in the Ontario Court.  The Application was served on the Debtors, secured creditors, and key contract counterparties, among others.  On May 14, 2025, the Ontario Court entered an order appointing KPMG as receiver over all of the Debtors' Property (the "Appointment Order").  A true and correct copy of the Appointment Order is attached to the Foreign Representative Declaration.  The Appointment Order is generally consistent with the Model Receivership Order.  A blackline of the Appointment Order to the Model Receivership Order is attached hereto as **Exhibit A**.

34. To date, no party has sought to vary or amend the Appointment Order.

35. Pursuant to the Appointment Order, *inter alia*, the Receiver was duly authorized to act as Foreign Representative in respect of the within proceedings for the purpose of having the Receivership Proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Debtors to apply to this Court for relief pursuant to Chapter 15 of the Bankruptcy Code. *See* Appointment Order ¶ 31.

36. The Appointment Order contains a comprehensive stay of proceedings in respect of the Debtors providing that, during such stay, no proceeding or enforcement process in any court or tribunal against or in respect of the Debtors or the Receiver shall be commenced or continued except with written consent of the Receiver or on order of the Ontario Court. All rights and remedies held by any individual, firm, corporation, government body, or any other entity is stayed except with written consent of the Receiver or order of the Ontario Court; provided that such stay and suspension does not apply in respect of any "eligible financial contract" as defined in the B.I.A.[4] *See* Appointment Order ¶¶ 8–11.

37. During the course of the Canadian Proceeding, all Persons having oral or written agreements with the Debtors, or statutory or regulatory mandates for the supply of goods and/or services, are restrained from discontinuing, altering, or terminating the supply of such goods or services. In each case, the Receiver is required to pay the normal prices or charges for such goods or services received after the date of the Appointment Order. *See* Appointment Order ¶ 12.

38. The Appointment Order grants the Receiver and counsel to the Receiver, a Receiver's Charge on the Property (each, as defined therein) as security for their respective fees and disbursements. The Receiver's Charge has priority over all security interests, trusts, liens,

---

[4] Eligible financial contracts (EFCs) are a specific type of financial agreement that receive special treatment under the B.I.A., substantially similar to "safe harbor" stay exceptions under the Bankruptcy Code.

charges and encumbrances, statutory or otherwise, in favor of any person, subject to sections 14.06(7), 81.4(4), and 81.6(2) of the B.I.A.  *See* Appointment Order at ¶ 19.

39.  The Appointment Order also empowers the Receiver to borrow monies for the purpose of funding the exercise of its powers and duties, provided that the outstanding principal amount does not exceed $1,000,000 CAD (or such other amount as the Ontario Court may further authorize).  The Appointment Order provides for a Receiver's Borrowings Charge (as defined therein) as security for payment of any amounts borrowed by the Receiver.  The Receiver's Borrowings Charge is subordinate only to the Receiver's Charge and any charges as set out in sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.  *See* Appointment Order at ¶ 22.

40.  As provided in the Declaration of Foreign Representative Pursuant to 11 U.S.C.§ 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy filed concurrently herewith, the purpose of the foreign recognition proceedings and the provisional relief requested in the United States is to help ensure the enforceability and effectiveness of the Appointment Order and subsequent orders to be entered by the Ontario Court in the Canadian Proceeding.  I believe that the Debtors require the protection afforded to foreign debtors pursuant to chapter 15 of the Bankruptcy Code in order to prevent disruption of business and recognize the legal effect of the Debtors' receivership in the United States.

41.  To the best of my information and belief, the Canadian Proceeding is comprised of collective judicial proceedings under Canadian law relating to the adjustment of debt of each of the Debtors, in which the purpose is to realize value for the Debtors' assets for the benefit of all stakeholders.

42. To the best of my information and belief, and as identified in the Foreign Representative Declaration filed contemporaneously herewith, other than these Chapter 15 Cases, the Debtors' receivership is the only proceeding related to the adjustment of debts pending for the Debtors and, therefore, is the only "foreign proceeding" with respect to the Debtors within the meaning of section 101(23) of the Bankruptcy Code.

*[Remainder of page intentionally left blank.]*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 20th day of May 2025
Toronto, Ontario
Canada

By: /s/ *Kenneth D. Kraft*
    Kenneth D. Kraft

    Dentons Canada LLP
    77 King Street West, Suite 400
    Toronto, Ontario
    Canada M5K 0A1