**CHIPMAN BROWN CICERO & COLE, LLP**
Daniel G. Egan
501 5th Ave. 15th Floor
New York, New York 10017
Telephone: (646) 741-5529
egan@chipmanbrown.com

**CHIPMAN BROWN CICERO & COLE, LLP**
Mark L. Desgrosseilliers (admitted *pro hac vice*)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
desgross@chipmanbrown.com

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Giftcraft Ltd. *et al.*,[1] <br><br>     Debtors in a Foreign Proceeding. | Chapter No. 15 <br><br> Case No.: 25-11030 (MG) <br><br> (Joint Administration Pending) |

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF (A) MOTION OF FOREIGN REPRESENTATIVE FOR PROVISIONAL RELIEF PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE AND (B) VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

---

[1]     The chapter 15 debtor incorporated in Canada and/or in the province of Ontario (the "Canadian Debtor"), along with the last four digits of the Canadian Debtor's Canadian business number, is:  Giftcraft Ltd. ("Giftcraft Canada") (9013).  The chapter 15 debtors incorporated in the United States (the "U.S. Debtors"), along with the last four digits of each U.S. Debtor's federal tax identification number, are:  Giftcraft Holdings USA Inc. ("GH USA") (7406); Giftcraft Holdings, Inc. ("GHI") (1472); Giftcraft Midco, Inc. ("Midco") (1204); Giftcraft Inc. ("Giftcraft US") (6759); Ripskirt Hawaii, LLC ("Ripskirt") (7613); and Yosox USA Inc. ("Yosox") (1367).  The Canadian Debtor and the U.S. Debtors are referred to herein, collectively, as the "Debtors" or "Giftcraft").  The Debtors' executive headquarters are located at 8550 Airport Road, Brampton, Ontario, L6T 5A3.

181804238

Pursuant to the Court's request at the May 22, 2025 hearing in these chapter 15 cases for supplemental briefing in support of (i) the *Motion of Foreign Representative for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [Docket No. 6] (the "<u>Motion</u>"), addressing the likelihood that the Giftcraft Receivership[2] will be recognized as a foreign main proceeding (or, in the alternative, a foreign nonmain proceeding) as to each of the above-captioned debtors with a registered office in the United States (the "<u>U.S. Debtors</u>"); and (ii) the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 3] (the "<u>Verified Petition</u>"); the Foreign Representative hereby submits this supplemental memorandum of law (the "<u>Supplemental Memorandum</u>").   In support hereof, the Foreign Representative relies upon and respectfully incorporates by reference (i) the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 4] (the "<u>Initial Declaration</u>"), (ii) the *Supplemental Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code*, filed simultaneously herewith (the "<u>Supplemental Declaration</u>"), and (iii) the *Declaration of Kenneth D. Kraft in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the*

---

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Verified Petition, as applicable.

- 2 -

*Bankruptcy Code* [Docket No. 5] (the "Kraft Declaration").  In further support, the Foreign Representative respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Since commencement of these cases, the Receiver has determined to seek recognition of the Giftcraft Receivership solely as it pertains to Giftcraft Canada, Giftcraft US, Ripskirt, and Yosox.  The Receiver, in its capacity as the Foreign Representative, therefore withdraws its request for provisional relief under section 1519 of the Bankruptcy Code as to Giftcraft Holdings USA Inc. ("GH USA"), Giftcraft Holdings, Inc. ("GHI"), and Giftcraft Midco, Inc. ("Midco").[3]  The Foreign Representative now seeks entry of an order granting or extending the provisional relief only as to Giftcraft Canada, Giftcraft US, Ripskirt, and Yosox (together, the "Chapter 15 Debtors").

2.      Provisional relief should be granted to the Chapter 15 Debtors because the center of main interest (COMI) for each Chapter 15 Debtor is located in Canada, and the Giftcraft Receivership qualifies as a foreign main proceeding.  Canada is not only the nerve center of the Chapter 15 Debtors' business, where decisions are made, books and records are maintained, and finances are managed—Canada is also the location of most of the Chapter 15 Debtors' employees and their only office.  Giftcraft Canada is deeply involved in the function and operation of each of the Chapter 15 Debtors' business operations, as set forth in detail herein and in the Initial Declaration and Supplemental Declaration as to each Chapter 15 Debtor.  Each of Giftcraft US, Ripskirt, and Yosox could not operate independently of the activities that take place in Canada.

---

[3]      None of GH USA, GHI, or Midco have any operations, assets, bank accounts, or customers.  Accordingly, the Foreign Representative seeks to narrow the scope of this Court's analysis to those Debtors who urgently need the provisional relief requested herein.

3.     Alternatively, the Chapter 15 Debtors each have an "establishment" in Canada that warrants recognition of the Giftcraft Receivership as a foreign nonmain proceeding. Each Chapter 15 Debtor has a place of operations located in Canada where such debtor carries out a nontransitory economic activity.

4.     In addition, for the reasons set forth in the Motion, Initial Declaration, and Supplemental Declaration, the Foreign Representative submits that provisional relief is warranted under the circumstances because (i) there is a sufficient risk of imminent irreparable harm to the Giftcraft Receivership and the Chapter 15 Debtors' assets, including in connection with inventory located within the United States and creditors and contract counterparties in the United States, (ii) the balance of harms weighs in favor of granting provisional relief in light of the risks from creditors and the temporary nature of the provisional relief through a final decision on recognition, and (iii) the public interest is served by affording the Receiver relief to aid in the administration of the receivership and the Appointment Order and in promoting cooperation between courts here and in Canada.

