**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Giftcraft Ltd. *et al.*,[1]  <br><br>Debtors in a Foreign Proceeding. | Chapter No. 15 <br><br> Case No.: 25-11030 (MG) <br><br> (Joint Administration Pending) |

**SUPPLEMENTAL DECLARATION OF FOREIGN REPRESENTATIVE IN FURTHER SUPPORT OF (A) MOTION OF FOREIGN REPRESENTATIVE FOR PROVISIONAL RELIEF PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE AND (B) VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Pritesh Patel, to the best of my information and belief, state as follows:

1. I am over the age of 18 and am authorized to submit this declaration on behalf of the Receiver (as defined below). I am making this declaration in accordance with section 1515 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. I am a Senior Vice President of KPMG Inc. ("KPMG"), the court-appointed Receiver (in such capacity, the "Receiver") and authorized foreign representative (in such capacity, the "Foreign Representative") of the above-captioned chapter 15 debtors (collectively, "Giftcraft" or the "Debtors"). I am familiar with the Debtors, whose receivership proceeding

---

[1] The chapter 15 debtor incorporated in Canada and/or in the province of Ontario (the "Canadian Debtor"), along with the last four digits of the Canadian Debtor's Canadian business number, is: Giftcraft Ltd. ("Giftcraft Canada") (9013). The chapter 15 debtors incorporated in the United States (the "U.S. Debtors"), along with the last four digits of each U.S. Debtor's federal tax identification number, are: Giftcraft Holdings USA Inc. ("GH USA") (7406); Giftcraft Holdings, Inc. ("GHI") (1472); Giftcraft Midco, Inc. ("Midco") (1204); Giftcraft Inc. ("Giftcraft US") (6759); Ripskirt Hawaii, LLC ("Ripskirt") (7613); and Yosox USA Inc. ("Yosox") (1367). The Canadian Debtor and the U.S. Debtors are referred to herein, collectively, as the "Debtors" or "Giftcraft"). The Debtors' executive headquarters are located at 8550 Airport Road, Brampton, Ontario, L6T 5A3.

(the "Giftcraft Receivership") is currently pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), pursuant to section 243(1) *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "BIA") and section 101 of the *Courts of Justice* Act, R.S.O. 1990, c. C.43, as amended (the "CJA"). As set forth more fully below, the Giftcraft Receivership was commenced in the Canadian Court on May 9, 2025, on application by Royal Bank of Canada ("RBC"), a secured creditor of the Debtors.

3. I am a Chartered Financial Analyst, a Chartered Insolvency and Restructuring Professional, and a Licensed Insolvency Trustee in Canada. I have significant experience providing advice to debtors, creditors, and other key stakeholders in a variety of Canadian and cross-border restructuring situations.

4. All facts set forth herein are based upon my personal knowledge, my review of relevant documents, information provided to me by employees or representatives of KPMG working under my direction or supervision, my discussions with current or former representatives or agents of the Debtors, and/or my opinions based on my experience concerning the Debtors' operations and financial conditions.[2] If called to testify, I could and would testify competently as stated herein.

5. I submit this declaration (this "Supplemental Declaration") in further support of: (a) the official form chapter 15 petitions for each of the Debtors (collectively, the "Petitions") commencing the Debtors' chapter 15 cases (the "Chapter 15 Cases"); (b) the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and*

---

[2] The Receiver is continuing to investigate the Debtors' assets and liabilities, the extent, validity, and priority of any security interests in its property, and potential claims held by or against the Debtors. Statements made herein are made upon information and belief based on information currently available to the Receiver, may be subject to change, and are without prejudice to the rights and remedies that may be available to the Receiver under applicable law.

*(III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 3] (the "Verified Petition"); (c) the *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [Docket No. 6] (the "Provisional Relief Motion"); (d) the *Motion Pursuant to Fed. R. Bankr. P. 2002 and 9007 Requesting Entry of Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice* [Docket No. 7] (the "Notice Procedures Motion"); and (e) the *Motion of Foreign Representative for Entry of Order Authorizing Joint Administration of Debtors' Chapter 15 Cases* [Docket No. 2] (the "Joint Administration Motion"). This Supplemental Declaration supplements the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 4] (the "Initial Declaration").

