**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**HEARING: MAY 29, 2025**
**TIME: 10:00 A.M.**

| | | |
|---|---|---|
| Giftcraft Ltd., | ) | Chapter No. 15 |
| | ) | |
| Debtor in a Foreign Proceeding | ) | Case No.: 25-11030 (MG) |
| | ) | |
| Giftcraft Holdings, Inc., | ) | Chapter No. 15 |
| | ) | |
| Debtor in a Foreign Proceeding | ) | Case No.: 25-11031 (MG) |
| | ) | |
| Giftcraft Holdings USA Inc., | ) | Chapter No. 15 |
| | ) | |
| Debtor in a Foreign Proceeding | ) | Case No.: 25-11032 (MG) |
| | ) | |
| Giftcraft Inc., | ) | Chapter No. 15 |
| | ) | |
| Debtor in a Foreign Proceeding | ) | Case No.: 25-11033 (MG) |
| | ) | |
| Giftcraft Midco, Inc., | ) | Chapter No. 15 |
| | ) | |
| Debtor in a Foreign Proceeding | ) | Case No.: 25-11034 (MG) |
| | ) | |
| Ripskirt Hawaii, LLC, | ) | Chapter No. 15 |
| | ) | |
| Debtor in a Foreign Proceeding | ) | Case No.: 25-11035 (MG) |
| | ) | |
| Yosox USA Inc., | ) | Chapter No. 15 |
| | ) | |
| Debtor in a Foreign Proceeding | ) | Case No.: 25-11036 (MG) |
| | ) | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO (1) MOTION FOR
PROVISIONAL RELIEF, (2) MOTION FOR JOINT ADMINISTRATION AND
(3) THE PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDINGS
<u>AND GRANTING RELATED RELIEF</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      PRELIMINARY STATEMENT ....................................................................................... 1

II.     RELEVANT FACTS ........................................................................................................ 2

  A.    General Background ...................................................................................................... 2

  B.    The Canadian Restructuring Proceedings ................................................................. 5

  C.    The United States Bankruptcy Proceedings .............................................................. 5

III.    OBJECTION ..................................................................................................................... 8

  A.    Standards and Factors Considered in Determining COMI ..................................... 8

  B.    The U.S. Entities Have a COMI in the United States ............................................... 11

  C.    The U.S. Subsidiaries Do Not Have "Establishment" in Canada ........................... 12

  D.    The U.S. Entities Are Not Entitled to Provisional Relief Because They Have a U.S. COMI and Establishment ............................................................................................................... 14

IV.     CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Case Authority**

*In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175 (Bankr. S.D.N.Y. 2022) ...          15

*In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122 (Bankr. S.D.N.Y. 2007) ……………………………….................          11, 13

*In re Brit. Am. Ins. Co. Ltd.*, 425 B.R. 884 (Bankr. S.D. Fla. 2010) ……………..          13

*In re Chiang*, 437 B.R. 397 (Bankr. C.D. Cal. 2010) ………………………………          8, 11

*In re Creative Fin. Ltd.,* 543 B.R. 498 (Bankr. S.D.N.Y. 2016) ……………………          12, 13

*In re Fairfield Sentry Ltd.,* 714 F.3d 127 (2d Cir. 2013) …………………………...          9, 10, 11

*In re Mood Media Corp.,* 569 B.R. 556 (Bankr. S.D.N.Y. 2017) …………………..          13

*In re OAS S.A.*, 533 B.R. 83 (Bankr. S.D.N.Y. 2015) ………………………………          11

*In re Oi Brasil Holdings Cooperatief U.A.,* 578 B.R. 169 (Bankr. S.D.N.Y. 2017) .          8

*In re Servicos de Petroleo Constellation S.A.,* 600 B.R. 237 (Bankr. S.D.N.Y. 2019) …………………………………………………………………………………..          8

*In re Servicos de Petroleo Constellation S.A.*, 613 B.R. 497 (Bankr. S.D.N.Y. 2020) …………………………………………………………………………………..          9

*In re SPhinX, Ltd.,* 351 B.R. 103 (Bankr. S.D.N.Y. 2006) …………………………          9, 11

*In re Black Press Ltd. et al*. (Case No. 24-10044) (Bankr. D. Del, Feb. 8, 2024)….          9, 10, 11

*Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*, 402 B.R. 571 (Bankr. S.D.N.Y. 2009) …………………………………………...          15

**Statutory Authorities**

11 U.S.C. § 1502 …………………………………………………………………          12, 13

11 U.S.C. § 1519 …………………………………………………………………          *Passim*

**Other Authorities**

8 Collier on Bankruptcy, ¶ 1502 …………………………………………………          12

TO:    THE HONORABLE MARTIN GLENN,
         CHIEF UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), respectfully submits this objection to the (1) *Motion for Provisional Relief under 11 U.S.C. Section 1519* [ECF No. 6] ("**1519 Motion**") (2) *Motion for Joint Administration* [ECF No. 2], and (3) *Verified Petition of Foreign Representative for (I) Recognition of Canadian Proceeding as Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [ECF No. 3] (the "**Petition**") with respect to Giftcraft Ltd. ("**Giftcraft Ltd.**") and then also: Giftcraft Inc.; Ripskirt Hawaii, LLC; and Yosox USA Inc. (collectively the "**U.S. Entities**") (Giftcraft Ltd. together with the U.S. Entities, the "**Filing Entities**"). In support thereof, the United States Trustee respectfully states:

## I.      PRELIMINARY STATEMENT

The United States Trustee does not object to the recognition of foreign main proceeding or provisional relief with respect to Giftcraft Ltd. at this time. However, the remaining entities are not foreign companies and do not qualify for chapter 15 relief under the Bankruptcy Code via recognition proceedings. After the Hearing (defined below), the Foreign Representative filed supplemental papers limiting the relief sought to only Giftcraft Ltd. and the U.S. Entities. The original 1519 Motion sought relief for three additional entities, defined as the Removed Entities below. However, the elimination of the Removed Entities from the requested relief does not change the result – the U.S. Entities are still not entitled to the sought after chapter 15 relief. Instead, the U.S. Entities, if they want relief from the courts of the United States, should comply with Code provisions that apply to domestic companies, *i.e.*, chapter 11 and/or chapter 7.[1] Accordingly, the U.S. Entities are not entitled to provisional relief or recognition from this Court.

---

[1] The United States Trustee takes no position as to what provisions the U.S. Entities should proceed under or if these

The U.S. Entities apparently were incorporated in the United States, have registered offices in the United States, operate all or part of their business in the United States, lease facilities, offices, and a warehouse in United States, and employ workforce in the United States. Merely being supervised by and integrated to a Canadian-headquartered conglomerate is not enough to establish COMI or establishment (*i.e.* a local place of business) for the U.S. Entities. When faced with similar facts, courts in this district and the District of Delaware have denied the recognition of foreign main and/or non-main proceedings (cases cited *infra*). Based on the facts of this case, neither the recognition of foreign main proceeding nor nonmain proceeding – and by extension the 1519 Motion – should be granted with respect to the U.S. Entities.

## II.    RELEVANT FACTS

### A.  General Background

1.    On May 20, 2025, Giftcraft Ltd. and each U.S. Entity plus Giftcraft Holdings USA Inc, Giftcraft Holdings, Inc, and Giftcraft Midco Inc. (collectively, the "**Removed Entities**"), filed a Chapter 15 petition ("**Chapter 15 Petition**") for recognition of a foreign proceeding.

2.    Also on May 20, 2025, Giftcraft Ltd., the U.S. Entities, and the Removed Entities each filed a Verified Petition in Support which included as part of the Background an organizational chart which indicated specifically where each entity is incorporated. Moreover, each Verified Petition for the U.S. Entities listed registered offices in the United States: According to the Verified Petitions:

   a.  Giftcraft Ltd. is incorporated in Ontario, Canada with a registered office in Canada, Case No. 25-11030;

   b.  Giftcraft Holdings, Inc. is incorporated in Indiana with a registered office located at 10201 N. Illinois St. Suite 200, Indianapolis, IN, Case No. 25-11031;

   c.  Giftcraft Midco, Inc. is incorporated in Indiana with a registered office located

---

entities are entitled to relief under any chapter of the Bankruptcy Code. The United States Trustee reserves all rights and arguments should any of these other entities move under another chapter of the Bankruptcy Code.

