**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:                                                          **NOT FOR PUBLICATION**

        Giftcraft Ltd. *et al.*,                     Chapter 15

                                       Case No. 25-11030 (MG)

             Debtors in a Foreign Proceeding.

---------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER
## GRANTING PROVISIONAL RELIEF

*A P P E A R A N C E S :*

CHIPMAN BROWN CICERO & COLE, LLP
*Counsel to the Foreign Representative*
501 5th Avenue, 15th Floor
New York, New York 10017
By:    Daniel G. Egan, Esq.

Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
By:    Mark L. Desgrosseilliers, Esq.

WILLIAM K. HARRINGTON, UNITED STATES TRUSTEE, Region 2
*Office of the United States Trustee (SDNY)*
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, New York 10004
By:    Shara Cornell, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the motion (the "Motion," ECF Doc. # 6) of KPMG Inc. (the

"Foreign Representative" or "Receiver"), the authorized foreign representative in respect of the

Canadian receivership proceeding (the "Giftcraft Receivership") over Giftcraft Ltd. ("Giftcraft

Canada" or the "Canadian Debtor") and three of its corporate affiliates, Giftcraft Inc. ("Giftcraft

US"), Ripskirt Hawaii, LLC ("Ripskirt"), and Yosox USA Inc. ("Yosox") (collectively, the

"U.S. Moving Debtors," and together with Giftcraft Canada, the "Moving Debtors"), for an order

granting provisional relief pending final determination on the *Verified Petition of Foreign*

*Representative for (I) Recognition of Canadian Proceeding as Foreign Main Proceeding, (II)*

*Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the*

*Bankruptcy Code* (the "Verified Petition," ECF Doc. # 3).

On May 27, 2025, the Foreign Representative filed its *Supplemental Memorandum of*

*Law in Further Support of the Motion* (the "Supplemental Memorandum," ECF Doc. # 19).

Pursuant to the Supplemental Memorandum, the Foreign Representative is no longer seeking

provisional relief on behalf of the following entities: Giftcraft Holdings USA Inc. ("GH USA"),

Giftcraft Holdings, Inc. ("GHI"), and Giftcraft Midco, Inc. ("Midco") (the "Non-Moving

Debtors," and together with the Moving Debtors, the "Debtors").

The Supplemental Memorandum was filed by the Foreign Representative following an

initial hearing on the Motion held on May 22, 2025 (the "Initial Hearing"). During the Initial

Hearing, the Court indicated it would grant provisional relief with respect to Giftcraft Canada for

a period of fourteen (14) days (*see* ECF Doc. # 16, the "Giftcraft Canada Order"), but declined to

grant parallel relief to the U.S. Moving Debtors and the Non-Moving Debtors absent an entity-

by-entity analysis of each Debtor's "center of main interests" (COMI). The Foreign

Representative subsequently filed the Supplemental Memorandum in response to the Court's

comments on the record at the Initial Hearing.

The Motion is supported by the following submissions: (a) the Verified Petition; (b) the

*Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the*

*Federal Rules of Bankruptcy Procedure and in Support of Verified Petition for (I) Recognition of*

*Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Initial Declaration," ECF Doc. # 4); and (c) the *Declaration of Kenneth D. Kraft in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Kraft Declaration," ECF Doc. # 5).  The Supplemental Memorandum incorporates the *Supplemental Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Supplemental Declaration," ECF Doc. # 20).

On May 28, 2025, the U.S. Trustee filed the *Objection of the United States Trustee To (1) Motion for Provisional Relief, (2) Motion for Joint Administration And (3) The Petition for Recognition of Foreign Main Proceedings and Granting Related Relief* (the "Objection," ECF Doc. # 24).  As relevant to this Motion, the U.S. Trustee argues that the COMI for each of the U.S. Moving Debtors is the United States and not Canada.  Therefore, the U.S. Trustee submits, the Foreign Representative is not entitled to provisional relief under Section 1519, since it has failed to demonstrate a likelihood of success on its request for Chapter 15 recognition as to the U.S. Moving Debtors.

For the reasons explained below, the Court concludes that the Foreign Representative has satisfied the requirements of Section 1519 as to all of the Moving Debtors.  The Court therefore **GRANTS** the Motion in full and **OVERRULES** the U.S. Trustee's Objection.  A separate order granting provisional relief has been entered (ECF Doc. # 28).

# I. BACKGROUND

## A. Corporate Structure of the Debtors

The Debtors comprise a group of companies variously operating as retailers and
distributors of gifts, décor, novelty items, jewelry, apparel and more. (Motion ¶ 14.) GHI is the
ultimate parent of the Debtors, Giftcraft Canada is the sole Canadian entity, and Midco is the
U.S. parent to the remaining Debtors, as illustrated in the below organizational chart:



(Verified Petition ¶ 10.)

Each of the Debtors shares an identical team of officers. (*Id.* ¶ 11.) Historically, the
Board of Directors for Midco and Giftcraft Canada were each comprised of six members, with
one member—Krista Halliday, President—located in Canada, and the remaining five members
located in the United States. (Supplemental Memorandum ¶ 29.)[1] Board meetings were held

---

[1]      The Foreign Representative provides that, following the initiation of the Giftcraft Receivership, each of the
five U.S.-based members of the Board resigned. The Foreign Representative contends that "[t]hese resignations
were a natural consequence of the Receiver's appointment as sole administrator of the Debtors' business and the
winding down of the Debtors' operations." (Supplemental Memorandum at 15 n.7).

virtually.  (*Id.* ¶ 11.)  The Debtors employ 56 individuals based in Canada, and 10 individuals in the United States, the latter of whom all work remotely.  (*Id.* ¶¶ 14, 20.)  A summary of each of the Moving Debtors' operations follows.

