UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                                                    FOR PUBLICATION

        Giftcraft Ltd. *et al.*,                          Chapter 15

               Debtors in a Foreign Proceeding.      Case No. 25-11030 (MG)

------------------------------------------------------------x

**MEMORANDUM OPINION GRANTING MOTION AUTHORIZING SALE, INCLUDING ASSETS IN THE U.S., AND ASSUMPTION OF EXECUTORY CONTRACTS**

*A P P E A R A N C E S*:

CHIPMAN BROWN CICERO & COLE, LLP
*Counsel to the Foreign Representative*
501 5th Avenue, 15th Floor
New York, New York 10017
By:    Daniel G. Egan, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the uncontested *Motion of Foreign Representative for Entry of an Order Pursuant to Sections 105(A), 363, 365, 1507, 1520, and 1521 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, And 9014 (I) Recognizing and Enforcing the Approval and Vesting Order, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assignment of Certain Executory Contracts, and (IV) Granting Related Relief* (the "Motion," ECF Doc. # 43) submitted by KPMG Inc. ("KPMG"), in its capacity as the court-appointed receiver (in such capacity, the "Receiver") of the above captioned debtors (the "Debtors"), and in its capacity as the authorized foreign representative (the "Foreign Representative") of the Debtors, which are the subjects of a receivership proceeding (the "Giftcraft Receivership") pursuant to section

1

243(1) of the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "BIA"), and section 101 of the *Courts of Justice Act*, R.S.O. 1990, c. C.43, as amended (the "CJA"), pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"). This Chapter 15 case has previously recognized the Canadian proceeding as a foreign main proceeding. The Sale has been approved by the Canadian court. The Sale Motion includes assets located in the United States. Second Circuit precedent makes clear that sales of assets located in the United States require the Chapter 15 court to determine whether the sale of U.S. assets satisfies section 363(b) of the Bankruptcy Code. *See In re Fairfield Sentry Ltd.*, 768 F.3d 239, 244 (2d Cir. 2014). As discussed below, the Motion includes the necessary showing permitting the sale of U.S. assets.

The objection deadline was July 29, 2025, and no objections were received. The Foreign Representative seeks entry of an order (the "Proposed Order"), annexed to the Motion as Exhibit A (i) recognizing, enforcing, and giving effect in the United States to the Canadian Court's Approval and Vesting Order (the "Approval and Vesting Order"), annexed as Exhibit 1 to the Proposed Order; (ii) authorizing and approving the sale of substantially all of the assets of Debtors Giftcraft Canada, Giftcraft US, and Yosox (collectively, the "Selling Debtors") free and clear of all liens, claims, interests, and encumbrances pursuant to the Asset Purchase Agreement, dated as of July 7, 2025 (together with all schedules, exhibits, and amendments thereto, the "APA"), by and between the Receiver and Giftcraft 2025 Inc., as purchaser (the "Purchaser"), a copy of which is annexed to the Motion as Exhibit B; (iii) authorizing and approving the assumption and assignment of the Assumed Contracts (as defined in the APA); and (iv) granting related relief.

For the reasons explained below, the Court **GRANTS** the Motion

2

## I. BACKGROUND

**A. Giftcraft Receivership**

On May 9, 2025, following defaults by the Debtors under their secured credit facilities, Royal Bank of Canada ("RBC"), the Debtors' secured lender, filed a Notice of Application with the Canadian Court under the BIA and CJA seeking to have a receiver appointed. (Motion ¶ 5.) On May 14, 2025, the Canadian Court entered an order (the "Appointment Order") appointing KPMG as the Receiver, without security, over all the present and future assets, undertakings, and properties of each of the Debtors acquired for, or used in relation to, a business carried on by each Debtor, including all proceeds thereof (the "Property"). (*Id.*)

The Appointment Order also provides the Receiver with broad authority over the Debtor's assets including the ability to:

- take possession of and exercise control over the Property and any and all proceeds, receipts and disbursements arising out of or from the Property;

- manage, operate, and carry on the business of the Debtors, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