5.     Accordingly, the Foreign Representative requests that this Court (i) grant provisional relief as to the Chapter 15 Debtors under section 1519 of the Bankruptcy Code pending a final hearing on recognition, (ii) recognize the Giftcraft Receivership as a foreign main proceeding (or, in the alternative, a foreign nonmain proceeding) as to each of the Chapter 15 Debtors, and (iii) grant related relief as may be necessary and appropriate.

## **BACKGROUND**

6.     The relevant background set forth in the Verified Petition is hereby incorporated by reference herein. As described in the Verified Petition, following certain events of default under the Facility Letters, on May 9, 2025, RBC filed an application in the Canadian Court seeking to

- 4 -

appoint KPMG, a licensed insolvency trustee, as the Receiver for all of the Debtors, to secure the Property and review strategic alternatives with a view to maximizing value for all stakeholders.

7.      On May 20, 2025 (the "<u>Petition Date</u>"), the Receiver, in its capacity as the Foreign Representative, filed, *inter alia*, (i) petitions for each of the Debtors for relief under chapter 15 of the Bankruptcy Code in this Court, (ii) the Verified Petition seeking recognition of the Giftcraft Receivership as a foreign main proceeding (or, in the alternative, a foreign nonmain proceeding), (iii) the Initial Declaration of the Foreign Representative in support of the Verified Petition, and (iv) the Motion seeking provisional relief under section 1519 as to each of the Debtors.

8.      Notice of the commencement of the Giftcraft Receivership was sent to all of the Debtors' known creditors on May 21, 2025.  To date, no creditor has objected to the Giftcraft Receivership.  *See* Supplemental Declaration, ¶ 19.

9.      Following a hearing on May 22, 2025, this Court entered an order granting provisional relief with respect to Giftcraft Canada for a period of fourteen (14) days.  As to the provisional relief requested for the U.S. Debtors, the Court granted the Foreign Representative the opportunity to file supplemental briefing, citing the need for an entity-by-entity analysis of the likelihood that the COMI of each U.S. Debtor is located in Canada.

## ARGUMENT

**I.    PROVISIONAL RELIEF IS WARRANTED UNDER SECTION 1519 OF THE BANKRUPTCY CODE AS TO THE CHAPTER 15 DEBTORS.**

10.     Under section 1519 of the Bankruptcy Code, provisional relief is conditional upon a foreign representative satisfying the applicable standard for injunctive relief.  11 U.S.C. § 1519(e).  In the context of a chapter 15 proceeding, provisional relief should be issued if the moving party can show (i) a likelihood of success on the merits (*i.e.*, the request for recognition), (ii) irreparable harm, (iii) the balance of hardships weighs in favor of the party seeking provisional

relief, and (iv) the relief is not contrary to the public interest.  *See, e.g., Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 588–89 (Bankr. S.D.N.Y. 2009); *see also Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 48–50 (Bankr. S.D.N.Y. 2006), *aff'd* 365 B.R. 401 (S.D.N.Y. 2007).  Courts in the Second Circuit require movants to show all four of these factors or, in the alternative, to "show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *MF Global Holdings Ltd. v. Allied World Assur. Co. (In re MF Glob. Holdings Ltd.)*, 562 B.R. 55, 64 (Bankr. S.D.N.Y. 2017).  In evaluating these factors, courts take a "flexible approach and no one factor is determinative."  *In re Calpine Corp.*, 365 B.R. at 409 (internal citations omitted).  The Foreign Representative satisfies this standard with respect to the Chapter 15 Debtors.

11.    The Foreign Representative is likely to succeed on the merits because the Giftcraft Receivership satisfies the requirements of a foreign main proceeding (or, in the alternative, a foreign nonmain proceeding), as discussed herein.  As set forth in detail in the Verified Petition, the Motion, the Initial Declaration, and the Supplemental Declaration, each of which is incorporated herein by reference, the Giftcraft Receivership is (i) a "foreign proceeding" as defined under section 101(23) and (ii) a "foreign main proceeding" as defined in section 1502(4).  Moreover, the Foreign Representative has demonstrated that it is a proper "foreign representative" as defined under section 101(24).  Finally, the Verified Petition was filed in accordance with, and satisfies the applicable requirements of, chapter 15.

12.    Bankruptcy courts in this District and others have granted provisional relief under section 1519 of the Bankruptcy Code to United States debtors in chapter 15 cases seeking

recognition of Canadian proceedings.  *See, e.g.*, *In re Ted Baker Canada Inc*., Case No. 24-10699 [Docket No. 17] (Bankr. S.D.N.Y. April 25, 2024); *In re Nygard*, Case No. 20-10828 [Docket No. 21] (Bankr. S.D.N.Y. March 26, 2020); *In re Bench Accounting, Inc.*, Case No. 25-10463 [Docket No. 20] (Bankr. D. Del. March 18, 2025); *In re SimEx Inc.*, Case No. Case No. 24-10083 [Docket No. 26] (Bankr. D. Del. Jan. 26, 2024); *In re Legacy Lifestyles Destin LP*, Case No. 22-01246 (LVV) [Docket No. 14] (Bankr. M.D. Fla. April 14, 2022); *In re Thane Int'l, Inc.*, Case No. 15-12186 (KG) [Docket No. 21] (Bankr. D. Del. Oct. 27, 2015); *In re Talon Systems Inc.*, Case No. 13-11811 (KJC) [Docket No. 27] (Bankr. D. Del. July 31, 2013).