6. On May 20, 2025 (the "Petition Date"), the Foreign Representative filed the Petitions for relief under chapter 15 of the Bankruptcy Code for recognition of the Giftcraft Receivership. The Foreign Representative is seeking the relief requested in the Petitions, Verified Petition, Provisional Relief Motion, Notice Procedures Motion, and Joint Administration Motion to ensure the effectiveness of the Appointment Order (defined below) and the protections and powers contained therein in the United States. The Receiver has concluded that such relief is necessary in order to fulfill its mandate of preserving, protecting, and realizing on the Debtors' assets and property for the benefit of creditors and stakeholders.

7. The Debtors are part of a group of companies in which Giftcraft Holdings, Inc. ("GHI") is the ultimate parent, Giftcraft Ltd. ("Giftcraft Canada") is the sole Canadian entity, and Giftcraft Midco, Inc. ("Midco") is the U.S. parent to Giftcraft Holdings USA Inc. ("GH USA"),

-3-

Giftcraft Inc. ("Giftcraft US"), Ripskirt Hawaii, LLC ("Ripskirt"), and Yosox USA Inc. ("Yosox"). Since commencement of these cases, the Receiver has determined to seek recognition of the Giftcraft Receivership solely as it pertains to Giftcraft Canada, Giftcraft, Inc., Ripskirt, and Yosox (collectively, the "Chapter 15 Debtors"). The Chapter 15 Debtors are functionally and operationally integrated such that the Chapter 15 Debtors organized under U.S. law are dependent upon on the Canadian business and personnel in Canada.

**I.      Each Chapter 15 Debtor's Business and Operations**

    **A.      Giftcraft Canada**

8.      Giftcraft Canada is organized under the laws of Ontario, Canada. Giftcraft Canada carries on the Chapter 15 Debtors' business in Canada as a supplier of gift items, including home decor, jewelry, and other novelties. Giftcraft Canada's primary business line is distribution through retailers across Canada, ranging from independent specialty retailers to national chains. Additional information regarding Giftcraft Canada's business and operations is set forth below.

    (a)   Giftcraft Canada's headquarters is located at 8550 Airport Road, Brampton, Ontario, L6T 5A3.

    (b)   All of Giftcraft Canada's books, records, and corporate documents are located and kept in Brampton, Ontario.

    (c)   Giftcraft Canada has 62 employees, all of whom are located in Canada, including but not limited to all executives, vice presidents of sales, merchandising, and operations, product development specialists, fit specialists, buyers and procurement analysts, business development professionals, key accounts & sales support, graphic designers, webmasters, payroll specialists, an A/R collections specialist, an inventory manager, a quality control coordinator, a customer service manager, three customer service representatives, a warehouse manager, a logistics manager, two warehouse/logistics team leads, and ten warehouse employees.

    (d)   All material strategic and management decisions of Giftcraft Canada were made by Giftcraft Canada's senior management in Brampton, Ontario.

(e) Giftcraft Canada has approximately $13,000,000 (CAD) of inventory located in Canada.

(f) Giftcraft Canada's most significant creditor—Royal Bank of Canada ("RBC")—is based in Toronto, Canada, with aggregate indebtedness to RBC of more than $37 million exclusive of interest, fees, and expenses. The majority of Giftcraft Canada's other significant creditors, including Rodenbury Investments Group ("Rodenbury"), the landlord for Giftcraft Canada's lease premises in Brampton, Ontario, are also located in Canada.

(g) Giftcraft Canada's key financial and accounting functions and decisions were made by Giftcraft Canada's senior management in Brampton, Ontario.

(h) All of Giftcraft Canada's material marketing and personnel decisions and services are provided by Giftcraft Canada in Brampton, Ontario.

(i) Following KPMG's appointment as Receiver and prior to the commencement of these Chapter 15 Cases, six of the seven members of Giftcraft Canada's board of directors resigned. The sole remaining director as of the Petition Date—Krista Halliday—is located in and works out of Ontario, Canada.