at 10201 N. Illinois St. Suite 200, Indianapolis, IN, Case No. 25-11034;

d.  Giftcraft Holdings USA Inc. is incorporated in New York with a registered office located at 28 Liberty Street, New York, NY, Case No. 25-11032;

e.  Ripskirt Hawaii LLC is incorporated in Oregon with a registered office located at 1100 1st Avenue, Mosier, OR, Case NO. 25-11035;

f.  Giftcraft Inc. is incorporated in New York with a registered office located at 28 Liberty Street, New York, NY, Case No. 25-11033; and

g.  Yosox USA Inc. is incorporated in Delaware with a registered office located at 1209 Orange Street, Wilmington, DE, Case No. 25-11036.

3.      The Verified Petition states that, "the ultimate parent, Giftcraft Ltd. ("**Giftcraft Canada**") is the sole Canadian entity." Verified Petition at ¶ 10.

4.      Giftcraft Ltd., the U.S. Entities, and the Removed Entities share seven board members. Two of those members are located in Canada while the remaining five (the majority) are located in the United States. *Id*. at ¶ 11.

5.      The Verified Petition states that Giftcraft Ltd. has approximately 56 employees in Canada, *id*. at ¶ 14, and 10 employees in the United States, *id*. at ¶ 20.

6.      Giftcraft Ltd. and the U.S. Entities "distribute home decor, jewelry, and other novelties products in the United States through their United States-based debtor, Giftcraft US, which sells to independent specialty retailers and national chains." *Id*. at ¶ 18.

7.      Giftcraft Inc., one of the U.S. Entities, has approximately $2.3 million USD in accounts receivables. *Id*. at ¶ 18. Giftcraft Ltd, the Canadian entity has approximately $2.5 million CAD in accounts receivables. *Id*. at ¶ 13.

8.      Ripskirt Hawaii LLC, another of the U.S. Entities, stores and ships inventory from a warehouse in Indiana (the "**Indiana Warehouse**"). *Id*. at ¶ 21. There is approximately $4.0 million CAD held at the Indiana Warehouse.

9.      The Filing Parties also leased and maintained two showrooms (the "**Showrooms**") located in Atlanta, Georgia and Dallas, Texas. *Id*. at ¶ 22. However, it appears that after the

Canadian insolvency proceedings commenced, the Filing Entities vacated the showrooms and discontinued rent. *Id*. at ¶ 24.

10.     The Filing Entities have six bank accounts held in the United States. *Id*. at ¶ 27. The Verified Petition does not identify any Canadian bank accounts.

11.     HSBC Bank Canada and Giftcraft Ltd. entered into an operating facility (the "**Operating Facility**") in the principal amount of $15,000,000.00 on May 21, 2024. *Id*. at ¶ 29. Apparently, Giftcraft Ltd. was the exclusive borrower under this facility. *Id*.

12.     The Operating Facility was guaranteed by each of the remaining U.S. Entities. *Id*. at ¶ 35.

13.     The Operating Facility is secured by a "first-ranking security interests in all present or after-acquired personal property of Giftcraft Ltd. and all proceeds and renewals thereof." *Id*. at ¶ 33.

14.     A second commitment on May 21, 2024, with HSBC Bank Canada[2] was entered into with Giftcraft Ltd. and Giftcraft Midco, Inc. as borrowers on three non-revolving loan facilities (the "**Capital Facilities**"). *Id*. at ¶ 30. The Capital Facilities are secured by "various security granted by Giftcraft [Ltd.] and Giftcraft Midco, Inc. in favor of RBC, including, without limitation, the Giftcraft [Ltd.] GSA and a General Security Agreement dated as of January 10, 2019 by the U.S. Entities, other than Ripskirt Hawaii.  *Id*. at ¶ 34.

15.     In addition to perfecting security interest its security interests in Canada, Royal Bank of Canada also filed financing statements naming Giftcraft Midco Inc. and the remaining U.S. Entities and Removed Entities "as debtor with the applicable filing office in accordance with

---

[2] It appears that the Loan was later taken over by Royal Bank of Canada ("**RBC**"). The 1519 Motion states that, "Effective March 29, 2024, RBC and HSBC (and certain of HSBC's affiliated entities) amalgamated and continued as Royal Bank of Canada. As a result, RBC assumed all the business and assets of HSBC, including all of its right, title, and interest in the Operating Facility Letter and the Capital Facility Letter." *Id*. at ¶ 31.

the Uniform Commercial Code." *Id*. at ¶ 40. This includes filings in New York (1/9/19 and 3/6/25),

Indiana (1/10/19 and 3/7/25), Delaware (1/9/19 and 3/6/25), and Oregon (9/16/22 and 3/7/25). *Id*.