### 1. The Canadian Debtor

***Giftcraft Canada****.*  Giftcraft Canada operates as a supplier of gift items, including home décor, jewelry, and other novelties, distributing through retailers across Canada ranging from independent specialty retailers to national chains.  (*Id.* ¶ 12.)  The entity has approximately 13,000,000 CAD of inventory located in Canada, and approximately 2,500,000 CAD of accounts receivable.  (*Id.* ¶ 13.)  Since 2007, Giftcraft Canada has carried on its business in Canada from leased premises located at 8550 Airport Road, Brampton, Ontario (the "Leased Premises"), and owes monthly rent of 495,000 CAD to Rodenbury Investments Group ("Rodenbury") pursuant to a lease agreement (the "Lease") for its occupation and use of the Leased Premises.  (*Id.* ¶ 15.)  As of May 2025, Giftcraft Canada is subject to an ongoing demand issued by Rodenbury for payments of arrears in rent owing under the Lease.  (*Id.* ¶¶ 16–17.)

### 2. The U.S. Moving Debtors

***Giftcraft US****.*  Giftcraft US manages the Debtors' distribution of home décor, jewelry, and other novelty products in the United States through its sales to independent specialty retailers and national chains.  (*Id.* ¶ 18.)  Giftcraft US does not maintain any inventory, as all its products are shipped direct to its customers either through Giftcraft Canada or an overseas supplier.  (*Id.*)  Giftcraft US is believed to have approximately 2,300,000 USD in accounts receivable.  (*Id.*)  The entity does not currently employ any individuals in the United States.  (*Id.*)  Giftcraft US has three bank accounts in the United States, with one account at each of HSBC USA, CIBC, and RBC; each bank account holds a *de minimis* amount of less than 5,000 USD.  (*Id.* ¶¶ 27–28.)

Giftcraft US previously leased a showroom in Atlanta, Georgia from AmericasMart Real Estate, LLC ("AmericasMart"), where it stored sample inventory for U.S.-based retail buyers, for $113,379 per month.  (*Id.* ¶¶ 22–23.)  The lease was scheduled to run through February 2027, but the Debtors vacated the Atlanta showroom in January 2025 and discontinued rent payments at that time.  (*Id.* ¶¶ 23–24.)  AmericasMart issued letters in April 2025 demanding that Giftcraft US pay outstanding rental arrears and vacate the premises immediately.  (*Id.* ¶ 25.)  AmericasMart is the largest of Giftcraft US's 29 creditors; the affiliate's accounts payable is approximately 386,000 USD in the aggregate.  (*Id.* ¶ 26.)  In addition to the showroom based in Atlanta, the Debtors previously rented and maintained a showroom in Dallas, Texas, for $16,394 per month, with a lease term ending September 2025.  (*Id.* ¶¶ 22–23.)  Like the Atlanta showroom, the Debtors vacated the Dallas showroom in January 2025 and discontinued payments of rent.  (*Id.* ¶ 24.)  Giftcraft US is listed on an agreement relating to the lease of the Dallas showroom.  (Supplemental Memorandum ¶ 38.)

***Ripskirt.***  Ripskirt is an Oregon limited liability company which produces and distributes women's apparel, specializing in quick-drying skirts, dresses, and cover-ups.  (Verified Petition ¶ 19; Supplemental Memorandum ¶ 42.)  Ripskirt's products are aimed at the vacation and leisure markets and are sold through various channels, including e-commerce and retail distribution. (Verified Petition ¶ 19)  Ripskirt ships inventory from a third-party logistics facility located in Greenwood, Indiana, which is believed to house inventory currently valued at approximately 4,000,000 CAD.  (*Id.* ¶ 21.)  Ripskirt has two bank accounts in the United States, with one account at each of HSBC USA and Airwallex; each account holds a *de minimis* amount of less than 5,000 USD.  (*Id.* ¶¶ 27–28.)  Ripskirt also works with payment processors Paypal, Afterpay, and Shopify.  (*Id.* ¶ 28.)  The entity's total accounts payable is approximately 1.43 million USD,

attributable to twenty creditors. Of these creditors, the largest amounts are owed to Meta/Facebook and FedEx Supply Chain. (*Id.* ¶ 26.)

**Yosox.**  Yosox is an e-commerce company which sells home décor, jewelry, and other novelty products to customers online. (Supplemental Memorandum ¶ 49.)  Yosox is incorporated under the laws of the State of Delaware. (*Id.*)  Yosox has one bank account with HSBC USA; like those of Giftcraft US and Ripskirt, the account holds a *de minimis* balance of less than 5,000 USD. (Verified Petition ¶¶ 27–28.)

**B.  Credit Defaults and Receivership**

On March 21, 2024, Midco and Giftcraft Canada (collectively, the "Borrowers"), jointly executed a commitment letter with HSBC (as later amended, the "Capital Facility Letter"), pursuant to which HSBC extended various credit facilities to the Borrowers, including three non-revolving demand facilities in the principal amounts of 16,875,000 USD, 3,057,858.52 USD, and 8,115,716.97 USD, respectively (the "Capital Loans"). (*Id.* ¶ 30.)  Following HSBC's subsequent amalgamation with RBC, the commitment letter was amended by a September 24, 2024 agreement among RBC, as lender, and Giftcraft Canada and Midco, as borrowers. (*Id.* ¶ 31.)  In accordance with the terms of the Capital Facility Letter, the Capital Loans are secured by various security granted by Midco in favor of RBC, including, without limitation, a General Security Agreement dated as of January 10, 2019 by Midco and GH USA, GHI, Giftcraft US, and Yosox (the "Giftcraft US GSA"). (*Id.* ¶ 34.)  Additionally, the debts and liabilities owing by the Borrowers to RBC, including under the Capital Facility Letter, were guaranteed by each of Midco, GH USA, GHI, Giftcraft US and Yosox (collectively, the "Guarantors"), pursuant to a guaranty of payment dated as of January 10, 2019 (the "Secured Guarantee"). (*Id.* ¶ 35.)