- receive and collect all monies and accounts now owed or hereafter owing to the Debtors and to exercise all remedies of the Debtors in collecting such monies, including, without limitation, to enforce any security held by the Debtors;

- execute, assign, issue and endorse documents of whatever nature in respect of any of the Property, whether in the Receiver's name or in the name and on behalf of the Debtors, for any purpose pursuant to the Appointment Order;

- market any or all of the Property, including advertising and soliciting offers in respect of the Property or any part or parts thereof and negotiating such terms and conditions of sale as the Receiver in its discretion may deem appropriate;

- sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business, (i) without the approval of the Canadian Court in respect of any transaction not exceeding $250,000 provided that the aggregate consideration for all such transactions does not exceed $1,000,000 and (ii) with the approval of the Canadian

3

> Court in respect of any transaction in which the purchase price or the aggregate purchase price exceeds the applicable amount set out in the preceding clause; and
>
> - apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers thereof, free and clear of any liens or encumbrances affecting such Property.

(*Id.* ¶ 6.)

### B. The Chapter 15 Cases

On May 20, 2025, (the "Petition Date"), the Foreign Representative filed, among other things, (a) voluntary petitions in this Court for relief under chapter 15 of the Bankruptcy Code for each of the Debtors, (b) a *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [ECF Doc. # 3], and (c) a *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [ECF Doc. # 6]. (*Id.* ¶ 7.)

On May 30, 2025, the Court entered the *Order Granting Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [ECF Doc. # 28] (the "Provisional Recognition Order"), giving provisional recognition to the Giftcraft Receivership and granting full force and effect to the Appointment Order on a provisional basis. (*Id.* ¶ 8.)

On June 16, 2025, the Court entered the *Order Granting Verified Petition of Foreign Representative for (I) Recognition of Canadian Proceeding as Foreign Main Proceeding, (II) Recognition of Foreign Representative; and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [ECF Doc. # 37] (the "Recognition Order") recognizing the Giftcraft Receivership as a foreign main proceeding on a final basis and granting various related relief. (*Id.* ¶ 9.)

4

### C. Marketing Process

Upon the Canadian Court's entry of the Appointment Order, the Receiver immediately began working to fulfill its responsibilities under the Appointment Order with the aim to pursue a sale process with respect to the Debtors' assets in an effort to maximize value for the benefit of all stakeholders.  (*Id.* ¶ 10.)

In furtherance thereof, the Receiver contacted a total of eighteen (18) potentially interest parties (the "Interested Parties"), consisting primarily of strategic buyers, in connection with a sale or other strategic restructuring transaction involving the Debtors' business and assets.  (*Id.* ¶ 11.)  The Interested Parties contacted by the Receiver include parties that had previously expressed an interest in some or all of the Debtors' assets through formal or informal marketing efforts conducted by the Debtors prior to entry of the Appointment Order.  (*Id.*)

The Receiver held introductory calls with many of these parties, and ten (10) of the Interested Parties executed non-disclosure agreements ("NDAs") with the Receiver and were provided access to a virtual data room maintained by the Receiver containing financial, operational, and other diligence information concerning the Debtors and their assets to assist the Interested Parties in evaluating a potential transaction.  (*Id.* ¶ 12.)  The Receiver also held follow-up diligence calls with many of the Interested Parties that executed NDAs and, to the extent requested, organized site visits to the Debtors' headquarters in Brampton, Ontario to allow such Interested Parties to view the Debtors' operations and meet with management.  (*Id.*)

On or about May 30, 2025, the Receiver received letters of intent from two Interested Parties regarding a potential transaction involving some or all of the Debtors' business and assets.  (*Id.* ¶ 13.)  The Receiver continued to engage in negotiations with these Interested Parties and, following such negotiations, determined that the proposal submitted by CTG Brands Inc.