13.    If doubt exists as to whether the Giftcraft Receivership is likely to be recognized as either a foreign main or foreign nonmain proceeding, and the Foreign Representative respectfully submits that no such doubt should exist, the Court should nonetheless determine, for the reasons stated below, that the balance of hardships weighs in favor of granting provisional relief to the Chapter 15 Debtors in advance of this Court's decision on the Verified Petition.  Provisional relief should be granted "where relief is urgently needed to protect the assets of the debtor or the interest of creditors . . . ."  11 U.S.C. § 1519(a).

14.    Although a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time," there is necessarily a gap between the time the petition is filed and the time the court makes a decision on whether the foreign proceeding should be recognized.  11 U.S.C. § 1517(c).  Prior to recognition, a chapter 15 debtor does not enjoy the benefit of the automatic stay, which, in this case, necessitates an order granting provisional relief to protect assets located in the territorial jurisdiction of the United States, including approximately $2,000,000 (USD) in inventory located at the Indiana Warehouse.  Without the application of the automatic stay and the ability of the Receiver to control the Chapter 15 Debtors' assets located in the United

States, there is a material risk that the Chapter 15 Debtors' creditors, including lessors and their third-party logistics provider and owner of the Indiana Warehouse, may commence enforcement actions against the Chapter 15 Debtors and their properties located in the United States during the gap period between the Petition Date and the date on which this Court determines whether to recognize the Canadian Proceeding. The Foreign Representative also needs provisional relief to assist it in obtaining and maintaining control over the Chapter 15 Debtors' assets located within the territorial jurisdiction of the United States.

15.    As a result, there is an urgent need for provisional relief to (i) stay the commencement or continuation of actions against the Chapter 15 Debtors and their assets in the United States, (ii) ensure that the counterparties to the Chapter 15 Debtors' contracts continue to perform, and (iii) authorize the Receiver to operate, manage and administer the Chapter 15 Debtors' assets in the United States.

**A.    The Giftcraft Receivership is Likely to Be Recognized as a Foreign Main Proceeding as to Each of the Chapter 15 Debtors.**

16.    In order to grant recognition of a foreign proceeding in a chapter 15 context, a bankruptcy court must first find that the foreign proceeding in question constitutes either a main or nonmain proceeding with respect to each debtor. *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 270 (Bankr. S.D.N.Y. 2019) (citations omitted).

17.    Section 1502 of the Bankruptcy Code defines "foreign main proceeding" as a "foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign nonmain proceeding is defined as a "foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). An "establishment" is defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2).

18.     In considering whether a foreign proceeding is a foreign *main* proceeding, under section 1516(c) of the Bankruptcy Code, there is a rebuttable presumption that a debtor's center of main interests, or COMI, is where it has its "registered office." 11 U.S.C. § 1516(c).   The presumption that the place of the registered office is also the center of the debtor's main interest is included for speed and convenience of proof where there is no serious controversy, but it is "not a preferred alternative where there is a separation between a corporation's jurisdiction of incorporation and its real seat." *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 703 (Bankr. S.D.N.Y. 2017) (quoting *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007), aff'd, 389 B.R. 325 (S.D.N.Y. 2008)); *see also* H.R. Rep. No. 109-31, at 112-13 (2005) ("The presumption that the place of the registered office is also the center of the debtor's main interest is included for speed and convenience of proof where there is no serious controversy.").[4]

19.     Bankruptcy courts in the Second Circuit consider the following non-exclusive factors in their COMI analysis, although consideration of these specific factors is neither required nor dispositive:

    a.   the location of the debtor's headquarters;

    b.   the location of those who actually manage the debtor;

    c.   the location of the debtor's primary assets;

    d.   the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or

    e.   the jurisdiction whose law would apply to most disputes.

---

[4]     In *Bear Stearns*, the court concluded that although the companies' registered office was located in the Cayman Islands, the hedge fund's operations were controlled entirely from New York, it had no personnel or business in the Caymans other than a letterbox, and its COMI was at the New York headquarters. *In re Bear Stearns*, 374 B.R. at 129–30.

20.      *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).   In considering the so-called *SPhinX* factors, bankruptcy courts have wide latitude and discretion to determine COMI.  Within that nuanced analysis, the Second Circuit in *Fairfield Sentry* suggested that courts also look at the debtor's "nerve center," including where the debtor's activities are directed and controlled, in determining its center of main interest. *Fairfield Sentry*, 714 F.3d at 137 ("[A]ny relevant activities, including liquidation activities and administrative functions, may be considered in the COMI analysis.").  In addition, the European Union Council Regulation enacting the Convention on Insolvency Proceedings provides: "The 'centre of main interests' should correspond to the place where the debtor *conducts the administration of his interests on a regular basis* and *is therefore ascertainable by third parties.*"  Council Regulation (EC) No. 1346/2000 of 29 May 2000, Preamble ¶ 13 (emphasis added).  Recognition should also take into account the objectives of chapter 15 to facilitate "cooperation between American and foreign bankruptcy courts" and to "maximiz[e] the value of the debtor's assets, as well as facilitate[e] the rescue of a financially troubled business."  *In re Modern Land (China) Co., Ltd.*, 641 B.R. 768, 787 (Bankr. S.D.N.Y. 2022).

21.      Even if a chapter 15 debtor has only a "limited physical presence in" the country where a foreign proceeding is pending, its COMI may still be located there when that country is the "primary locus of the [d]ebtor's business activities and decision making." *In re Sunac China Holdings Ltd.*, 656 B.R. 715, 719 (Bankr. S.D.N.Y. 2024) (fact that the debtor's principal decision-making regarding business activities occurred "principally in Hong Kong, where [the debtor's] CFO and outside advisors are based" sufficed "both to overcome the statutory presumption that

the [d]ebtor's COMI" was the debtor's place of incorporation in Cayman Islands "and to establish that Hong Kong is the [d]ebtor's COMI").