(j) Following entry of the Appointment Order, the Receiver, based in and operating out of Ontario, Canada, was vested with all property, assets, and undertakings of Giftcraft Canada with broad power and authority over such assets and the management and operation of Giftcraft Canada's business to the exclusion of and without interference from all other persons and entities, including the Debtors (*see* Appointment Order, ¶ 3).

(k) Giftcraft Canada operates as part of a centralized cash management system managed out of Brampton, Ontario and has three bank accounts at RBC into which all Giftcraft Canada collections are received and disbursements are made.

(l) All of Giftcraft Canada's and the other Chapter 15 Debtors' insurance lists Brampton, Ontario as the notice address, and all insurance was procured through a broker based in Toronto, Canada.

B. **Giftcraft US**

9. Giftcraft US is organized under the laws of the State of New York. Giftcraft Canada distributes home decor, jewelry, and other novelties products in the United States through Giftcraft US, which sells to independent specialty retailers and national chains. Giftcraft US does not carry

-5-

any inventory in the United States, as all products sold by it are shipped directly to customers either by Giftcraft Canada or from overseas suppliers. Additional information regarding Giftcraft US's business and operations is set forth below.

    (a)    Giftcraft US's headquarters is located at 8550 Airport Road, Brampton, Ontario, L6T 5A3. Giftcraft US does not maintain any office space within the United States.

    (b)    All of Giftcraft US's books, records, and corporate documents are located and kept in Brampton, Ontario.

    (c)    As of the Petition Date, Giftcraft US had no employees, and all material financial, strategic, management, accounting, marketing, and personnel decisions of Giftcraft US were made by Giftcraft Canada's senior management in Brampton, Ontario.

    (d)    Following KPMG's appointment as Receiver and prior to the commencement of these Chapter 15 Cases, six of the seven members of Giftcraft US's board of directors resigned. The sole remaining director as of the Petition Date—Krista Halliday—is located in and works out of Ontario, Canada.

    (e)    Giftcraft US's most significant creditor—RBC—is based in Toronto, Canada, with aggregate indebtedness to RBC of more than $37 million exclusive of interest, fees, and expenses.

    (f)    Following entry of the Appointment Order, the Receiver, based in and operating out of Ontario, Canada, was vested with all property, assets, and undertakings of Giftcraft US with broad power and authority over such assets and the management and operation of Giftcraft US's business to the exclusion of and without interference from all other persons and entities, including the Debtors (*see* Appointment Order, ¶ 3).

    (g)    Giftcraft US operates as part of a centralized cash management system managed out of Brampton, Ontario. Giftcraft US has two bank accounts at HSBC Bank ("HSBC") and one bank account at Canadian Imperial Bank of Commerce ("CIBC"). Purchases of inventory and the payment of operating expenses for Giftcraft US were funded primarily by Giftcraft Canada through draws on the RBC revolving demand credit facility (the "RBC Operating Loan"), and customer receipts were deposited into a Giftcraft US HSBC account and transferred on a daily or weekly basis to a Giftcraft Canada RBC account to be applied towards repayment of the RBC Operating Loan. Following entry of the Appointment Order and prior to the commencement of these Chapter 15 Cases, funds in the Giftcraft US accounts were transferred at the direction of the Receiver to

        Giftcraft Canada accounts with RBC and are being managed and administered out of Brampton, Ontario.

(h)    Giftcraft US has no inventory located within the United States. All inventory purchased by it from Giftcraft Canada remains physically located and stored in Brampton, Ontario and is shipped to customers directly from Brampton, Ontario.

(i)    All of Giftcraft US's and the other Chapter 15 Debtors' insurance lists Brampton, Ontario as the notice address, and all insurance was procured through a broker based in Toronto, Canada.

(j)    The notice address in Giftcraft US's agreements with respect to the Showrooms (as defined herein) in both Atlanta and Dallas is listed as 8550 Airport Road, Brampton, Ontario, L6T 5A3.

**C.**    **Ripskirt**

10.    Ripskirt is organized under the laws of the State of Oregon. Ripskirt carries on a business distributing women's apparel, specializing in quick-drying skirts, dresses, and cover-ups. Ripskirt's products are aimed at the vacation and leisure markets and are sold throughout Canada, the United States, and Australia through various channels, including e-commerce. Additional information regarding Ripskirt's business and operations is set forth below.