### B. **The Canadian Restructuring Proceedings**

16.    On May 9, 2025, Royal Bank of Canada, a secured creditor of the Filing Entities,

filed an application seeking to appoint KPMG, a licensed insolvency trustee, as the Receiver, to

secure the Property and review strategic alternatives with a view to maximizing value for all

stakeholders.

17.    On May 14, 2025, KPMG was duly appointed by order of the Canadian Court as

the Receiver and as Foreign Representative of all of the Debtors' assets, properties, and

undertaking.

### C. **The United States Bankruptcy Proceedings**

18.    In support of the Verified Petition, the Filing Entities filed (1) Declaration of

Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of

Bankruptcy Procedure and in Support of Verified Petition for (I) Recognition of Foreign Main

Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15

of the Bankruptcy Code [ECF No. 4] (the "**Patel Decl.**") and Declaration of Kenneth D. Kraft in

Support of Verified Petition of Foreign Representative for (I) Recognition of Canadian Proceeding

as Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief

Under Chapter 15 of the Bankruptcy Code [ECF No. 5] (the "**Kraft Decl.**").

19.    With respect to COMI factors, the Patel Decl. states the following information:

    a.  "[T]he [Filing Entities] own approximately $4,000,000 CAD of book value
    inventory which is currently stored in the United States (the "U.S. Inventory")."
    Patel Decl. at ¶ 6.

    b.  The Filing Entities are "party to certain lease agreements for Showrooms (as
    defined herein) located in the United States" and "for the Indiana Warehouse
    (as defined herein)."  *Id*. at ¶ 7.

5

c. Giftcraft US has approximately $2,300,000 (USD) of accounts receivable. *Id.* at ¶ 26.

d. "In addition to the distribution of Giftcraft US's products throughout the United States, I understand that the United States-based debtor, Ripskirt, carries on a business producing and distributing women's apparel, specializing in quick-drying skirts, dresses, and cover-ups." *Id.* at ¶ 27.

e. "Ripskirt ships from a third-party logistics (3PL) warehouse facility located in Greenwood, Indiana (the "Indiana Warehouse"). Based on the information that RBC has at this time, the Debtors have approximately $4,000,000 CAD in Ripskirt book value inventory located in the Indiana Warehouse and the Debtors owe more than $300,000 USD to the owner of the Indiana Warehouse." *Id.* at ¶ 28.

f. The Debtors currently employ ten (10) individuals in the United States. *Id.* at ¶ 29.

g. Giftcraft Inc.'s "total accounts payable is approximately $386,000 USD, attributable to twenty-nine (29) creditors. Its largest creditor is AmericasMart. Ripskirt's total accounts payable is approximately $1.43 million USD, attributable to twenty (20) creditors. Of these creditors, the largest amounts are owed to Meta/Facebook and FedEx Supply Chain." *Id.* at ¶ 32.

20. On May 20, 2025, the Filing Entities filed its motion for Provisional Relief [ECF No. 6], Motion Pursuant to Fed. R. Bankr. P. 2002 and 9007 Requesting Entry of Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice [ECF No. 7], and Motion for Joint Administration [ECF No. 2] (together, "**the Motions for Relief**").

21. The Motions for Relief were scheduled for hearing on May 22, 2025 (the "**Hearing**").

22. At the Hearing, the Court *inter alia* found that the Filing Entities had not *yet* established that the U.S. Entities were proper subjects of a Chapter 15 recognition proceedings. Accordingly, the court adjourned the Hearing and did not make a finding on provisional relief with respect to the U.S. Entities and joint administration at the Hearing. An additional briefing schedule was established with an adjourned hearing scheduled for May 29, 2025.

23. On May 23, 2025, the Court entered the Order Granting Motion for Provisional Relief under Section 1519 *only* with respect to Giftcraft Ltd. ECF No. 16.