Ripskirt assumed and joined the Secured Guarantee as a Guarantor by the guaranty of payment joinder dated September 16, 2022.  (*Id.*)

The Secured Guarantee is supported by the Giftcraft US GSA.  (*Id.* ¶ 36.)  The Giftcraft US GSA, together with its joinder by Ripskirt in September 2022, constitutes a first-ranking security interest in all present or after-acquired personal property of each of the U.S.-based Debtors.  (*Id.* ¶¶ 34, 36.)  With respect to its security interests under the Giftcraft US GSA, RBC has filed financing statements naming Midco and each Guarantor as debtor with the applicable filing office in accordance with the UCC, as adopted by: New York (with respect to Giftcraft US and GH USA); Indiana (with respect to Midco and GHI); Delaware (with respect to Yosox), and Oregon (with respect to Ripskirt).  (*Id.* ¶ 40.)

Pursuant to Section 6 of the Capital Facility Letter, the Borrowers are required to comply with certain covenants and conditions affecting GHI, the U.S.-based parent of the Debtors.  (*Id.* ¶ 42.)  Further to these requirements, Midco agreed that it would not: (i) permit the liquidity of GHI to be less than $3,000,000 in any given month (the "Liquidity Covenant"); or (ii) permit the total operating income of GHI to be less than 85% of projected EBITDA in any fiscal year (the "Income Covenant").  (*Id.* ¶ 42.)  On February 12, 2025, RBC notified Midco and Giftcraft Canada that they had breached the Liquidity Covenant for the period ending December 31, 2024, and breached the Income Covenant for the periods ending October 31, 2024, November 30, 2024, and December 31, 2024, resulting in events of default.  (*Id.* ¶¶ 44, 46.)  RBC's Canadian counsel issued formal demands for payment on March 7, 2025.  (*Id.* ¶ 47.)  As of March 19, 2025, the Borrowers were collectively indebted to RBC in the aggregate principal amounts of 10,879,507.87 CAD and 27,061,536.46 USD, exclusive of interest, fees, and expenses.  (*Id.* ¶ 48.)

RBC and the Debtors entered into a short-term forbearance agreement with the Debtors (the "Forbearance Agreement"), pursuant to which RBC conditionally agreed to refrain from exercising its security and enforcement rights until April 30, 2025 (the "Forbearance Period"). (*Id.* ¶ 49.)  The Forbearance Agreement was intended to provide the Debtors' management time to rehabilitate its business, which would include (i) winding down their road business (the business segment specializing in sales to specialty retailers) which was not profitable due to its high cost structure, (ii) focusing on more profitable key account sales, and (iii) selling aged inventory to generate cash flow.  (*Id.* ¶ 50.)

While the Debtors were initially able to manage cash flow and meet reporting requirements during the early stages of the Forbearance Period, Giftcraft Canada's management ultimately advised RBC that Ripskirt, the Debtors' primary cash-flow and profit-generating business segment, had experienced an unprecedented decline in sales in April, following the announcement of global tariffs imposed by the United States government.  (*Id.* ¶ 51.)  Ripskirt's "business and brand" was "significantly" impacted by tariffs as its inventory is largely sourced from China and its primary customer market is based in the United States.  (*Id.*)  The Debtors' management advised RBC that, despite ongoing efforts to identify alternate suppliers in Vietnam and reposition the Ripskirt business, it would take several additional months for Ripskirt sales to return to historical levels given the economic climate and uncertainty around tariffs.  (*Id.* ¶ 52.) The Debtors provided a cash flow forecast showing that the Operating Loan would increase by over 1 million CAD and would approach the 15,000,000 CAD limit by early June 2025.  (*Id.* ¶ 53.)  In order to keep the Operating Loan at or near its existing balance, RBC would need to defer both principal and interest.  (*Id.*)  RBC declined to do so, and did not extend the Forbearance Period beyond its contractual expiration of April 30, 2025.  (*Id.*)

Instead, as provided for by the terms of the Forbearance Agreement, on May 9, 2025, RBC filed an application with the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") seeking to appoint KPMG, a licensed insolvency trustee, as the Receiver, to secure the assets of the Debtors (the "Property") and review strategic alternatives, with a stated view to maximizing value for all stakeholders. (*Id.* ¶¶ 54–55.) The Canadian Court issued an order appointing the Foreign Representative as Receiver of the Debtors on a provisional basis (the "Appointment Order," ECF Doc. # 4-3), thus implementing the Giftcraft Receivership pursuant to section 243(1) of the Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3, as amended (the "BIA") and section 101 of the Courts of Justice Act, R.S.O. 1990, c. C.43, as amended (the "CJA"). (Motion at 1–2; *id.* ¶ 15.) The Appointment Order includes several provisions staying collection or enforcement efforts against the Debtors. (*Id.* ¶¶ 16–19.) As a consequence of the initiation of the Giftcraft Receivership, "all the property, assets, and undertaking of the [Debtors] are now vested in KPMG, a Canadian financial advisory practice, in its capacity as court-appointed Receiver." (Supplemental Memorandum ¶ 31 (citing Appointment Order ¶ 3; Supplemental Declaration ¶¶ 8(j), 9(f), 10(f), and 11(f)).

### C.  The Motion and the Supplemental Memorandum

As modified by the Supplemental Memorandum, the Motion seeks an order granting the following provisional relief, pending a ruling recognition of the Verified Petition: (a) providing that sections 362 and 365 of the Bankruptcy Code apply with respect to the Moving Debtors and their property within the territorial jurisdiction of the United States; (b) giving full force and effect to the Appointment Order on a provisional basis, including with respect to the stay clauses and the powers granted to the Receiver as set forth therein; (c) recognizing the Foreign Representative as the representative of the Moving Debtors with full authority to administer the

Moving Debtors' assets and affairs in the United States; (d) waiving compliance with

Bankruptcy Rule 1007(a)(4)(B) and the security provisions of Rule 65(c) of the Federal Rules of

Civil Procedure; (d) imposing certain relief related to service, jurisdiction and the effectuation of

the order; and (e) granting such other and further relief as the Court deems just and proper

(collectively, the "Provisional Relief").  (Motion ¶ 28; Provisional Relief Order, ECF Doc. # 6-1;

*see also* Supplemental Memorandum ¶ (withdrawing request for Provisional Relief with respect

to Non-Moving Debtors).)