5

("CTG") was the highest or otherwise best offer for the Purchased Assets (as defined in the APA) and that it was in the best interest of all stakeholders to move forward and finalize documentation with respect to such proposal. (*Id.*) A summary of the terms of the APA is contained in the Motion at paragraph fourteen (14). Accordingly, on July 7, 2025, the Receiver entered into the APA with the Purchaser, an entity formed by CTG, providing for the sale of substantially all of the Selling Debtors' assets on the terms and conditions set forth therein.[1] (*Id.*)

## II.     LEGAL STANDARD

### A. Recognition of the Canadian Court's Vesting Order

Section 1520 outlines the mandatory relief automatically granted upon recognition of a foreign main proceeding under chapter 15. Once section 1520(a) applies, sections 363, 549 and 552 also apply to any transfer of a debtor's interest in property within the United States. 11 U.S.C. § 1520(a)(2); *In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009). Section 1520 also allows a foreign representative to operate a debtor's business by exercising the rights and powers of a trustee under sections 363 and 552; and it applies section 552 to property of the debtor that is within the territorial jurisdiction of the United States. (*Id.*; 11 U.S.C. § 1520(a).) When considering if section 363 review is required in an ancillary U.S. bankruptcy proceeding "when there is a 'foreign main proceeding,' section 1520(a)(2) instructs the bankruptcy court to apply section 363 to a 'transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate.'" *In re Fairfield Sentry Ltd.*, 768 F.3d at 244 (quoting 11 U.S.C. § 1520(a)(2)).

---

[1]     The APA does not provide for a sale of any of Ripskirt's assets and the Receiver is continuing to market those assets for sale.

### B. Asset Sale Pursuant to Section 363 of the Bankruptcy Code

1. General Order M-383: Amended Guidelines for the Conduct of Asset Sales

The United States Bankruptcy Court for the Southern District of New York has established amended guidelines (the "Guidelines") for the conduct of asset sales under 11 U.S.C. § 363(b). The Guidelines establish the necessary components of a debtor's application to conduct asset sales, including a Sale Motion, Sale Order, Sale Procedures, and a Sale Procedures Order, along with additional detailed information described within each of the sections. A debtor applying for this Court's approval of asset sales must comply with General Order M-383.

2. Sale of a Debtor's Assets under Section 363(b)

"[T]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment. *See In re Chateaugay Corp.*, 973 F.2d 141, 144-45 (2d Cir. 1992) (approving sale of assets based on a finding that sound business judgment supported sale because delay in the sale of assets may diminish their value); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1072 (2d Cir. 1983) (holding that the sale of assets out of the ordinary course of business must be supported by "some articulated business justification, other than appeasement of major creditors" and that "a judge determining a § 363(b) application [must] expressly find from the evidence presented before him at the hearing a good business reason to grant such an application"). Once the Trustee articulates a sound business justification, there "is a presumption that in making a business decision the [decision maker] acted on an informed basis, in good faith and in the honest belief that the action was in

7

the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.,* 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992).

A determination that there are sufficient business reasons to justify a particular sale depends on the facts and circumstances of each particular case. *In re Lionel Corp.,* 722 F.2d at 1072. However, courts should consider factors such as: (1) the proportionate value of the asset to the estate as a whole, (2) the amount of time elapsed since the filing, (3) the likelihood of proposing and confirming a plan in the near future, (4) the effect of the proposed sale on any reorganization, (5) the sale price to be obtained with reference to any appraisals of the property, (6) alternative uses of the property, and (7) whether the asset is increasing or decreasing in value. (*Id.* at 1071.)

3. Sale of Assets Free and Clear of Liens under 363(f)

Bankruptcy Code section 363(f) states that a sale free and clear of liens may be approved only if at least one of the following conditions are met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in *bona fide* dispute; or (6) such entity could be compelled to accept a monetary satisfaction of such interest. According to *In re Dundee Equity Corp.*, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992), the sale of interest may proceed "if any of the five conditions of section 363(f) have been met."

4. Protections to Good Faith Purchasers under 363(m)

Bankruptcy Code section 363(m) states that "The reversal or modification of an appeal or an authorization under subsection (b)…of this section of a sale…of property does not affect the validity of a sale…under such authorization to an entity that purchased…such property in good

faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale…were stayed pending appeal." The Second Circuit has held that "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings…A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or any attempt to take grossly unfair advantage of other bidders.'" *Licensing by Paola v. Sinatra (In re Gucci),* 126 F.3d 380, 390 (2d Cir. 1997) (citations omitted).