22.      Bankruptcy courts in this district and others have recognized Canadian proceedings, including receiverships, as foreign main proceedings with respect to chapter 15 debtors organized in the United States. *See, e.g.*, *In re Ted Baker Canada Inc.*, Case No. 24-10699 [Docket No. 44] (Bankr. S.D.N.Y. May 9, 2024) (recognizing Canadian CCAA proceeding as a foreign main proceeding for all debtors, including debtor incorporated in New York); *Nygard Holdings (USA) Limited*, Case No. 20-10828 (SMB) [Docket No. 40] (Bankr. S.D.N.Y. April 23, 2020) (recognizing Canadian receivership proceeding as foreign main proceeding as to debtors, including two debtors organized in the United States and with headquarters in the United States); *In re Bench Accounting, Inc.*, Case No. 25- 10463 (LSS) (Bankr. D. Del. April 9, 2025) (recognizing Canadian proceeding as foreign main proceeding as to debtors, including one debtor organized under the laws of the state of Delaware); *In re SimEx Inc.*, Case No. 24-10083 (TMH) [Docket No. 39] (Bankr. D. Del. Feb. 20, 2024) (granting foreign main recognition of Canadian proceeding, including as to two debtors organized in the United States); *In re Legacy Lifestyles Destin LP*, Case No. 22-01246 (LVV) [Docket No. 28] (Bankr. M.D. Fla. May 9, 2022) (granting foreign main recognition of Canadian receivership, including as to debtors organized in the United States); *In re Strata Energy Services Inc.*, *et al.*, Case Nos.15-20821 and 15-20822 [Docket Nos. 36 and 24, respectively] (Bankr. D. Wyo. Jan. 26, 2016) (granting foreign main proceeding recognition of Canadian proceeding as to debtors, including one organized in United States); *In re Thane Int'l, Inc.*, Case No. 15-12186 (KG) [Docket No. 41] (Bankr. D. Del. Dec. 1, 2015) (granting foreign main recognition of Canadian receivership as to debtors organized in the United States); *In re Talon Systems Inc.*, Case No. 13-11811 (KJC) [Docket No. 49] (Bankr. D. Del. Aug. 30,

2013) (granting foreign main recognition of Canadian proceeding, including as to debtors

organized in the United States).[5]

### 1. The Anchor Date for the "COMI" Analysis is the Chapter 15 Petition Date.

23.    Although complications may arise when a group of debtors has shifted its center of

main interests over time, every debtor has one and only one COMI in a foreign main proceeding

determination under chapter 15. *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. at 276.

In particular, the Second Circuit has held that "a debtor's COMI is determined as of the time of

the filing of the Chapter 15 petition." *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 133 (2d Cir. 2013)

(declining to follow *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63

(Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012) (date of commencement of foreign

proceeding is date for determining COMI)); *accord In re Ran*, 607 F.3d 1017, 1025 (5th Cir. 2010)

("While Section 1502 does not expressly discuss a temporal framework for determining COMI,

the grammatical tense in which it is written provides guidance to the court. …Congress's choice

to use the present tense requires courts to view the COMI determination in the present, *i.e.* at the

time the petition for recognition was filed."). The Second Circuit further recognized that "[n]early

every federal court to address this question has determined that COMI should be considered as of

the time the Chapter 15 petition is filed." *In re Fairfield Sentry Ltd.*, 714 F.3d at 134.

---

[5]    At the first day hearing in this matter, the Court referenced the Delaware Bankruptcy Court's unreported ruling in *In re Black Press Ltd.*, Case No. 24-10044 (MFW) (Bankr. D. Del. Feb. 14, 2024). In that case, the Court held that a debtor's administrative center is not dispositive in determining the location of a debtor's COMI, particularly where a debtor's primary business operations are carried out elsewhere. In declining to grant recognition to the company's debtors organized in the United States, the *Black Press* court reasoned, *inter alia*, that the Canadian debtor, while owning and providing supervision over the financial affairs of its U.S. newspaper companies, was not necessary for the U.S. entities to operate their business—the Canadian parent did not have any employees, printing presses, or journalists, and did not itself operate as a newspaper business. *See In re Black Press* Docket No. 71, Hearing Tr., p. 99, 23–25; p. 94, 9–12. However, as discussed herein, the facts of Black Press are inapposite to those in these Chapter 15 Cases because the role of Giftcraft Canada is essential to the operation and function of each Chapter 15 Debtor's business, and that role is carried out in Canada.

24.     The court in *Fairfield Sentry* declined to consider the debtor's "entire operational history," and rejected any notion that a COMI determination based on the initiation of the foreign proceeding was compelled by section 1502. *Fairfield Sentry*, 714 F.3d at 134. The court reasoned that section 1502 of the Bankruptcy Code defines "foreign main proceeding" as a "foreign proceeding pending in the country where the debtor has the center of its main interests," and "[a] foreign proceeding '*is pending*,' . . . only after it has been commenced." *Id.* (emphasis in original); *see also In re Modern Land (China)*, 641 B.R. at 781 ("A Chapter 15 debtor's COMI is determined as of the filing date of the Chapter 15 petition, without regard to the debtor's historic operational activity."). However, the court recognized the potential for a foreign representative to manipulate a debtor's COMI prior to filing a chapter 15 petition and noted that, to offset this ability, "a court may consider the period between the commencement of the foreign insolvency proceeding and the filing of the Chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith." *Fairfield Sentry*, 714 F.3d at 137.