(a)    Ripskirt's headquarters is located at 8550 Airport Road, Brampton, Ontario, L6T 5A3. Ripskirt does not maintain any office space within the United States.

(b)    All of Ripskirt's books, records, and corporate documents are located and kept in Brampton, Ontario.

(c)    Ripskirt has ten employees in the United States who all work remotely and one employee located in Canada. The Ripskirt employees provide customer support, e-commerce, product development, and marketing services, but all material financial, strategic, management, accounting, and personnel decisions of Ripskirt were made by Giftcraft Canada's senior management in Brampton, Ontario.

(d)    Following KPMG's appointment as Receiver and prior to the commencement of these Chapter 15 Cases, six of the seven members of Ripskirt's board of directors resigned. The sole remaining director as of the Petition Date—Krista Halliday—is located in and works out of Ontario, Canada.

(e) Ripskirt's most significant creditor—RBC—is based in Toronto, Canada, with aggregate indebtedness to RBC of more than $37 million exclusive of interest, fees, and expenses.

(f) Following entry of the Appointment Order, the Receiver, based in and operating out of Ontario, Canada, was vested with all property, assets, and undertakings of Ripskirt with broad power and authority over such assets and the management and operation of Ripskirt's business to the exclusion of and without interference from all other persons and entities, including the Debtors (*see* Appointment Order, ¶ 3).

(g) Ripskirt operates as part of a centralized cash management system managed out of Brampton, Ontario. Ripskirt has one bank account at RBC, two bank accounts at HSBC (only one of which is active), and three accounts at Airwallex, an online payment platform. Purchases of inventory and the payment of operating expenses for Ripskirt were funded in part by amounts on deposit in Ripskirt's HSBC account and in part by Giftcraft Canada through draws on the RBC Operating Loan. Customer receipts were deposited into a Ripskirt HSBC account and periodically transferred to a Giftcraft Canada RBC account to be applied towards repayment of the RBC Operating Loan. Following entry of the Appointment Order and prior to the commencement of these Chapter 15 Cases, funds in the Ripskirt accounts were transferred at the direction of the Receiver to Giftcraft Canada accounts with RBC and are being managed and administered out of Brampton, Ontario.

(h) Ripskirt has approximately $2 million in book value inventory located in a third-party logistics (3PL) warehouse facility located in Greenwood, Indiana (the "Indiana Warehouse") and approximately $350,000 in book value inventory located in Brampton, Ontario. Ripskirt conducts sales of its products to Canada with the assistance of Giftcraft Canada. Ripskirt's Canadian sales are filled by inventory held at the facilities in Brampton, Ontario, which functions like a third-party logistics (3PL) facility for Ripskirt. Giftcraft Canada's employees process orders and ship to Ripskirt customers in Canada, and Ripskirt sends inventory to the facilities in Brampton, Ontario to replenish stocks on an as-needed basis.

(i) All of Ripskirt's and the other Chapter 15 Debtors' insurance lists Brampton, Ontario as the notice address, and all insurance was procured through a broker based in Toronto, Canada.

D. **Yosox**

11. Yosox is organized under the laws of the State of Delaware. Yosox operates as an e-commerce company and sells home decor, jewelry, and other novelties products acquired from

-8-

Giftcraft Canada to customers online in the United States and Canada. Additional information regarding Yosox's business and operations is set forth below.

(a) Yosox's headquarters is located at 8550 Airport Road, Brampton, Ontario, L6T 5A3. Yosox does not maintain any office space within the United States.

(b) All of Yosox's books, records, and corporate documents are located and kept in Brampton, Ontario.

(c) Yosox has no employees, and all material financial, strategic, management, accounting, marketing, and personnel decisions of Yosox were made by Giftcraft Canada's senior management in Brampton, Ontario.

(d) Following KPMG's appointment as Receiver and prior to the commencement of these Chapter 15 Cases, six of the seven members of Yosox's board of directors resigned. The sole remaining director as of the Petition Date—Krista Halliday—is located in and works out of Ontario, Canada.