24.     On May 27, 2025, the Filing Entities filed a Supplemental Memorandum (the "**Supplement**") [ECF Dkt. 19] and Supplemental Declaration in Support (the "**Supp. Patel Decl.**") [ECF Dkt. 20].

25.     The Supplement removed the Removed Entities and stated that the "Foreign Representative now seeks entry of an order granting or extending the provisional relief only as to Giftcraft Canada, Giftcraft US, Ripskirt, and Yosox Foreign." Supplement at ¶ 1.

26.     The Supplemental Patel Declaration alleges that U.S. Entities "operate a consolidated business with their sole office and headquarters in Canada, and with Canada as the hub for all primary operations functioning across both Canada and the U.S." Supp. Patel Decl. at ¶¶ 7-11.

27.     Apparently, by removing the Removed Entities, the description of the board of directors has changed. Previously, the Board of Directors was identified to have 7 members with 5 members based in the United States. Verified Petition at ¶ 11. The Supplemental Patel Declaration now states that Giftcraft Ltd. along with the U.S. Entities share only one board member and that board member is located in Canada. Supp. Patel Decl. at ¶¶ 8(i), 9(d), 10(d), and 11(d).

28.     The Supplemental Patel Declaration also states that all "insurance policies list Brampton, Ontario as the notice address, and all insurance was procured through a broker based in Toronto, Canada. *Id.* ¶¶ 8(l), 9(i), 10(i), and 11(i).

29.     Specifically, with respect to each of the U.S. Entities, the Supplemental Patel Declaration states the following:

|  | **Giftcraft Inc.** | **RipSkirt Hawaii, LLC** | **Yosox USA Inc.** |
|---|---|---|---|
| **Incorporation** | NY Corporation | OR Corporation | DE corporation |
| **Office Space/Headquarters** | No U.S office space, headquarters in Ontario | No U.S office space, headquarters in Ontario | No U.S office space, headquarters in Ontario |
| **Books and Records** | Books and records located in Canada | Books and records located in Canada | Books and records located in Canada |
| **Inventory** | No inventory in U.S. | $2 million (USD) in book value inventory located in a third-party logistics (3PL) warehouse facility located in Greenwood, Indiana | No inventory in U.S. |
| **Bank Accounts** | 2 U.S. bank accounts and 1 Canadian bank account | 2 U.S. bank accounts and 1 Canadian bank account | 2 U.S. bank accounts and 1 Canadian bank account |
| **Employees** | No U.S. employees | 10 U.S. employees and 1 Canadian employee | Not stated |

Supp. Patel Decl. ¶¶ 36-54.

## III. OBJECTION

### A. Standards and Factors Considered in Determining COMI

"The recognition decision is one of the few pieces of the chapter 15 process in which courts are not to be guided by the general principles of comity, since the text of the statute 'provides the standard for a court's determination' and therefore 'comity does not enter the equation.'" *In re Servicos de Petroleo Constellation S.A.*, 613 B.R. 497, 506 (Bankr. S.D.N.Y. 2020) ("**Servicos II**") (quoting *In re Oi Brasil Holdings Cooperatief U.A.,* 578 B.R. 169, 213 (Bankr. S.D.N.Y. 2017). A debtor can only have one center of main interest, colloquially referred to as, COMI. *See Servicos II,* 613 B.R. at 509 ("… it is nonetheless true that every debtor has one and only one COMI"); *In re Chiang*, 437 B.R. 397, 403 (Bankr. C.D. Cal. 2010) ("[A] debtor may not have more than one COMI.... In addition, a debtor must have a COMI and it must be in a specific

country.").

Under section 1516(c), in the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests [COMI]. It is important to note that when analyzing COMI, each debtor must be viewed individually. *See In re. Black Press Ltd.* et al. (Case No. 24-10044) Recognition Hrg. Tr., 99: 10-12 ("I accept the proper rule is as articulated by Judge Glenn in the *Servicos* case, *Constellation* case, that each entity has to be viewed individually."); *In re Servicos de Petroleo Constellation S.A.,* 600 B.R. 237, 246 (Bankr. S.D.N.Y. 2019) ("***Servicos I***") ("The ultimate issue presently before the Court is how to apply the Chapter 15 COMI standards to each Chapter 15 Debtor in a highly interrelated enterprise group ....").