The Foreign Representative submits that the requested Provisional Relief is necessary to

"allow the Receiver to preserve assets that should be available for distribution" to all creditors of

the Moving Debtors, and to "prevent dissipation of the assets in violation of the stay in place

pursuant to the Appointment Order."  (Motion ¶ 26.)  Further, the Foreign Representative

submits that, in order to "effectively liquidate" the Moving Debtors' assets and, "if warranted,

administer a claims process under the supervision of the Canadian Court," the Receiver must

"have full advantage of a stay in proceedings" so that it may protect the Moving Debtors' "rights

in the U.S. Inventory, preserve their contractual rights, evaluate [their] other property interests,

and investigate any claims asserted against [their] Property."  (*Id.*)

### D.  The U.S. Trustee's Objection

The U.S. Trustee filed its limited Objection to the Motion on May 28, 2025, opposing the Foreign Representative's request for provisional relief with respect to the U.S. Moving Debtors only.  The U.S. Trustee contends that the COMI and the establishment of each of the U.S. Moving Debtors is the United States, rather than Canada, and that the Foreign Representative is therefore unlikely to obtain recognition of the Giftcraft Receivership as either the foreign main or nonmain proceeding with respect to those entities.  (Objection at 17–18.)  The U.S. Trustee contends that the U.S. Moving Debtors should be required to pursue the relief they seek through Chapter 15, including the imposition of an automatic stay, by filing under Chapter 7 or Chapter 11 of the Bankruptcy Code and adhering to the additional requirements attendant under those provisions.  (*Id.* at 18–19.)

### III. LEGAL STANDARD

### A.  Section 1519(a): Provisional Relief

Section 1519(a) of the Bankruptcy Code permits the Court to grant certain forms of provisional relief in between the filing of the chapter 15 petition and the recognition hearing, during which "relief is urgently needed to protect the assets of the debtor or the interests of creditors."  When determining whether granting provisional relief is appropriate, the Court applies the "standards, procedure, and limitations" applicable to the issuance of a preliminary injunction.  11 U.S.C. § 1519(e); *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 180–81 (Bankr. S.D.N.Y. 2022) (citing *In re Beechwood*, 2019 WL 3025283, at *2 (Bankr. S.D.N.Y. July 10, 2019)).  In the context of a chapter 15 proceeding, a preliminary injunction is warranted when (a) there is a likelihood of success on the merits (*i.e.,* the request for recognition); (b) there will be "imminent irreparable harm" to the debtor if the provisional relief is not issued; (c) "the balance of harms tips" in favor of the moving party; and (d) "the public interest weighs in favor"

12

of granting the provisional relief. *Andrade Gutierrez*, 645 B.R. at 181 (citing *Lyondell Chem.*

*Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 588–89 (Bankr.

S.D.N.Y. 2009)).

A showing of irreparable harm is "the single most important prerequisite for the issuance

of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118

(2d Cir. 2009) (quotation omitted). To satisfy this element, the plaintiff must demonstrate that,

absent the injunction, it "will suffer an injury that is neither remote nor speculative, but actual

and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve

the harm." *Id.* (internal citation omitted). Additionally, in the context of a under section 1519, a

movant seeking provisional relief satisfies the "likelihood of success" element if it can

demonstrate that it is likely to obtain recognition of the foreign proceeding under section 1517 of

the Bankruptcy Code. *See Andrade Gutierrez*, 645 B.R. at 181 (internal citation omitted).

Section 1522 of the Bankruptcy Code provides that the court may "grant," "modify," or

"terminate" relief under section 1519 "*only if* the interests of the creditors and other interested

entities, including the debtor, are sufficiently protected." 11 U.S.C. §§ 1522(a), (c) (emphasis

added). Similarly, the court may condition relief on appropriate conditions, such as the posting

of security or the filing of a bond. 11 U.S.C. § 1522(b); *see also* 1 COLLIER ON BANKRUPTCY ¶

13.06 (16th ed. 2022).

### B.  Section 1517(a): Foreign Proceeding Recognition

Section 1517(a) of the Bankruptcy Code establishes three requirements for the

recognition of a foreign proceeding under chapter 15. In order to recognize the foreign

proceeding, a court must conclude that:

> (1) The foreign proceeding constitutes a "foreign main proceeding" or a "foreign
> nonmain proceeding" as defined under section 1502;

13

(2) The foreign representative applying for recognition is a person or body; and

(3) The petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

Recognition of the foreign proceeding is statutorily mandated if the three requirements of section 1517(a) are met, and no exception is applicable. *See In re Millard*, 501 B.R. 644, 651 (Bankr. S.D.N.Y. 2013).

### 1. 1517(b)(1): Foreign Main Proceeding Recognition

Section 1517(a) of the Bankruptcy Code distinguishes between "foreign main" and "foreign nonmain" proceedings. Section 1517(b) establishes conditions for recognition of each.

In relevant part, section 1517(b)(1) states that a foreign proceeding shall be recognized "as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). Section 1502(4) uses the same language to define "foreign main proceeding." 11 U.S.C. § 1502(4).

### a. "Foreign Proceeding"

Section 101(23) defines a "foreign proceeding" as:

[A] collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

Based on this definition, courts have held that a "foreign proceeding" requires:

(i) [the existence of] a proceeding;

(ii) that is either judicial or administrative;

(iii) that is collective in nature;

(iv) that is in a foreign country;

(v) that is authorized or conducted under a law related to insolvency or the adjustment of debts;

14

(vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and

(vii) which proceeding is for the purpose of reorganization or liquidation.