### 5. Waiver of Bankruptcy Rules 6004(h) & 6006(d)

Bankruptcy Rule 6004(h) provides that "an order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the Court orders otherwise." FED. R. BANKR. P. 6004(h). Similarly, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6006(d). The rules are intended to provide time for an objecting party to appeal a sale order or the assignment of an executory contract before such order can be implemented. *See* Advisory Committee Notes to FED. R. BANKR. P. 6004(h); Advisory Committee Note to FED. R. BANKR. P. 6006(d).

Collier suggests that because the purpose of the rules is to "protect the rights of an objecting party," a court should eliminate the 14-day stay period and allow the sale or the assignment, as applicable, to close immediately in all cases where there has been no objection to the procedure. 10 COLLIER ON BANKRUPTCY § 6004.10 (16th 2019) (discussing Bankruptcy Rule 6004(h)); *id.* § 6006.04 (discussing Bankruptcy Rule 6006(d)).

Under the Guidelines, if a debtor seeks relief from the 14-day stay imposed by Bankruptcy Rule 6004(h), the sale motion must disclose the business or other basis for such

9

request." (Guidelines § I.4.D.16.) Additionally, if the Debtor seeks findings limiting the purchaser's successor liability, the sale motion must disclose the proposed notice of such relief. (*Id.* § I.4.D.12.)

### C. Assumption and Assignment of Executory Contracts

Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (citation omitted); *In re Republic Airways Holdings*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016); *see also In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 51-52 (Bankr. S.D.N.Y. 2004).

The assumption or rejection of an executory contract or unexpired lease is subject to review under the business judgement standard. If the debtor has exercised "reasonable" business judgment, courts typically approve the proposed assumption or rejection. *See, e.g.*, *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) (noting that a bankruptcy court will generally approve a debtors' choice to assume or reject an executory contract under the deferential business judgment rule) (citation omitted); *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996) ("A bankruptcy court reviewing a trustee's decision to assume or reject an executory contract should….apply its best 'business judgement' to determine if it would be beneficial or burdensome to the estate to assume [it].") (citations omitted); *In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y.

10

1992) ("A debtor may assume or reject an unexpired lease in accordance with 11 U.S.C. § 365(a) in the exercise of its best business judgement.").

The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract will benefit the debtor's estate. *See In re Orion Pictures Corp.*, 4 F.3d at 1098–99; *In re Balco Equities, Inc.*, 323 B.R. 85, 99 (Bankr. S.D.N.Y. 2005) ("In determining whether the debtor has employed reasonable business discretion, the court for the most part must only determine that the rejection will likely benefit the estate.") (quoting *In re G Survivor Corp.*, 171 B.R. 755, 758 (Bankr. S.D.N.Y. 1994), *aff'd*, 187 B.R. 111 (S.D.N.Y. 1995)); *see also In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 463 (Bank. S.D.N.Y. 2014) ("A court will generally not second guess a debtor's business judgement regarding whether the assumption or rejection of a contract will benefit the debtor's estate."). Debtors are afforded significant discretion when requesting to assume or reject an executory contract. *See, e.g.*, *Androse Assocs. of Allaire, LLC v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, 472 B.R. 666, 673 (S.D.N.Y. 2012) (concluding that courts may approve a debtor's lease assumption decision "[a]s long as assumption of a lease appears to enhance a debtor's estate" and the debtor's decision is not "clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.") (citation omitted).

1. Section 365 of the Bankruptcy Code

A debtor-in-possession may generally assume and assign any executory contract or unexpired lease of the debtor, subject to court approval, if it (a) cures, or provides adequate assurance that it (or its assignee) will promptly cure, any applicable defaults and (b) provides adequate assurance of future performance under such contract or lease, including by its assignee. 11 U.S.C. § 365.