25.     In addition, the restructuring or liquidation activities with respect to a chapter 15 debtor are properly considered in determining its COMI. *Id.* at 135 (considering the activities of the liquidators appointed under British Virgin Islands law in determining the entity's COMI); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 417 (Bankr. S.D.N.Y. 2014) (finding COMI shifted to Cayman Islands from China as a result of Cayman scheme restructuring proceeding). Indeed, the Court in *Suntech Power* noted that the shift in COMI was reflected in the Cayman proceeding order appointing the joint provisional liquidators, who were empowered to commence chapter 15 cases and seek recognition and, among other things, "take possession of the [debtor's] property and collect all debts, deal with all questions relating to or affecting the assets or the restructuring, supervise the [d]ebtor's bank accounts, open bank accounts to pay the expenses of

the provisional liquidation, hire staff and attorneys, borrow money, make the required filings with the regulatory bodies and pay, and if necessary, prefer creditors as needed to minimize the disruption to the day-to-day activities of the [d]ebtor." *Id.*

26.     Accordingly, the center of main interest of each Chapter 15 Debtor should be considered as of May 20, 2025, the Petition Date, and following the commencement of the Giftcraft Receivership on May 9, 2025.

### 2.     The "Center of Main Interests" of Each of the Chapter 15 Debtors is Located in Canada.

27.     In a COMI analysis, "each debtor entity must be considered." *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 279 (Bankr. S.D.N.Y. 2019) (citations omitted). Accordingly, the factors weighing in favor of finding a Canadian COMI for each Chapter 15 Debtor entity are discussed below. However, a brief overview of the Chapter 15 Debtors as an enterprise group is discussed first in this section, as certain shared functions among Chapter 15 Debtors are relevant to the COMI analysis of each Chapter 15 Debtor.

28.     The Chapter 15 Debtors operate a consolidated business with their sole office and headquarters in Canada, and with Canada as the hub for all primary operations functioning across both Canada and the U.S. *See* Supplemental Declaration, ¶¶ 7-11. Those operations are functionally and operationally integrated such that the Chapter 15 Debtors organized in the United States cannot operate independently of the Canadian business.[6] *Id.* ¶ 7.

---

[6]     The facts and circumstances of these Chapter 15 Cases are readily distinguishable from the debtors in *Black Press*, in which United States debtors each operated as a local print and online news organization in Hawaii and Washington, respectively, had an on-site publisher, did their own printing, solicited ads, serviced their customers, and paid their U.S. vendors. *Black Press*, Docket No. 71, Hearing Tr., p. 99, 23-25; *Id*. at 100, 9–14 (THE COURT: "…I think it's clear that [the U.S. debtors] could function independently. And they have in the past. And it was proposed that they would in the future when they were offered for sale as an independent unit[.] I think that supports a conclusion that they are independent of the other subsidiaries.").

29.     Prior to the Petition Date, each of the Chapter 15 Debtors shared one board of directors (the "Board").  The Board is currently comprised of only one member—Krista Halliday, President of each of the Chapter 15 Debtors, who is located in and works out of Ontario, Canada.[7] *See id.* ¶¶ 8(i), 9(d), 10(d), and 11(d). Each of the Chapter 15 Debtors reports to the company's president, located in Canada.

30.     Giftcraft Canada provides centralized operational and administrative functions for the company as a whole, including for all Chapter 15 Debtors.  These functions are performed by Giftcraft Canada employees and include, among other things, corporate finance, tax and audit functions, strategic, management, and accounting decisions and operations, and maintaining certain insurance policies.  *Id.* ¶¶ 8-11.  All of the Chapter 15 Debtors' insurance policies list Brampton, Ontario as the notice address, and all insurance was procured through a broker based in Toronto, Canada.  *Id.* ¶¶ 8(l), 9(i), 10(i), and 11(i).

31.     As a result of the Giftcraft Receivership, all the property, assets, and undertaking of the Chapter 15 Debtors are now vested in KPMG, a Canadian financial advisory practice, in its capacity as court-appointed Receiver.  *See* Appointment Order, ¶ 3; Supplemental Declaration, ¶¶ 8(j), 9(f), 10(f), and 11(f).  From and after the entry of the commencement of the Giftcraft Receivership, the Canadian Receiver is the sole representative of the Chapter 15 Debtors.  *See* Appointment Order, ¶ 2-3, 30-31.

a.     **Giftcraft Canada**

32.     Giftcraft Canada is organized under the laws of Ontario, Canada.  *See* Supplemental Declaration, ¶ 8.  As described in the Supplemental Declaration, Giftcraft Canada carries on the

---

[7]     Following the initiation of the Giftcraft Receivership, each of the five U.S.-based members of the Board and one of the members located in Canada resigned.  These resignations were a natural consequence of the Receiver's appointment as sole administrator of the Debtors' business and the winding down of the Debtors' operations.

Debtors' business in Canada as a supplier of gift items, including home decor, jewelry, and other novelties. *Id.* Provisional relief with respect to Giftcraft Canada was granted by Order dated May 23, 2025 [Docket No. 16], following this Court's determination that its center of main interests is likely to be determined to be in Canada.