(e) Yosox's most significant creditor—RBC—is based in Toronto, Canada, with aggregate indebtedness to RBC of more than $37 million exclusive of interest, fees, and expenses. I am not aware of any others creditors of Yosox at this time.

(f) Following entry of the Appointment Order, the Receiver, based in and operating out of Ontario, Canada, was vested with all property, assets, and undertakings of Yosox with broad power and authority over such assets and the management and operation of Yosox's business to the exclusion of and without interference from all other persons and entities, including the Debtors (*see* Appointment Order, ¶ 3).

(g) Yosox operates as part of a centralized cash management system managed out of Brampton, Ontario. Yosox has two bank accounts at HSBC (only one of which is active). Purchases of inventory for Yosox were funded by Giftcraft Canada through draws on the RBC Operating Loan, and e-commerce sales receipts were deposited into Yosox's HSBC account and periodically transferred to a Giftcraft Canada RBC account to be applied towards repayment of the RBC Operating Loan. Following entry of the Appointment Order and prior to the commencement of these Chapter 15 Cases, funds in the Yosox accounts were transferred at the direction of the Receiver to Giftcraft Canada accounts with RBC and are being managed and administered out of Brampton, Ontario.

    (h)    Yosox has no inventory located within the United States. All inventory purchased by it from Giftcraft Canada remains physically located and stored in Brampton, Ontario and is shipped to customers directly from Brampton, Ontario.

    (i)    All of Yosox's and the other Chapter 15 Debtors' insurance lists Brampton, Ontario as the notice address, and all insurance was procured through a broker based in Toronto, Canada.

## II.    Entry of the Appointment Order by the Ontario Superior Court of Justice

12.    On May 9, 2025, following defaults by the Chapter 15 Debtors under the RBC Operating Loan and other secured credit facilities with RBC, RBC filed a *Notice of Application* with the Canadian Court under the BIA and CJA seeking to have a receiver appointed.

13.    On May 14, 2025, the Canadian Court conducted a hearing for the appointment of the Receiver. A copy of the Canadian Court's endorsement (*i.e.*, the reasons for judgment) (the "Endorsement") related to the May 14th hearing is attached to the Initial Declaration as **Exhibit B**. The Canadian Court entered an order (the "Appointment Order") appointing KPMG as the Receiver, without security, over all the present and future assets, undertakings, and properties of each of the Debtors acquired for, or used in relation to, a business carried on by each Debtor, including all proceeds thereof (the "Property"). A true and correct copy of the Appointment Order is attached to the Initial Declaration as **Exhibit C**.

14.    The Appointment Order vests the Receiver with broad power and control over the Debtors' assets and business, including the authority to take possession of and control the Debtors' assets and business. Specifically, the Appointment Order grants the Receiver the following powers and duties:

    (a)    to take possession of and exercise control over the Property and any and all proceeds, receipts and disbursements arising out of or from the Property;

    (b)    to receive, preserve, and protect the Property, or any part or parts thereof, including, but not limited to, the changing of locks and security codes, the

relocating of Property to safeguard it, the engaging of independent security personnel, the taking of physical inventories and the placement of such insurance coverage as may be necessary or desirable;

(c) to manage, operate, and carry on the business of the Debtors, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

(d) to engage consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons from time to time and on whatever basis, including on a temporary basis, to assist with the exercise of the Receiver's powers and duties, including without limitation those conferred by the Appointment Order;

(e) to purchase or lease such machinery, equipment, inventories, supplies, premises or other assets to continue the business of the Debtors or any part or parts thereof;

(f) to receive and collect all monies and accounts now owed or hereafter owing to the Debtors and to exercise all remedies of the Debtors in collecting such monies, including, without limitation, to enforce any security held by the Debtors;

(g) to settle, extend or compromise any indebtedness owing to the Debtors;

(h) to execute, assign, issue and endorse documents of whatever nature in respect of any of the Property, whether in the Receiver's name or in the name and on behalf of the Debtors, for any purpose pursuant to the Appointment Order;