In determining COMI, courts in this district[3] have considered a non-exclusive list of factors (the *SPhinX* factors): (1) the location of the debtor's headquarters; (2) the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); (3) the location of the debtor's primary assets; (4) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or (5) the jurisdiction whose law would apply to most disputes. *In re SPhinX, Ltd.,* 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd,* 371 B.R. 10 (S.D.N.Y. 2007). Consideration of those factors is neither required nor dispositive, and such factors are not to be applied mechanically. *In re Fairfield Sentry Ltd.,* 714 F.3d 127, 137 (2d Cir. 2013). The headquarters, or the "nerve center" analysis, is not a straightforward standard when applied to international conglomerates *Servicos II,* 613 B.R. at 509. "Given Congress's choice to use COMI instead of 'principal place of business,' that concept does not control the analysis. But to the extent that the concepts are similar, a court may

---

[3] At the Hearing, this Court discussed the application of the *SPhinX* factors in these cases.

certainly consider a debtor's "nerve center," including from where the debtor's activities are directed and controlled, in determining a debtor's COMI." *Fairfield Sentry*, 714 F.3d at 138.

In a recent decision out of Delaware, *In re. Black Press Ltd. et al.* (Case No. 24-10044) (Bankr. D. Del, Feb. 8, 2024), Judge Walrath in Delaware declined to find COMI in Canada with respect to the U.S. subsidiaries. The facts in that case (copied below) are remarkably similar to the facts here.

(i)      The subsidiaries are local newspapers operating in the United States

(ii)     The subsidiaries were incorporated in the U.S.

(iii)    The subsidiaries report to the CEO and CFO at BP (Black Press) Canada

(iv)     BP Canada handles its centralized administrative services, including oversight of finances, taxes, audit, insurance, and circulation and management systems and IT-type systems

(v)      The subsidiaries pay their vendors in the U.S.

(vi)     The subsidiaries have a publisher on site in the U.S.

(vii)    The U.S. debtors have guaranteed the funded debt, which was issued in Canada to the Canadian holding company.

*See* Ex. A, *Black Press* Recognition Hrg. (February 8, 2024) Tr. ("***Black Press* Tr.**"), 99:14-100:4. A copy is attached hereto as **Exhibit A**.

In reaching her conclusion, Judge Walrath stated, "I think that I would be hard pressed to find that a newspaper, local newspaper operating in the United States, has its center of main interest in Canada" *Black Press* Tr. 99:13-15. "While the foreign representative and I think Kansas (sic) argued that the U.S. debtors could not function without Canada because of this integration, I think it's clear that they could function independently." *Black Press* Tr. 100:7-10. Judge Walrath further found that,

> Even using the nerve center test, I think I do have to consider what is the nerve center of the operations, the business operations, not what is the nerve center of the holding company, which is seeking to supervise or have oversight over its

> subsidiaries and perhaps instituting rules to restrict certain activities by those
> entities. That is not enough to make, again, the local subsidiaries have their center
> of main interest in Canada.

*Black Press* Tr. 101:5-12.

> And I think that concluding otherwise, concluding that a company incorporated and
> operating in the United States has a center of main interest simply because it is part
> of a larger group of subsidiaries that also operate independently but are held by a
> Canadian holding company really would be effectively piercing the corporate veil,
> and there's simply not enough evidence of that.

*Black Press* Tr. 100:15-21.

"The COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties." *Fairfield*, 714 F.3d at 130; *see also In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 129–30 (Bankr. S.D.N.Y. 2007) (looking at whether the proposed COMI was ascertainable by third parties as part of its COMI analysis). By examining factors in the public domain, courts are readily able to determine whether a debtor's COMI is in fact regular and ascertainable [and] not easily subject to tactical removal. *Fairfield Sentry*, 714 F.3d at 136-137. "The location of the COMI is an objective determination based on the viewpoint of third parties (usually creditors)." *In re Chiang*, 437 B.R. at 403 (cited in *Servicos II*, 613 B.R. at 508). In other words, whether the creditors understand they are doing business with the debtor that is based in a certain country. *See In re OAS S.A.*, 533 B.R. 83, 103 (Bankr. S.D.N.Y. 2015) (finding that purchasers of the 2019 Notes understood that they were investing in Brazilian-based businesses).