*See Armada (Singapore) Pte Ltd. v. Shah* (*In re Ashapura Minechem Ltd.*), 480 B.R. 129, 136 (S.D.N.Y. 2012) (*citing In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); In re ENNIA Caribe Holding N.V., 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018); *In re Agro Santino, OOD*, 653 B.R. 79 (Bankr. S.D.N.Y. 2023).

> b.   *"Center of Main Interests"*

The Bankruptcy Code does not define the term "center of main interests" (COMI). However, section 1516(c) provides that, in the absence of an objection or evidence to the contrary, a debtor's registered office or habitual residence "is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c); *see also In re Olinda Star I*, 614 B.R. 28, 41 (Bankr. S.D.N.Y. 2020); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 705 (Bankr. S.D.N.Y. 2017); *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) (internal citations omitted).  The relevant temporal anchor for the determination of the location of the debtor's COMI is the date on which the chapter 15 petition is filed.  *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) (hereinafter "*Fairfield Sentry*").

In assessing whether a movant challenging the registered office presumption has overcome that presumption, courts in this District have applied a list of non-exclusive factors, including: (i) the location of the debtor's headquarters; (ii) the location of those who actually manage the debtor; (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors, or a majority of the creditors who would be affected by the case; and (v) the jurisdiction whose law would apply to most disputes.  *Fairfield Sentry*, 714 F.3d

at 137 (*citing In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).  While these

factors offer a "helpful guide" in determining a debtor's COMI, they are not exclusive,

consideration of these specific factors is "neither required nor dispositive," and courts are

cautioned against their "mechanical application." *Fairfield Sentry*, 714 F.3d at 137 (citing

*SPhinX*, 351 B.R. at 117).

Additionally, in determining a debtor's COMI, the Second Circuit and this Court have

examined the expectations of creditors and other interested parties, as a company's COMI must

be "ascertainable by third parties." *See Fairfield Sentry*, 714 F.3d at 136–38; *In re Millennium

Global Emerging Credit Master Fund Ltd*., 474 B.R. 88, 93 (S.D.N.Y. 2012).  As the Second

Circuit has explained, by examining factors "in the public domain," courts are able to evaluate

whether a debtor's COMI is in fact "regular and ascertainable [and] not easily subject to tactical

removal." *See Fairfield Sentry*, 714 F.3d at 136–37.  The expectations of creditors can be

assessed through examination of the public documents and information available to guide

creditor understanding of the nature and risks of their investments." *In re Oi Brasil Holdings

Cooperatief U.A.*, 578 B.R. 169, 228 (Bankr. S.D.N.Y. 2017).  In practice, courts evaluate

creditor expectations by reviewing has disclosures in offering memoranda, indentures, and

similar documentation. *See id*. at 228–32 (analyzing noteholder expectations, as set forth in

offering memorandum, , as part of COMI inquiry); *In re OAS S.A.*, 533 B.R. 83,102–03 (Bankr.

S.D.N.Y. 2015) (same); *Millennium Glob.*, 474 B.R. at 93–94 (same); *In re Suntech Power

Holdings Co., Ltd*., 520 B.R. 399, 418 (Bankr. S.D.N.Y. 2014) (reviewing indenture agreement

provisions to establish creditor expectations regarding likely location of a restructuring as part of

COMI inquiry).

16

As discussed, the determination of a debtor's COMI should be based on facts available at or around the time the Chapter 15 petition is filed. *Fairfield Sentry*, 714 F.3d at 137. The Second Circuit in *Fairfield Sentry* clarified that "the factors that a court may consider in this analysis are not limited and may include the debtor's liquidation activities." *Id*. at 138; *see also In re Modern Land (China) Co., Ltd.*, 641 B.R. 768, 783 (Bankr. S.D.N.Y. 2022) (finding that a Cayman Islands court's supervision of a debtor's scheme of arrangement established the Cayman Islands as the debtor's COMI, despite the debtor's real estate investments in China and the United States, when creditor expectations were considered). Pre-filing restructuring efforts may shift a debtor's COMI, particularly where the debtor is an entity with such limited operations that restructuring activity constitutes its "primary business activity" prior to the filing of the chapter 15 petition. *Modern Land*, 641 B.R. at 789–90.

Material pre-filing restructuring efforts may include the negotiation and/or execution of a restructuring framework or support agreement, organization of creditor meetings, or facilitation of related operational or liquidation activities or administrative functions. *See, e.g.*, *Oi Brasil*, 578 B.R. at 222 (citing *In re Creative Fin.*, 543 B.R. 498, 517 (Bankr. S.D.N.Y. 2016)); *Modern Land*, 641 B.R. at 778–81, 789–90. However, courts may undertake a "holistic analysis" to consider whether a debtor has manipulated COMI in bad faith prior to the filing of a chapter 15 petition in the debtor's preferred locale. *Ocean Rig*, 570 B.R. at 704. Potential indicators of "opportunistic" COMI-shifting may include "insider exploitation, untoward manipulation, [and] overt thwarting of third party expectations." *Fairfield Sentry*, 440 B.R at 66.

## 2.   1517(b)(2):  Foreign Non-Main Proceeding

The Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign nonmain proceeding" if the debtor has an "establishment" in the country in which the foreign proceeding is pending. 11 U.S.C. §§ 1502(5). 1517(b)(2). An "establishment" is "any

17

place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. §

1502(2).  Courts have held that the location should:

> constitute a 'seat for local business activity' for the debtor. The terms 'operations' and 'economic activity' require a showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property.

*Creative Fin.*, 543 B.R. at 520.

### 3.    1517(a)(2): Foreign Representative Recognition

The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code

as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

### 4.    1517(a)(3): Section 1515 and Rule 1007 Requirements

Section 1515 separately imposes the following procedural requirements:

(a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.