11

Bankruptcy Code section 365(b)(1) provides, in pertinent part, that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . .
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

In addition, section 365(f) of the Bankruptcy Code provides that "[t]he trustee [or debtor-in-possession] may assign an executory contract or unexpired lease of the debtor only if . . . adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." Courts in this district have held that "[a]dequate assurance of future performance are not words of art, but are to be given practical, pragmatic construction." *In re U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982). "What constitutes 'adequate assurance' is to be determined by factual conditions." (*Id.* (citations omitted).) The chief concern is "the assignee's ability to satisfy [its proposed] financial obligations." (*Id.*) Adequate assurance does not, however, require "'an absolute guarantee of performance'; rather, 'it must simply appear that the [payments] will be paid and other . . . obligations met. . . . The emphasis is on protection.'" *In re Great Atl. & Pac. Tea Co.*, 472 B.R. at 674–75 (citing *In re M. Fine Lumber Co.*, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008)). Courts have found that adequate assurance of future performance is provided when the assignee had the financial resources and willingness to give the business a strong likelihood of success. *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986); s*ee also In re Bronx-Westchester Mack Corp.*, 20 B.R. 139, 143 (Bankr. S.D.N.Y. 1982)

(determining that the assignee's financial status and assumption of the debtor's ongoing obligations constituted adequate assurance of future performance).

### III. DISCUSSION

For the reasons discussed below, the Court **GRANTS** the Motion and **APPROVES** the recognition and enforcement of the Canadian Court's vesting order, **APPROVES** the sale of assets located in the United States pursuant to section 363 of the Bankruptcy Code, and **APPROVES** the assumption and assignment of the identified executory contracts.

#### A. This Court Should Recognize and Enforce the Canadian Court's Vesting Order

This Court has recognized the Canadian proceeding as the foreign main proceeding. (*See* Recognition Order.) Section 1520(a)(2) provides that "§ 363 applies to a transfer of an interest of the debtor in property . . . to the extent that the section[] would apply to property of an estate, following the recognition of a foreign proceeding as a foreign main proceeding." 11 U.S.C. § 1520(a). The Approval and Vesting Order issued by the Canadian Court enables the Foreign Representative to market the Debtors' property for sale, and with Canadian Court approval, sell, convey, transfer, or assign the Debtors' property outside the ordinary course of business. (Motion ¶ 19; *see* Motion Ex. A; *see also* Motion Ex. B.) The Approval and Vesting Order is consistent with the exercise of a Foreign Representative's authority under sections 1520(a) and 363 of the Bankruptcy Code and this Court should recognize the order.

#### B. The Court Approves the Asset Sale Pursuant to § 363 of the Bankruptcy Code

1. <u>Compliance with the Guidelines</u>

As required by the Guidelines, the Motion includes a copy of the Proposed Order, and the proposed purchase agreement. (*See* Guidelines at I.A.) Additionally, the Debtors' Motion complies with the notice provisions of the Guidelines. (Guidelines § I.4.D.16.) The Foreign Representative states it will provide notice to (a) the Debtors; (b) all persons or bodies authorized

13

to administer the Debtors' foreign proceedings; (c) counsel to the Debtors' secured lender; (d) all known creditors and contract counterparties of the Debtors in the United States; (e) the Office of the United States Trustee for the Southern District of New York; (f) any other creditors and parties in interest, as set forth on the Consolidated Verified List Pursuant to FED. R. BANKR. P. 1007(a)(4), 1008, and 2002(q) attached to the Petitions; and (g) all other parties that request notice in these chapter 15 cases as of the date of such service.  This list of parties to be provided notice is consistent with the Guidelines.  (Guidelines § II.B.)

Accordingly, the Motion complies with the Guidelines.