33.    In these Chapter 15 Cases, unlike the *Black Press* enterprise discussed *supra*, Canada is not merely the location from which administrative matters are managed and directed. The U.S. Debtors cannot operate their business without the involvement of Giftcraft Canada. The Chapter 15 Debtors sell retail products, and approximately $13,000,000 (CAD) in inventory belonging to Giftcraft Canada is held in Canada at the Leased Premises,[8] along with approximately $350,000 (USD) in inventory belonging to Ripskirt. *See* Supplemental Declaration, ¶¶ 8(e) and 10(h). Employees of Giftcraft Canada are responsible for purchasing inventory for both of Giftcraft US and Yosox. Ripskirt sells many of its products in Canada with the assistance of Giftcraft Canada—Ripskirt's Canadian sales are filled by inventory held at the Leased Premises in Canada, which functions like a third-party logistics (3PL) facility for Ripskirt. Giftcraft Canada's employees process orders and ship to Ripskirt customers in Canada, and Ripskirt sends inventory to the Leased Premises to replenish stocks on an as-needed basis. *Id.* ¶ 10(h).

34.    Giftcraft Canada employs 62 individuals all of whom are located in Canada, including but not limited to: all executives, Vice Presidents of sales, merchandising, and operations, product development specialists, fit specialists, buyers and procurement analysts, business development professionals, key accounts and sales support, graphic designers, webmasters, payroll specialists, an A/R collections specialist, an inventory manager, a quality

---

[8]    Such inventory is also used to satisfy customer orders from Giftcraft US and Yosox. Upon a customer order through such entity, the applicable inventory is sold to Giftcraft US or Yosox, as applicable, and then shipped to customers by Giftcraft Canada directly from Brampton, Ontario. All inventory purchased by Giftcraft US and Yosox remains physically located and stored in Brampton, Ontario. *See* Supplemental Declaration, ¶¶ 9(h) and 11(h).

control coordinator, a customer service manager, three customer service representatives, a warehouse manager, a logistics manager, two warehouse/logistics team leads, and ten warehouse employees. *Id.* ¶ 8(c). Key services provided by Giftcraft Canada are for the benefit of the entire company.

35.    Based on the facts and circumstances, including the fact that Giftcraft Canada is organized under the laws of Ontario, Canada, and in examining the *SPhinX* factors, the location of Giftcraft Canada's center of main interests is Canada—where its headquarters, managers, primary assets, and creditors are located.

**b.    Giftcraft Inc.**

36.    Giftcraft Inc. ("Giftcraft US"), a New York corporation, does not maintain any office space within the United States and has its headquarters in Brampton, Ontario. *See* Supplemental Declaration, ¶ 9(a). It has no employees. *Id.* ¶ 9(c). Its books, records, and corporate documents are stored and maintained at the Leased Premises in Canada, where all material financial, strategic, management, accounting, marketing, and personnel decisions related to the operation of its business are made by Giftcraft Canada's senior management.[9] *Id.* ¶ 9(b) and (c). Giftcraft US holds no inventory within the United States. Instead, Giftcraft Canada purchases all inventory and sells it to Giftcraft US automatically on an as-needed basis whenever a Giftcraft US customer places an order. Giftcraft Canada then processes and ships the order directly to the customer from Brampton, Ontario. *Id.* ¶ 9(h).

37.    Giftcraft US operates as part of a centralized cash management system managed out of Brampton, Ontario, and has two U.S.-based bank accounts at HSBC Bank ("HSBC") that

---

[9]    Following KPMG's appointment as Receiver and prior to the commencement of these Chapter 15 Cases, six of the seven members of Giftcraft US's board of directors resigned. The sole remaining director as of the Petition Date—Krista Halliday—is located in and works out of Ontario, Canada. *See* Supplemental Declaration, ¶ 9(d).

receive customer collections, and one bank account at Canadian Imperial Bank of Commerce ("CIBC") in Canada.  Purchases of inventory and the payment of operating expenses for Giftcraft Inc. were funded primarily by Giftcraft Canada through draws on the RBC revolving demand credit facility (the "RBC Operating Loan"), and customer receipts were deposited into a Giftcraft Inc. HSBC account and transferred on a daily or weekly basis to a Giftcraft Canada RBC account to be applied towards repayment of the RBC Operating Loan.  Following entry of the Appointment Order and prior to the commencement of these Chapter 15 Cases, funds in the Giftcraft Inc. accounts were transferred at the direction of the Receiver to Giftcraft Canada accounts with RBC and are being managed and administered out of Brampton, Ontario.  *Id.* ¶ 9(g).

38.    Giftcraft US's most significant creditor—RBC—is based in Toronto, Canada, with aggregate indebtedness to RBC of more than $37 million exclusive of interest, fees, and expenses. *Id.* ¶ 9(e).  The notice address in Giftcraft US's agreements with respect to the Showrooms (as defined in the Supplemental Declaration) in both Atlanta and Dallas is listed as 8550 Airport Road, Brampton, Ontario, L6T 5A3.  *Id.* ¶ 9(j).  All of Giftcraft US's insurance lists Brampton, Ontario as the notice address, and all insurance was procured through a broker based in Toronto, Canada. *Id.* ¶ 9(i).

39.    Historically, Giftcraft US had been a sales organization only, with some employees working remotely in the United States.  However, prior to the commencement of the Giftcraft Receivership, Giftcraft US was restructured, and all sales representatives were terminated.  As such, during the relevant time period for determining the COMI of Giftcraft US, including as of the Petition Date, Giftcraft US employed no personnel.  *Id.* ¶ 9(c).

40.    Following entry of the Appointment Order, the Receiver—based in Toronto, Ontario—was vested with all property, assets, and undertakings of Giftcraft US, with broad power

and authority over such assets and the management and operation of Giftcraft Inc.'s business. *Id.*
¶ 9(f); Appointment Order ¶ 3.

41.    Based on the facts and circumstances, and in examining the *SPhinX* factors, the
location of Giftcraft US's center of main interests is Canada—where, among other things, its
headquarters, management and decision-making, books and records, sole director, most significant
creditor, and address on insurance and material contracts are located.