(i) to initiate, prosecute and continue the prosecution of any and all proceedings and to defend all proceedings now pending or hereafter instituted with respect to the Debtors, the Property or the Receiver, and to settle or compromise any such proceedings.  The authority hereby conveyed shall extend to such appeals or applications for judicial review in respect of any order or judgment pronounced in any such proceeding;

(j) to market any or all of the Property, including advertising and soliciting offers in respect of the Property or any part or parts thereof and negotiating such terms and conditions of sale as the Receiver in its discretion may deem appropriate;

(k) to sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business, (i) without the approval of the Canadian Court in respect of any transaction not exceeding $250,000 provided that the aggregate consideration for all such transactions does not exceed $1,000,000 and (ii) with the approval of the Canadian Court

in respect of any transaction in which the purchase price or the aggregate purchase price exceeds the applicable amount set out in the preceding clause; and in each such case notice under subsection 63(4) of the Ontario *Personal Property Security Act*, shall not be required;

(l) to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers thereof, free and clear of any liens or encumbrances affecting such Property;

(m) to report to, meet with and discuss with such affected Persons (as defined below) as the Receiver deems appropriate on all matters relating to the Property and the receivership, and to share information, subject to such terms as to confidentiality as the Receiver deems advisable;

(n) to register a copy of the Appointment Order and any other Orders in respect of the Property against title to any of the Property;

(o) to make an assignment into bankruptcy on behalf of any of the Debtors and for KPMG Inc. to act as trustee in bankruptcy for any of the Debtors;

(p) to apply for any permits, licenses, approvals or permissions as may be required by any governmental authority and any renewals thereof for and on behalf of and, if thought desirable by the Receiver, in the name of the Debtors;

(q) to enter into agreements with any trustee in bankruptcy appointed in respect of the Debtors, including, without limiting the generality of the foregoing, the ability to enter into occupation agreements for any property owned or leased by the Debtors;

(r) to exercise any shareholder, partnership, joint venture or other rights which the Debtors may have; and

(s) to take any steps reasonably incidental to the exercise of these powers or the performance of any statutory obligations.

*See* Appointment Order, ¶ 3.

15.     The Appointment Order further provides that, where the Receiver takes any such actions or steps, the Receiver shall be *exclusively* authorized and empowered to do so, to the exclusion of all other Persons (as defined in the Appointment Order), including the Debtors, and without interference from any other Person.  *Id.* (emphasis added).

16. The Appointment Order also includes the following "stay" provisions to be in force:

> **NO PROCEEDINGS AGAINST THE RECEIVER**
>
> **THIS COURT ORDERS** that no proceeding or enforcement process in any court or tribunal (each, a "Proceeding"), shall be commenced or continued against the Receiver except with the written consent of the Receiver or with leave of this Court.

Appointment Order, ¶ 8.

> **NO PROCEEDINGS AGAINST THE DEBTOR OR THE PROPERTY**
>
> **THIS COURT ORDERS** that no Proceeding against or in respect of the Debtors or the Property shall be commenced or continued except with the written consent of the Receiver or with leave of this Court and any and all Proceedings currently under way against or in respect of the Debtors or the Property are hereby stayed and suspended pending further Order of this Court.

*Id.* at ¶ 9.

> **NO EXERCISE OF RIGHTS OR REMEDIES**
>
> **THIS COURT ORDERS** that all rights and remedies against the Debtor, the Receiver, or affecting the Property, are hereby stayed and suspended except with the written consent of the Receiver or leave of this Court, provided however that this stay and suspension does not apply in respect of any "eligible financial contract" as defined in the BIA, and further provided that nothing int his paragraph shall (a) empower the Receiver or the Debtor to carry on any business which the Debtor is not lawfully entitled to carry on, (b) exempt the Receiver or the Debtor from compliance with statutory or regulatory provisions relating to health, safety or the environment, (c) prevent the filing of any registration to preserve or perfect a security interest, or (d) prevent the registration of a claim for lien.

*Id.* at ¶ 10.

17. The Appointment Order authorizes the Receiver to act as the foreign representative of the Debtors in connection with the Verified Petition and expressly authorizes the Receiver to

seek recognition of the Giftcraft Receivership in the United States via Chapter 15 of the Bankruptcy Code. *See id.*, ¶ 31. The Appointment Order provides, in relevant part, that:

> **THIS COURT ORDERS** that the Receiver be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Receiver is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Debtors to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1530, as amended.