### B.  <u>The U.S. Entities Have a COMI in the United States</u>

Here, the *SPhinX* plus additional factors, weigh heavily in favor of establishing COMI in the U.S. for at least the six U.S. Entities. <u>First</u>, all U.S. Entities are incorporated in U.S. states and have American addresses listed on their Petitions. <u>Second</u>, of the 7 board members for the Filing

Entities, 5 are located in the United States – that means that at least 70% of the board is located in the United States.[4]

Third, the U.S. Entities appear to have some employees in the United States. Fourth, the business paradigm the Filing Entities appear to have is storing inventory in warehouses in the United States, showcasing inventories at showrooms in the United States, and then ultimately selling products within the United States. Indeed, Ripskirt Hawaii LLC alone has approximately $4.0 million CAD of inventory held at the Indiana warehouse which is in the United States. Fifth, the U.S. Entities have substantial accounts receivables in the United States. For example, Giftcraft Inc. has approximately $2.3 million in USD accounts receivables, compared with Giftcraft Ltd., which has only $2.5 million in CAD accounts receivables. Sixth, the U.S Entities each apparently have two bank accounts in the United States and one account in Canada related to the secured facilities. Accordingly, the facts and circumstances as presented by the Filing Entities establish that the U.S. Entities have a U.S. COMI. Moreover, like in ***Black Press***, when evaluating the center of operations – which appears to be the United States via warehouses, showrooms, bank accounts, accounts receivables, inventory, and the ultimate goal to sell in the United States – the U.S. Entities do not have their main interest in Canada or in a foreign country, and instead of a COMI located in the United States.

## C. The U.S. Subsidiaries Do Not Have "Establishment" in Canada

"Establishment" means any place of operations where the debtor carries out a nontransitory economic activity. 11 U.S.C. § 1502(2). "Establishment has been described as a local place of business."[5] *In re Creative Fin. Ltd.,* 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016); *see* also 8 Collier

---

[4] The supplemental filings now state that there is only one board member and that member is located in Canada. It is unclear if this was the basis for the elimination of the Removed Entities from the sought relief.

[5] "To further define establishment, courts look to the Model Law and the sources used to promulgate it. Per the

on Bankruptcy, ¶ 1502.01[2] (explaining that the purpose of this definition is to limit the definition of foreign proceedings to those pending in a country where the Debtor has a place of business).

"In order to have a place of operations from which a debtor carries out economic activity on a non-transitory basis, the debtor must have "a seat for local business activity" in the foreign country that is relevant, and that it must engage in business or professional activity from that seat of local business activity that has a "local effect on the marketplace." *In re Mood Media Corp.*, 569 B.R. 556, 561–62 (Bankr. S.D.N.Y. 2017) (citing *Creative Fin.*, 543 B.R. at 520); *see also Bear Stearns*, 374 B.R. at 131 (holding that the requirements of a "place of operations" from which "economic activity" is conducted require a seat for local business activity that has a local effect on the markets). "In other words, the definition contemplates the existence of a place of business in the foreign country from which market-facing activities are conducted." *In re Mood Media Corp.*, 569 B.R. at 562.  Importantly, "the statute does not merely require economic activity; it requires the existence of a place of operations in the foreign country from which the economic activity is conducted." *Id.* "The terms 'operations' and 'economic activity' require a showing of a local effect on the marketplace, more than mere incorporation and record-keeping and *more than* just the maintenance of property. *Creative Fin.*, 543 B.R. at 520.