(b) A petition for recognition shall be accompanied by—

> (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

> (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

> (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

(c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

(d) The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

11 U.S.C. § 1515.

Additionally, Bankruptcy Rule 1007 imposes additional procedural requirements, including the filing of a corporate disclosure statement. FED. R. BANKR. P. 1007.

## III. **ANALYSIS**

For the reasons explained below, the Foreign Representative has met its burden for provisional relief under Section 1519 and has established: (1) a likelihood of success at recognition as to the Moving Debtors; (2) imminent and irreparable harm if provisional relief is not granted; (3) that the balance of harms tips in favor of the Foreign Representative; and (4) that provisional relief as to the Moving Debtors is in the public interest. The Court does not reach this conclusion lightly, as Chapter 15 is not a substitute for Chapters 7 and 11 for U.S.-based debtors, and the Court is vigilant of the potential for U.S. debtors to abuse the Chapter 15 process by bypassing Chapters 7 and 11. However, the Court ultimately is satisfied that, at least for the purposes of provisional relief, the Foreign Representative is likely to demonstrate that the COMI of each of the U.S. Moving Debtors, as of the Petition Date, is Canada.

**A. The Foreign Representative Is Likely to Obtain Recognition of the Giftcraft Receivership as a Foreign Main Proceeding with Respect to Each of the Moving Debtors**

1. <u>The Giftcraft Receivership is Likely a "Foreign Main Proceeding" under Sections 1517(a) and 1517(b) as Relevant to Each of the Moving Debtors</u>

*a. The Giftcraft Receivership is Likely a "Foreign Proceeding"*

Courts routinely recognize Canadian insolvency proceedings as "foreign proceedings," including receiverships implemented by Canadian courts.[2]  Additionally, as explained by the Debtors' Canadian law declarant, the Giftcraft Receivership is a judicial proceeding overseen by a foreign (Canadian) court, authorized under various relevant Canadian statutes, including the Bankruptcy and Insolvency Act and the Courts of Justice Act, and pursuant to which the receiver has been provided the "authority to operate or manage the debtor's business in place of the existing management," and potentially also "shut down the business" or sell the assets and custody of the debtor.  (Kraft Declaration ¶¶ 14–15.)  As such, the Giftcraft Receivership almost certainly constitutes a "foreign proceeding" as a threshold matter.

*b. Each Moving Debtor's COMI as of the Petition Date is Canada*

**Giftcraft Canada.**  Giftcraft Canada facilitates the Debtors' business in Canada as a supplier of gift items, including home décor, jewelry, and other novelties.  (Supplemental Declaration ¶ 8.)  The entity is organized under the laws of Ontario, Canada, where its registered office is located.  (*Id.*; ECF Doc. #1, *In re Giftcraft Ltd.*, Case No. 25-11030 (Bankr. S.D.N.Y.))

---

[2]      *See, e.g.*, *In re Bench Accounting*, Inc., Case No. 25-10463 (Bankr. D. Del. April 9, 2025) (ECF Doc. # 28); *In re Ted Baker Canada Inc.*, Case No. 24-10699 (Bankr. S.D.N.Y. May 17, 2024) (ECF Doc. # 54); *In re Antamex Industries ULC*, Case No. 24-10934 (Bankr. D. Del. June 4, 2024) (ECF Doc. # 35); *In re Simex Inc.*, Case No. 24-10083 (Bankr. D. Del. Feb. 20, 2024) (ECF Doc. # 39); *In re Legacy Lifestyles Destin LP*, Case No. 22-01246 (LVV) (Bankr. M.D. Fla. May 9, 2022) (ECF Doc. # 28); *In re Yatsen Group of Companies Inc.*, No. 21-10073 (BLS) (Bankr. D. Del. February 24, 2021) (ECF Doc. # 42); *In re Nygard*, Case No. 20-10828 (Bankr. S.D.N.Y. November 5, 2020) (ECF Doc. # 71); *In re Hematite Holdings Inc.*, No. 20-12387 (Bankr. D. Del. October 15, 2020) (ECF Doc. # 35); *In re Thane Int'l, Inc.*, Case No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015) (ECF Doc. # 41); *In re Talon Systems Inc.*, Case No. 13-11811 (KJC) (Bankr. D. Del. Aug. 30, 2013) (ECF Doc. # 49).

Giftcraft Canada employs 62 individuals, all of whom are located in Canada. (Supplemental

Declaration ¶ 8(c)). These employees include but are not limited to: all executives, Vice

Presidents of sales, merchandising, and operations, product development specialists, fit

specialists, buyers and procurement analysts, business development professionals, key accounts

and sales support, graphic designers, webmasters, payroll specialists, an A/R collections

specialist, an inventory manager, a quality control coordinator, a customer service manager, three

customer service representatives, a warehouse manager, a logistics manager, two

warehouse/logistics team leads, and ten warehouse employees. (*Id.*) No party objects to

provisional relief as to Giftcraft Canada at this time. (*See* Objection at 1). Accordingly, the

Foreign Representative is likely to succeed in obtaining recognition of the Giftcraft Receivership

as to Giftcraft Canada.

  ***Giftcraft US.*** Giftcraft US's COMI as of the Petition Date is contested: the Foreign

Representative maintains that Giftcraft US's COMI is Canada, while the U.S. Trustee asserts that

it is the United States. (Supplemental Memorandum ¶ 41; Objection at 11.) Giftcraft US's

registered office is in New York, (ECF Doc. # 1, *In re Giftcraft Inc.*, Case No. 25-11033 (Bankr.

S.D.N.Y.)), entitling it to a rebuttable statutory presumption that its COMI is the United States.

11 U.S.C. § 1516(c).

  Other *Fairfield Sentry* factors indicate that Giftcraft US's COMI may be Canada.