2.  Articulation of a Business Judgment

As required, the Foreign Representative has articulated a sound business purpose for the Auction Sale. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  The Foreign Representative has a sound business judgment to consummate the sale pursuant to the APA.  Debtors represent that the sale furthers the Foreign Representative's mandate and "presents the best opportunity for the Foreign Representative to maximize the value of the Purchased Assets.  (Motion ¶ 20.)  The Debtor further represents that the purchase price is reasonable and that it is the highest offer received to date.  (*Id.* ¶ 21.)  The APA was the product of good faith, arm's length negotiations between the Foreign Representative and the Purchaser.  (*Id.* ¶ 22.)  There have been no allegations of collusion or bad faith regarding the proposed sale pursuant to the APA.  (*Id.*)  Lastly, the Debtor represents that adequate and reasonable notice is being provided to all parties of interest.  (*Id.* ¶ 23.)  The Court should not double guess the Foreign Representative's judgment without specific justification, "as business judgment of the estate representative is entitled to great deference" and the Court should find that the Foreign

Representative's business judgment is sufficient. *See In re Borders Grp., Inc.*, 453 B.R. 477, 483 (Bankr. S.D.N.Y. 2011).

### 3. Sale of Assets Free and Clear of Liens under 363(f)

The Foreign Representative has satisfied the requirements of section 363(f) and should be permitted to sell the property free and clear of all liens and interests. One of the grounds for selling a property free and clear is that lien holder consents. 11 U.S.C. § 363(f)(2). The Debtors represent that their secured creditor, Royal Bank of Canada, has approved the Foreign Representative's proposed process for the sale pursuant to the APA. (Motion ¶ 27.)

The Foreign Representative is also permitted to sell the property free and clear of all interests, including non-lien interests. 11 U.S.C. § 1520(a)(2); 11 U.S.C. § 363. Section 363(f) is satisfied here because all parties in interest will have notice and an opportunity to object. A failure to object generally constitutes consent to sale for the purposes of Section 363(f). *See, e.g.*, *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir. 2002) (failure to object may constitute consent, if there was adequate notice); *Citicorp Homeowners Servs., Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343 (E.D. Pa. 1988) (finding implied consent under similar circumstances).

### 4. Good Faith Protections Under §§ 363(m) & (n)

Again, the Debtors represent that APA was the product of good faith, arm's length negotiations between it and the Purchaser. (Motion ¶ 21.) The Foreign Representative conducted a robust marketing process, and the APA reflects the highest bid received through the process. (*Id.* ¶¶ 10-13, 21.) Eighteen (18) parties were contacted in connection with this marketing process, with ten (10) parties executing NDAs and two (2) bids were ultimately received. (*Id.* ¶¶ 11-13.) The Purchaser is not an insider of any of the Debtors, and no common identity of incorporators, directors, or controlling stockholders exists between the Purchaser and

15

the Debtors. (*Id.* ¶ 14.) Therefore, the Foreign Representative has adequately demonstrated that the Court should grant the Motion with the protects available under sections 363(m) and 363(n) of the Bankruptcy Code.

          5.   <u>Waiver of Bankruptcy Rules 6004(h) & 6006(d)</u>

The Foreign Representative requests relief from Bankruptcy Rule 6004(h). (Motion ¶¶ 36-38.) A Debtor seeking relief from Rule 6004(h) "must disclose the business or other basis for such request." (Guidelines § I.4.D.16.) Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators have suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." Collier on Bankruptcy, ¶ 6004.11 (Richard Levin & Henry J. Sommer eds., 16th ed.). No objections to the Motion have been filed. The Foreign Representative argues that to the extent an objection is filed and overruled and the objecting party notifies the Court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. (Motion ¶ 37.) The Foreign Representative claims that time is of the essence, and requests waiver of the 14-day stay period to permit the sale to close with immediate effect. (*Id.* ¶ 38.)

The Court finds that the Foreign Representative has made a sufficient showing to waive Rules 6004(h) and 6006(d). The Foreign Representative has demonstrated good cause and a sound business purpose for the immediate consummation of the Transaction as contemplated by the APA and waiver of Rules 6004(h) and 6006(d) is warranted.