**c.    RipSkirt Hawaii, LLC**

42.    RipSkirt Hawaii, LLC ("Ripskirt") is an Oregon limited liability company.  *See*
Supplemental Declaration, ¶ 10.   As explained in the Supplemental Declaration, Ripskirt's
business relates to women's apparel, specifically quick-drying skirts, dresses, and cover-ups, that
are sold through various channels, including e-commerce.  *Id.*

43.    Ripskirt's only office and headquarters are located at the Leased Premises in
Canada, where all of its books, records, and corporate documents are located.  *Id.* ¶ 10(a) and (b).
As of the Petition Date, Ripskirt has ten employees in the United States[10] who all work remotely,
and one employee located in Canada.   Ripskirt's employees provide customer support, e-
commerce, product development, and marketing services.  *Id.* ¶ 10(c).   However, all material
financial, strategic, management, accounting, and personnel decisions of Ripskirt are made by
Giftcraft Canada's senior management in Brampton, Ontario.[11]  *Id.*

44.    Ripskirt operates as part of a centralized cash management system managed out of
Brampton, Ontario.  Ripskirt has one bank account at RBC in Canada, two bank accounts at HSBC

---

[10]      Ripskirt's U.S.-based employees work remotely and are located across Washington, Oregon, and California.
[11]      Following KPMG's appointment as Receiver and prior to the commencement of these Chapter 15 Cases, six
of the seven members of Ripskirt's board of directors resigned.  The sole remaining director as of the Petition Date—
Krista Halliday—is located in and works out of Ontario, Canada.  *See* Supplemental Declaration, ¶ 10(d).

in the United States (only one of which is active), and three accounts at Airwallex, an online payment platform.  Purchases of inventory and the payment of operating expenses for Ripskirt were funded in part by amounts on deposit in Ripskirt's HSBC account and in part by Giftcraft Canada through draws on the RBC Operating Loan.  Customer receipts were deposited into a Ripskirt HSBC account and periodically transferred to a Giftcraft Canada RBC account to be applied towards repayment of the RBC Operating Loan.  Following entry of the Appointment Order and prior to the commencement of these Chapter 15 Cases, funds in the Ripskirt accounts were transferred at the direction of the Receiver to Giftcraft Canada accounts with RBC and are being managed and administered out of Brampton, Ontario.  *Id.* ¶ 10(g).

45.      Ripskirt's most significant creditor—RBC—is based in Toronto, Canada, with aggregate indebtedness to RBC of more than $37 million exclusive of interest, fees, and expenses. *Id.* ¶ 10(e).  All of Ripskirt's insurance lists Brampton, Ontario as the notice address, and all insurance was procured through a broker based in Toronto, Canada.  *Id.* ¶ 10(i).

46.      Ripskirt has approximately $2 million (USD) in book value inventory located in a third-party logistics (3PL) warehouse facility located in Greenwood, Indiana (the "Indiana Warehouse"), and approximately $350,000 (USD) in book value inventory located in Brampton, Ontario at the Leased Premises, which serves as a 3PL facility for Ripskirt with respect to its Canadian customer base.  When a customer based in Canada places an order, Giftcraft Canada employees process and ship those orders from Brampton, Ontario.  Ripskirt replenishes stocks of Canadian inventory on an as-needed basis. *Id.* ¶ 10(h).

47.      Following entry of the Appointment Order, the Receiver—based in Toronto, Ontario—was vested with all property, assets, and undertakings of Ripskirt, with broad power and

authority over such assets and the management and operation of Ripskirt's business.  *Id.* ¶ 10(f);
Appointment Order ¶ 3.

48.     Based on the facts and circumstances, and in examining the *SPhinX* factors, the
location of Ripskirt's center of main interests is Canada—where, among other things, its
headquarters, management and material decision-making, books and records, certain assets, sole
director, most significant creditor, and address on insurance are located.

**d.     Yosox USA Inc.**

49.     Yosox USA Inc. ("<u>Yosox</u>") is incorporated under the laws of the state of Delaware.
*See* Supplemental Declaration, ¶ 11.  Yosox operates as an e-commerce company and sells home
decor, jewelry, and other novelties products acquired from Giftcraft Canada to customers online.
*Id.*  Like Giftcraft US, Yosox holds no inventory within the United States.  Giftcraft Canada
purchases all inventory and sells it to Yosox automatically on an as-needed basis whenever a
Yosox customer places an order.  Giftcraft Canada then processes and ships the order directly to
the customer from Brampton, Ontario.  *Id.* ¶ 11(h).

50.     Yosox's only office and headquarters are located at the Leased Premises in Canada,
where all of its books, records, and corporate documents are located.  *Id.* ¶ 11(a) and (b).  Yosox
has no employees.  *Id.* ¶ 11(c).  All material financial, strategic, management, accounting,
marketing, and personnel decisions related to the operation of its business are made by Giftcraft
Canada's senior management in Brampton, Ontario.[12]  *Id.*

51.     Yosox operates as part of a centralized cash management system managed out of
Brampton, Ontario.  Yosox has two bank accounts at HSBC (only one of which is active).

---

[12]     Following KPMG's appointment as Receiver and prior to the commencement of these Chapter 15 Cases, six
of the seven members of Yosox's board of directors resigned.  The sole remaining director as of the Petition Date—
Krista Halliday—is located in and works out of Ontario, Canada.  *See* Supplemental Declaration, ¶ 11(d).

Purchases of inventory for Yosox were funded by Giftcraft Canada through draws on the RBC Operating Loan, and e-commerce sales receipts were deposited into Yosox's HSBC account and periodically transferred to a Giftcraft Canada RBC account to be applied towards repayment of the RBC Operating Loan. Following entry of the Appointment Order and prior to the commencement of these Chapter 15 Cases, funds in the Yosox accounts were transferred at the direction of the Receiver to Giftcraft Canada accounts with RBC and are being managed and administered out of Brampton, Ontario. *Id.* ¶ 11(g).

52.    Yosox's only known creditor—RBC—is based in Toronto, Canada, with aggregate indebtedness to RBC of more than $37 million exclusive of interest, fees, and expenses. *Id.* ¶ 11(e). All of Yosox's insurance lists Brampton, Ontario as the notice address, and all insurance was procured through a broker based in Toronto, Canada. *Id.* ¶ 11(j). Following entry of the Appointment Order, the Receiver—based in Toronto, Ontario—was vested with all property, assets, and undertakings of Yosox, with broad power and authority over such assets and the management and operation of Yosox's business. *Id.* ¶ 11(f); Appointment Order ¶ 3.

53.    Based on the facts and circumstances, and in examining the *SPhinX* factors, the location of Yosox's center of main interests is Canada—where, among other things, its headquarters, management and decision-making, books and records, sole director, creditors, and address on insurance are located.

54.    Accordingly, the Giftcraft Receivership should be recognized as a foreign main proceeding as to each of the Chapter 15 Debtors and, for the reasons set forth herein and in the Motion, Initial Declaration, and Supplemental Declaration, provisional relief should be granted pending a final recognition hearing for each of the Chapter 15 Debtors.

**B.**     **Alternatively, the Giftcraft Receivership Would Likely be Recognized as a Foreign Nonmain Proceeding with Respect to Each U.S. Debtor.**

55.     If this Court declines to recognize the Giftcraft Receivership as a foreign main proceeding as to any of the U.S. Debtors, the Foreign Representative respectfully submits that the Court should exercise its discretion to determine that the Giftcraft Receivership is a foreign nonmain proceeding as to those Debtors.

56.     When it is apparent that an entity conducts operations in the country where a foreign proceeding is pending, courts will recognize the proceeding as a foreign nonmain proceeding if foreign main proceeding recognition is denied.  *See In re SPhinX, Ltd.*, 351 B.R. at 122; *see also In re Fairfield Sentry Ltd.*, 2011 WL 4357421, at *10 n.8 (S.D.N.Y. Sept. 16, 2011) (agreeing with the Bankruptcy Court that if main recognition were not granted, nonmain recognition would have been appropriate because the debtor had an establishment, "*i.e.* a local place of business").

57.     Foreign "nonmain" proceedings may be pending in countries where the debtor merely has an "establishment"—any place of operations where the debtor carries out a nontransitory economic activity.  11 U.S.C. § 1502.  In the *Serviços* case, where a foreign proceeding was pending in Brazil, this Court determined that the parent debtor had a Luxembourg center of main interest and nevertheless found that there was a sufficient level of nontransitory business done in Brazil to justify identifying the Brazilian proceeding as a foreign nonmain proceeding as to the parent entity.  *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 281–82 (Bankr. S.D.N.Y. 2019) ("Although Parent/Constellation's COMI is in Luxembourg, all of its subsidiaries have substantial and ongoing business connections in Brazil.  These non-transitory ties to Brazil are sufficient to recognize the Brazilian Proceeding as a foreign nonmain proceeding with respect to Parent/Constellation.").  Similarly, each of the operating entities in these Chapter 15 Cases have nontransitory business in Canada, where there are active executives

in leadership making decisions that affect each of the Chapter 15 Debtors' day-to-day needs and operational requirements and where each Chapter 15 Debtors' operations have an economic impact in Canada.

58.     As described herein, as to each of Giftcraft US, Ripskirt, and Yosox, their cash management, treasury, accounting, strategic legal, and strategic direction take place in Canada.  In addition, as set forth above, the shared inventory of Giftcraft US, Yosox, and Giftcraft Canada is held in Canada and belongs to Giftcraft Canada until a Giftcraft US or Yosox customer places an order, at which point Giftcraft Canada sells the necessary inventory to that entity before processing and shipping the order directly to the customer.  A portion of Ripskirt's inventory also sits in Canada and is processed through the Leased Premises in Brampton, Ontario as to Ripskirt's Canadian customer base.  Accordingly, each of the U.S. Debtors have an "establishment" in Canada such that they maintain a minimal level of organization and objective appearance to creditors that they are operating business there.  If this Court finds that the Giftcraft Receivership is not likely to be a foreign main proceeding as to all of the U.S. Debtors, this Court should conclude that the Giftcraft Receivership is likely a foreign nonmain proceeding as to such U.S. Debtors, granting them provisional relief under section 1519 of the Bankruptcy Code.

[*Text Continues on the Next Page*]

## **CONCLUSION**

59.     For the foregoing reasons, the Foreign Representative respectfully requests that the

Court grant the Motion and the Verified Petition, and any such further relief as may be appropriate.

Dated: New York, New York.
       May 27, 2025

Respectfully submitted,

**CHIPMAN BROWN CICERO & COLE, LLP**

By:*/s/ Daniel G. Egan*
    Daniel G. Egan
    501 5th Ave. 15th Floor
    New York, New York 10017
    Telephone: (646) 741-5529
    egan@chipmanbrown.com

**CHIPMAN BROWN CICERO & COLE, LLP**
Mark L. Desgrosseilliers (admitted *pro hac vice*)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
desgross@chipmanbrown.com

*Counsel to the Foreign Representative*