*Id.*

18. The Chapter 15 Debtors have assets in the United States that are critical to the conduct of the Giftcraft Receivership. In the Endorsement, the Canadian Court recognized the concern that "there is approximately CDN $4 million in inventory located in the United States which will be at risk if the stay is not obtained from the United States Bankruptcy Court pursuant to Chapter 15 of the United States Bankruptcy Code." Endorsement, ¶ 9. Accordingly, in the Appointment Order, the Canadian Court requests that courts in the United States recognize the Giftcraft Receivership and give effect to the Appointment Order and otherwise assist the Receiver and its agents in carrying out the terms of the Appointment Order. *See* Appointment Order, ¶ 30.

### III. The Receiver's Actions in Furtherance of Appointment Order

19. Since entry of the Appointment Order appointing KMPG as Receiver for each of the Chapter 15 Debtors and each Chapter 15 Debtor's present and future assets, undertakings, and properties, including all proceeds thereof (Appointment Order ¶ 3), the Receiver has been working in good faith and with due diligence to fulfill its duties and responsibilities under the Appointment Order with the aim to pursue a sale process with respect to all of the Chapter 15 Debtors' assets, both those located in Canada and in the United States, in an effort to maximize the value of the

Property for the benefit of all stakeholders. KPMG is managing and operating the Chapter 15 Debtors and their assets in accordance with the Appointment Order, and all material strategic, operational, and financial decisions, including the procurement of inventory and payment for goods and services, are made by KPMG in Ontario, Canada. In addition, KMPG has delivered or caused to be delivered to all known creditors of each Chapter 15 Debtor notice of the Giftcraft Receivership, and as of the date hereof I am not aware of any creditor formally or informally opposing the Giftcraft Receivership in the Canadian Court.

20. On the Petition Date, as contemplated in the Appointment Order, the Foreign Representative filed the voluntary petitions under chapter 15 of the Bankruptcy Code for recognition of the Giftcraft Receivership. These Chapter 15 Cases were commenced by the Foreign Representative to ensure that the powers and protections granted by the Canadian Court in the Appointment Order are effective and enforced in the United States in furtherance of the Receiver's mandate of preserving, protecting, and realizing on the Property for the benefit of all stakeholders.

**IV.     The Need for Provisional Relief and Recognition**

21. The Foreign Representative commenced these Chapter 15 Cases to provide the Receiver with the breathing room and stability necessary to maximize the value of the Chapter 15 Debtors' assets and business in the most efficient, orderly, and economical manner possible, including by seeking provisional relief between the Petition Date and the Court's entry of an order recognizing the Giftcraft Receivership as a foreign main or nonmain proceeding. Such provisional relief includes, among other things, the Court's immediate ordering of the application of sections 362 and 365(e) of the Bankruptcy Code to these Chapter 15 Cases. Without such relief, the Chapter 15 Debtors and the Property could be exposed to adverse action in the United States by

certain creditors and other parties in interest (including contract counterparties) who may disregard the stay and other provisions imposed by the Appointment Order and disrupt the Receiver's efforts.

22. Prior to the commencement of the Giftcraft Receivership, Giftcraft Canada received a demand letter for payment of rental arrears for its leased premises located at 8550 Airport Road, Brampton, Ontario (the "Leased Premises"). I understand that, following negotiations, Giftcraft Canada's landlord, Rodenbury, agreed to forbear from terminating the lease between Giftcraft Canada and Rodenbury (the "Lease") or exercising its right of distraint until May 12, 2025, in exchange for Giftcraft Canada's partial payment of rental arrears. Upon receipt of payment on or about May 7, 2025, the forbearance was extended to May 31, 2025, but significant arrears for rent, prior to May 2025, remain owing to Rodenbury.

23. I understand that, prior to the commencement of the Giftcraft Receivership, the Chapter 15 Debtors leased two showrooms located in Atlanta, Georgia and Dallas, Texas (together, the "Showrooms"), where the Chapter 15 Debtors stored sample inventory for U.S.-based retail buyers. I have been informed that in March 2025, the Chapter 15 Debtors vacated the Showrooms and discontinued rent payments under each of the Showroom leases.

24. In April 2025, counsel to the landlord for the Atlanta Showroom sent two demand letters (the "Demand Letters") to the lessee, Giftcraft US, for rental arrears, threatening "immediate legal action" to obtain payment. The Demand Letters were addressed to Giftcraft US at the Atlanta showroom address (which had previously been vacated) and at Giftcraft US's headquarters at 8550 Airport Road, Brampton, Ontario.

25. In addition, I understand a portion of Ripskirt's sales are shipped from the third-party logistics (3PL) Indiana Warehouse facility located in Greenwood, Indiana. Based on the information that KPMG has at this time, Ripskirt has approximately $2 million in book value

inventory located in the Indiana Warehouse and owes more than $300,000 to the owner of the Indiana Warehouse.

26. I am concerned about the risk certain creditors pose to the success of the Giftcraft Receivership if provisional relief and, ultimately, recognition is not granted. In particular, certain of the Chapter 15 Debtors' creditors may commence litigation, seek to assert rights or take enforcement action against inventory and property of the Chapter 15 Debtors within the United States, or otherwise interfere with the Receiver's efforts in furtherance of the Giftcraft Receivership and the Appointment Order. A stay is therefore critical to prevent enforcement actions, preserve inventory and property within the United States, and prevent interference with the Receiver's duties between the filing of the Verified Petition and the date the Court grants the relief requested therein.

27. Immediate application of these stay provisions to the assets, operations, and contractual rights of the Chapter 15 Debtors within the United States is necessary to allow the Receiver breathing room to focus its efforts on fulfilling its duties and responsibilities in the Giftcraft Receivership that will allow it to achieve the most beneficial outcome for the Chapter 15 Debtors' stakeholders in a single, collective sale and realization process. If the stay is not enforced in the United States in these Chapter 15 Cases, I am concerned that creditors and counterparties will take enforcement steps that will be detrimental to the Receiver's ability to maximize value for the benefit of all stakeholders and may risk its ability to engage in a comprehensive sale process in the Giftcraft Receivership.

**V.     Place of Business or Property in the U.S.**

28. I have been informed that entities that reside or have a domicile, a place of business, or property in the United States may be debtors in chapter 15 cases. Each Chapter 15 Debtor has an interest in a $50,000 retainer held by counsel in a client trust account at IDB Bank of NY in

New York, New York, and Giftcraft US, Ripskirt, and Yosox are United States corporate entities. In addition, the Giftcraft US GSA, the Secured Guarantee, the Guarantee Joinder, and the GSA Joinder (each as defined in the Verified Petition) are governed by the laws of the State of New York, and Ripskirt owns certain inventory located in the Indiana Warehouse.

29. For the reasons set forth herein, in the Initial Declaration, and in the Verified Petition, I understand and believe that, in accordance with the requirements of the Bankruptcy Code, (a) the Chapter 15 Debtors are eligible to be debtors in the Chapter 15 Cases; (b) each Chapter 15 Debtor's center of main interests is in Ontario, Canada; and (c) that recognition of the Giftcraft Receivership as a foreign main proceeding (or, in the alternative, as a foreign nonmain proceeding) is consistent with the purpose of chapter 15 of the Bankruptcy Code and will allow the Receiver to carry out its duties under the Appointment Order and maximize the value of the Chapter 15 Debtors' assets in an efficient and orderly manner for the benefit of all stakeholders.

30. For the reasons stated in this Declaration, in the Petitions, the Verified Petition, the Notice Procedures Motion, the Joint Administration Motion, and the Provisional Relief Motion, I request that the Verified Petition and the Provisional Relief Motion be granted with respect to Giftcraft Canada, Giftcraft, Inc., Ripskirt, and Yosox, together with such other and further relief as the Court may deem just and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 27th day of May 2025
Toronto, Ontario
Canada

KPMG Inc., solely in its capacity as court-appointed
Foreign Representative and not in its individual or
corporate capacity


By: */s/ Pritesh Patel*
Pritesh Patel, Senior Vice President

-19-