The facts in this case are remarkably similar to the ones in *In re. Mood Media Corp.* (copied below), where Judge Wiles refused to find COMI or establishment in Canada for the U.S. subsidiaries.  For example, here, the U.S. Entities admittedly have a physical presence in the United States. Further, the Verified Petition showed that the companies as a whole operate as an integrated enterprise to some extent, and that management, financial management, cash management,

---

European Union's Convention on Insolvency Proceedings's legislative history, a 'place of operations' referred to 'a place from which economic activities are exercised on the market (*i.e.* externally), whether the said activities are commercial, industrial or professional." *In re Brit. Am. Ins. Co. Ltd.*, 425 B.R. 884, 915 (Bankr. S.D. Fla. 2010) (cited by *Creative Fin., 543 B.R. 498.*

accounting, and procurement functions may be shared to some extent and predominately take place in the United States.[6] Indeed, it appears that all market-facing activities are conducted in the United States. Giftcraft Ltd. may employ people who provide services of various kinds to the U.S. Entities, but that does not mean the U.S. Entities have places of business in Canada. Specifically, nothing was identified that showed that the U.S. companies themselves have places of operations in Canada, from which outward-facing market activities of any kind were conducted. Moreover like in *Mood Media*, the U.S. Entities are guarantors of debt obligations that were issued in Canada, and they pay intercompany obligations to the Canadian entity, but having liabilities or paying debts in a jurisdiction does not mean that the U.S. Entities have a place of operations there.

### D. The U.S. Entities Are Not Entitled to Provisional Relief Because They Have a U.S. COMI and Establishment

Section 1519 of the Bankruptcy Code permits the Court, "[f]rom the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors[.]" 11 U.S.C. § 1519(a). Sections 1519(a)(1)–(3) of the Bankruptcy Code define the scope of available provisional relief, which includes:

A. staying execution against the debtor's assets;

B. entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and

C. any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

---

[6] While one may argue the activities of the U.S. Subsidiaries have an economic impact on Canada (which again by itself is not sufficient to find establishment), it must be noted that, in order to qualify as an establishment, such impact-producing activity must be conducted from that local place of operation in Canada, not from the operation in the U.S. *See Mood Media.,* 569 B.R. at 562 ("the statute does not merely require economic activity; it requires the existence of a place of operations in the foreign country *from which* the economic activity is conducted.") (emphasis added).

11 U.S.C. § 1519(a). In determining whether provisional relief is appropriate in the gap period between the chapter 15 filing and recognition hearing, bankruptcy courts apply the "standards, procedure, and limitations" applicable for the entry of a preliminary injunction. 11 U.S.C. § 1519(e); *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 180–81 (Bankr. S.D.N.Y. 2022).

Provisional relief under chapter 15 of the Bankruptcy Code is conditioned on a foreign representative demonstrating that a debtor meets the standards applicable to an injunction. *See* 11 U.S.C. § 1519(e). In this context, a preliminary injunction is warranted when (a) there is a likelihood of success on the merits (*i.e.*, the request for recognition); (b) there is "an imminent irreparable harm" to the debtor if the preliminary injunction is not issued; (c) "the balance of harms tips in favor of the moving party"; and (d) "the public interest weighs in favor of an injunction." *In re Andrade Gutierrez*, 645 B.R. at 181 (citing *Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 588–89 (Bankr. S.D.N.Y. 2009)).

The Filing Entities cannot meet the first prong of the preliminary injunction analysis because there is not a likelihood of success on the merits, *i.e.*, the request for recognition. As discussed *supra*, the U.S. Entities cannot meet the standard for recognition because they are entities that are located and conduct business in the United States in such a way that they fail both COMI and establishment in a foreign jurisdiction.

Further, public interest does not favor provisional relief for the U.S. Entities. Instead, the U.S. Entities should be required to comply with the applicable provisions of the bankruptcy Code if they want relief. Specifically, the benefits of the automatic stay, that the U.S. Entities want via the 1519 Motion, are also available if the U.S. Entities filed for chapter 7 or 11 relief. However, to get that relief, the U.S. Entities would have to comply with additional requirements, including,

15

detailed financial disclosures, 341 Meetings, monthly operating reports, statutory payments of United States Trustee Fees, and many others. It is not in the public interests for American companies to use foreign affiliates as a shield to avoid complying with mandatory and *applicable* provisions of the Bankruptcy Code.

## IV. CONCLUSION

The United States Trustee respectfully requests the Court deny the request for recognition of either foreign main proceeding or foreign nonmain proceeding, with respect to the U.S. Entities, and order other reliefs it deems just and proper.

Dated: New York, New York
May 28, 2025

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

/s/ *Shara Cornell*
Shara Cornell
Trial Attorney
Department of Justice
Office of the United States Trustee (SDNY)
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY  10004
Tel: (212) 510-0500