Giftcraft US exclusively maintains office space in Canada, stores books, records, and corporate

documents in Canada, and holds no inventory in the United States. (Supplemental Declaration

¶¶ 9, 9(a)–(b).) All material financial, strategic, management, accounting, marketing, and

personnel decisions related to the operation of Giftcraft US's business were made by Giftcraft

Canada's senior management as of the Petition Date. (*Id.* ¶ 9(c)). Giftcraft US's most

significant creditor is RBC, a bank based in Toronto. (*Id.* ¶ 9(e)). Additionally, as of the entry

of the Appointment Order, the Receiver, which is based in Toronto, was "vested with all

property, assets, and undertakings of Giftcraft US, with broad power and authority over such

assets and the management and operation of Giftcraft Inc.'s business." (*Id.* ¶ 9(f); Appointment

Order ¶ 3.) The initiation of the Giftcraft Receivership constitutes pre-filing restructuring

activities of the sort that suggest that, as of the Petition Date, Giftcraft US's COMI was likely

Canada. Accordingly, the Foreign Representative is likely to succeed on obtaining recognition

as to Giftcraft US.

    *Ripskirt.* Like Giftcraft US, Ripskirt's COMI as of the Petition Date is contested: the

Foreign Representative maintains that Ripskirt's COMI is Canada, while the U.S. Trustee asserts

that it is the United States. (Supplemental Memorandum ¶ 48; Objection at 11.) Ripskirt's

registered office is in Mosier, Oregon, (ECF Doc. # 1, *In re Giftcraft Inc.*, Case No. 25-11035

(Bankr. S.D.N.Y.)), entitling it to a rebuttable statutory presumption that its COMI is the United

States. 11 U.S.C. § 1516(c).

    However, as with Giftcraft US, Ripskirt's COMI analysis as relevant to this Motion is

tied to its operations as of the Petition Date. Like Giftcraft US, as of the entry of the

Appointment Order, the Toronto-based Receiver was "vested with all property, assets, and

undertakings of Ripskirt, with broad power and authority over such assets and the management

and operation of Ripskirt's business." (Supplemental Declaration ¶ 10(f); Appointment Order ¶

3.) The initiation of the Giftcraft Receivership thus similarly constitutes pre-filing restructuring

activities likely to establish Ripskirt's COMI in Canada, and the Foreign Representative is

therefore also likely to succeed on recognition with respect to Ripskirt.

*Yosox.* Yosox's COMI is disputed along the same lines as Giftcraft US and Ripskirt. (*See* Supplemental Memorandum ¶ 53; Objection at 11.)  As with those entities, the entry of the Appointment Order vested the Canadian Receiver with "all property, assets, and undertakings of" Yosox and granted the Receiver "broad power and authority over such assets and the management and operation of Yosox's business."  (Supplemental Declaration ¶ 11(f); Appointment Order ¶ 3.)  As such, the Foreign Representative is equally likely to succeed on recognition as to Yosox.[3]

## B.  Irreparable Harm Will Result from Denial of the Motion

In the cross-border insolvency context, courts have recognized that irreparable harm exists where local actions could hinder the orderly process of a foreign proceeding and the goal of the fair distribution of assets.  *See In re Petition of Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("[A]s a rule, therefore, irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors."); *In re Berau Capital Res. PTE Ltd.*, No. 15-11804 (MG) (Bankr. S.D.N.Y. Aug. 6, 2015) (ECF Doc. # 20) at 3 (granting provisional relief to prevent potential interference with foreign debtor's "efforts to administer its estate and restructure its operations pursuant to the [f]oreign [p]roceeding" and "undermining the [f]oreign [r]epresentative's efforts to achieve an equitable result for the benefit of all of the [f]oreign [d]ebtor's creditors and interest holders" in the absence of the requested relief); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (finding injunctive relief necessary "to prevent

---

[3]    Because the Court concludes that the Foreign Representative is likely to succeed in obtaining recognition of the Giftcraft Receivership as a "foreign main proceeding" on the basis that each Moving Debtor's COMI is Canada, this opinion does not examine the Receiver's secondary argument that the Moving Debtors each have an "establishment" in Canada such that recognition of the Giftcraft Receivership as a "foreign nonmain proceeding" is alternatively appropriate.

individual American creditors from arrogating to themselves property belonging to the creditors as a group."); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (concluding that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.").

Here, the Foreign Representative has identified a number of the Moving Debtors' assets and creditors located in the United States, including 4,000,000 CAD in inventory. (Motion ¶ 43.) The Moving Debtors are experiencing ongoing payment disputes with at least one U.S.-based creditor, which issued a legal demand to one of the Debtors in the weeks leading up to the issuance of the Appointment Order by the Canadian Court. (Verified Petition ¶ 25.) The Foreign Representative states that, unless the requested relief is granted, the Moving Debtors' creditors "may take enforcement actions to recover against their United States assets," and "landlords and contract counterparties may attempt to assert rights to the Property." (Motion ¶ 43.) The Foreign Representative makes a credible showing that this unilateral enforcement or collection action presents a meaningful risk to the Moving Debtors and to the Giftcraft Receivership, as it could "diminish the value of the [Moving Debtors'] assets to the detriment of all stakeholders." (*Id.*) Accordingly, the element of irreparable harm has been met.

### C.  The Balance of Harms Favors Provisional Relief

The balance of harms tips in favor of the Foreign Representative. The Foreign Representative contends that the requested relief will "benefit the [Moving Debtors'] creditors because it will ensure the value of the [Moving Debtors'] assets and business is preserved, protected, and maximized for the benefit of, and fair distribution to, all creditors." (Motion ¶ 45.) To the extent, however, that any creditors disagree with this position, the Provisional Relief

Order "specifically provides that any creditor that believes it has been harmed by the provisional relief granted therein may file a motion with the Court seeking relief therefrom." (*Id.*)

### D.  Granting Relief is in the Public Interest

Finally, granting provisional relief is in the public interest and is consistent with the policies underlying the Bankruptcy Code and Chapter 15.  As the Foreign Representative notes, granting the requested relief would provide a "breathing spell" to the distressed Moving Debtors, ensure the equitable treatment of creditors, and "facilitate the Receiver's efforts to maximize the value of the Property for the benefit of the [Moving Debtors'] creditors and other stakeholders— including those in the United States." (Motion ¶ 46 (internal citations omitted).)  Additionally, granting provisional relief will minimize interjurisdictional inconsistencies pending this Court's recognition order and therefore will "promote[] cooperation between jurisdictions in cross-border insolvencies," advancing an express purpose of Chapter 15.  (*Id.* (citing 11 U.S.C. § 1501(a).).).

### E.  The U.S. Trustee's Objection Is Overruled

The U.S. Trustee submits in its Objection that the COMI of each of the Moving Debtors is the United States and not Canada.  (Objection at 11–12.)  In so arguing, the U.S. Trustee compares this matter to a recent decision issued by the Bankruptcy Court for the District of Delaware, *In re Black Press Ltd. et al.* (Case No. 24-10044) (Bankr. D. Del, Feb. 8, 2024).  In *Black Press*, Judge Mary Walrath declined to find COMI with respect to an international conglomerate's U.S.-incorporated subsidiaries.  (*Id.*)  The U.S. Trustee contends that the facts in this case are "remarkably similar" to those of *Black Press*, including the incorporation of the U.S. debtors in the United States, the presence of U.S.-based vendors, and the U.S. debtors' guarantees of Canadian-funded debt.  (*Id.*)  What the Objection neglects to consider, however, is that, even in *Black Press*, Judge Walrath granted provisional relief as to the U.S.-incorporated

debtors, concluding that the Foreign Representative had demonstrated a likelihood of success at recognition as to all the debtors, including those entities incorporated in the U.S.  *See In re Black Press Ltd.*, No. 24-10044 (MFW) (Bankr. D. Del. Feb. 13, 2024) (ECF Doc. # 13).  At the subsequent recognition hearing, however, the Court determined that the COMI of the U.S. entities was in the U.S. rather than in Canada.

Furthermore, as the U.S. Trustee notes, Judge Walrath's ultimate partial recognition denial in *Black Press* was in large part based on an observation that the U.S.-incorporated debtors functioned "independently" from the Canadian debtors.  (*See* Ex. A to Objection, Black Press Recognition Hrg. (February 8, 2024) Tr. 100:7-10.)  By contrast, based on the record in this case, it does not appear that the COMI of the U.S. entities is the United States rather than in Canada, particularly after the initiation of the Giftcraft Receivership.

Finally, while the U.S. Trustee argues that the U.S. Moving Debtors had their COMI in the United States based on the historical operations of those entities (*see* Objection at 11–12), the Objection does not address the temporal anchor of the COMI determination, which is the Petition Date.  For the reasons previously discussed, the Foreign Representative is likely to succeed on establishing that the COMI of each of the Moving Debtors, including the U.S. Moving Debtors, *as of the Petition Date*, was Canada.

### F.  Sufficient Protection

As required under section 1522(a) of the Bankruptcy Code, all parties are "sufficiently protected" such that this Court may grant the Provisional Relief.  11 U.S.C. §1522(a); *see SPhinX*, 351 B.R. at 112–13 (holding that section 1522 provides that the court may grant or modify interim relief under section 1519 only if the interests of all parties are "sufficiently protected").  Relief under section 1519 of the Bankruptcy Code should be denied for a lack of

sufficient protection only "if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H.R. Rep. No. 109-31, pt.1, at 116 (2005). Here, there is no indication that affected parties will not be able to access the Canadian Court in connection with the Giftcraft Receivership, and the Moving Debtors' creditors may also participate in this proceeding. All parties potentially impacted by the Provisional Relief will have access to courts in both Canada and the United States, and are therefore sufficiently protected.

### G. Security

No security is required here. "[A] temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)['s requirement to give security]"). *See* FED. R. BANKR. P. 7065. The Court has "wide discretion to set the amount of a bond [under Rule 65(c)], and even to dispense with the bond requirement." *Doctor's Assocs. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997). Accordingly, the Court may, but is not required to, mandate that the Foreign Representative provide security. However, as of the imposition of the Appointment Order, the Debtors' Property is subject to the jurisdiction of the Canadian Court. (Motion ¶ 15.) Additionally, the requested relief will only be in effect until the Court's ruling on the Verified Petition. Accordingly, the requirement for security is not necessary in this case.

### H. Waiver of Rule 1007(a)(4)(b)

The Foreign Representative requests a waiver of Rule 1007(a)(4)(b), which requires the filing of a list of all entities against whom provisional relief is being sought under Section 1519. The Debtors filed a disclosure which purportedly satisfies the Rule, (ECF Doc. # 1 at 26), but requests that the Court waive any further requirement of the Rule given that "other, unknown parties may be affected." (Motion ¶ 48.) The Foreign Representative notes that this waiver has

been granted by this Court in prior cases, and further comments that waiver is especially appropriate "in light of the extensive number of parties that the Debtors did include" in their Rule 1007(a)(4) and 7007.1 disclosures.  (*Id.*)  Because the Foreign Representative cannot be expected to anticipate every potential party that could seek to bring claims against the Moving Debtors in the United States, and because the disclosures it provided are robust and appear to have been submitted in good faith, waiver of Rule 1007(a)(4)(b) on a going-forward basis, to the extent necessary, appears proper.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the relief sought in the Foreign Representative's Motion and **OVERRULES** the U.S. Trustee's Objection.

**IT IS SO ORDERED.**

Dated:    June 4, 2025
New York, New York

*Martin Glenn*

MARTIN GLENN
Chief United States Bankruptcy Judge