        **C. The Court Approves the Assumption and Assignment of Executory Contracts**

The Debtors have a sound business judgment for assuming and assigning the contracts to the Purchaser. A schedule of the contracts to be assumed and assigned are annexed to the APA as <u>Schedule D</u>. The APA provides that the Purchaser must make reasonable commercial efforts

to obtain all necessary third-party consents to the assumption and assignment of the contracts to be assumed (the "Assumed Contracts"). (*Id.* ¶ 34.) The APA further provides that nothing "shall be construed as an agreement to assign any Assumed Contract that is not assignable in whole or in part without the consent, approval or waiver of the party or parties thereto other than the [Receiver], unless the consent, approval or waiver required to assign such Assumed Contract has been given." (*Id.*; APA § 4.10.) Absent the consent of the relevant counterparty, applicable contract will not be an Assumed Contract and will not be assigned to the Purchaser at closing. (*Id.* ¶ 34.)

1. Business Judgment

The assumption and assignment of the Assumed Contracts is a sound exercise of the Foreign Representative's business judgment. By assuming and assigning the Assumed Contracts to the Purchaser, the Debtor will avoid any damages claims that would arise from the rejection of the Assumed Contracts and will be relieved of the burden of performance under such agreements. (*Id.*) Accordingly, the Debtor submits that assumption of the Assumed Contracts and assignment to the Purchaser is an appropriate exercise of the Debtor's business judgment and should be approved. (*Id.*)

Courts in this district have routinely granted relief similar to the relief requested herein. *See, e.g.*, *In re SVB Financial Group*, No. 23-10367 (MG) (Aug 16, 2023), ECF Doc. # 501 (authorizing assumption and assignment of certain executory contracts); *In re Purdue Pharma L.P.*, No. 19-23649 (SHL) (May 30, 2023), ECF Doc. # 5644 (same); *In re Celsius Network, LLC*, No. 22-10964 (MG) (Dec. 13, 2022), ECF Doc. # 1686 (same); *In re GBG USA Inc.*, No. 21-11369 (MEW) (Dec. 22, 2021), ECF Doc. # 432 (same); *In re Evergreen Gardens Mezz LLC*,

No. 21-10335 (MG) (Nov. 29, 2021), ECF Doc. # 266 (same); *In re LSC Communications, Inc.*, No. 20-10950 (SHL) (Oct. 7, 2020), ECF Doc. # 877 (same).

For these reasons the assumption and assignment of the Assumed Contracts is a sound exercise of the Foreign Representative's business judgment.

2. <u>Section 365 Requirements</u>

A debtor-in-possession may generally assume and assign any executory contract or unexpired lease of the debtor, subject to court approval, if it (a) cures, or provides adequate assurance that it (or its assignee) will promptly cure, any applicable defaults and (b) provides adequate assurance of future performance under such contract or lease, including by its assignee. 11 U.S.C. § 365.

Any Assumed Contracts, to the extent there are any cure costs, will be paid in full. (Motion ¶ 35.) The APA provides that the Purchaser and the Debtors will each pay 50% of all amounts necessary to cure any monetary default under any Assumed Contract. (*Id.* ¶ 34.) The Foreign Representative represents that the Purchaser is in the process of contracting counterparties to obtain consent for the assignment of the Assumed Contracts and regarding the payment of cure costs. (*Id.*)

In addition, the parties have adequate assurance of the Purchaser's future performance under the contracts. Although the Motion does not contain a fulsome discussion of adequate assurance, the Court finds proof of adequate assurance through the affected counterparties' consent to have their contract assumed and assigned. Again, the APA requires the counterparty's consent for a contract to be assumed and assigned. (*Id.*; APA § 4.10.) Therefore, this Court finds that the parties are adequately protected through their consent to have their contract assumed and assigned.

18

Therefore, the Court **GRANTS** the request to assume and assign contracts to the Purchaser.

### IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Motion, **APPROVES** the recognition and enforcement of the Canadian Court's Approval and Vesting Order, **APPROVES** the asset sale pursuant to section 363 of the Bankruptcy Code, and **APPROVES** the assumption and assignment of the identified executory contracts.

A separate Order will be entered.

Dated:   August 13, 2025
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge